1    Brett L. Gibbs, Esq. (SBN 215000)
     38 Miller Avenue, #263
2    Mill Valley, CA  94941
     415-325-5900
3
     *Attorney for Objector,*
4    *Padraigin Browne*

5

6

7                        UNITED STATES DISTRICT COURT

8                      SOUTHERN DISTRICT OF CALIFORNIA

9
     In re GROUPON MARKETING AND SALES    )    No. 3:11-md-02238-DMS-RBB
10   PRACTICES LITIGATION                 )
                                          )    **CLASS ACTION**
11   ——————————————————————              )
                                          )    **OBJECTION OF PADRAIGIN**
12   Padraigin Browne,                    )    **BROWNE TO PROPOSED**
                                          )    **SETTLEMENT AND PROPOSED**
13          *Objector.*                   )    **ATTORNEYS' FEE AWARD**
                                          )
14                                        )    Judge:   Hon. Dana M. Sabraw
                                          )    Date:    August 31, 2012
15                                        )    Time:    1:30 PM
                                          )    Ctrm:    10 – 2nd Floor
16   _____

17

18

19

20

21

22

23

24

25

26

27

28
     _____
             OBJECTION TO PROPOSED SETTLEMENT          CASE NO. 3:11-md-02238-DMS-RBB

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

I.   The Objector Is a Member of the Class ............................................................ 1

II.  The Objector Provides a Valuable Perspective for the Court in the Exercise of its
     Independent Duty to Closely Scrutinize the Proposed Settlement ........................ 2

III. The "Settlement Vouchers" Are Coupons, and the Proposed Settlement Should Be
     Evaluated As Such ........................................................................................ 4

IV.  The Proposed Settlement Would Violate the Class Action Fairness Act (CAFA), and
     Final Approval Should Be Denied On This Basis Alone ...................................... 5

     a.   The Proposed Settlement would violate the CAFA requirement that attorney fees
          be based upon actual coupon redemption. ................................................. 6

     b.   The Proposed Settlement would violate the CAFA prohibition against using a *cy
          pres* award in calculating attorneys' fees. ................................................. 7

V.   The Settling Parties Have Failed to Carry Their Burden to Show That the Proposed
     Settlement Is Fair, Reasonable, and Adequate, and Final Approval Should Therefore
     Be Denied Under Fed. R. Civ. P. 23(e) ............................................................ 8

     a.   Coupon redemption will likely be low and low-value. .................................. 9

     b.   The "Second Settlement Fund" provides no true benefit to the class and obscures
          a reversion of funds to the Defendant. ..................................................... 11

     c.   The injunctive relief is illusory. .............................................................. 13

VI.  The Proposed Settlement Class Should Be Decertified Because Individualized Issues
     Predominate Over Common Issues ................................................................ 14

VII. The Attorney Fee Request Is Disproportionate to the Actual Benefit Derived By the
     Class and Should Be Both Reduced and Delayed. ............................................ 15

     a.   The particular circumstances and terms of the Proposed Settlement necessitate an
          especially high level of scrutiny. ............................................................ 16

     b.   The attorney fee request cannot be justified under a "common fund" analysis. ..... 18

     c.   The attorney fee request is excessive under a lodestar analysis, shows evidence of
          unreasonable hours claimed, and requires scrutiny by the Court. ................... 19

     d.   The attorney fee request is premature under CAFA, and under the proposed
          settlement terms cannot be properly calculated until the Second Settlement Fund
          has been closed. .................................................................................. 23

CONCLUSION ........................................................................................................ 24

OBJECTION TO PROPOSED SETTLEMENT          CASE NO. 3:11-md-02238-DMS-RBB

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. TransUnion LLC*, 243 F.R.D. 377 (C.D. Cal. 2007) .......................................... 10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................... 1, 13

*Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313 (9th Cir. 1993) .......................... 18

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .................................. 2

*Create–A–Card, Inc. v. Intuit, Inc.*, No. C 07–06452 WHA, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009) ....................................................................................... 15, 18, 22

*Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (1993) ............................................................... 18

*Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989) .......................... 1

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ................................................... 1

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292 (S.D. Fla. 2007). ..................... 3, 4

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000) ............................................ 19

*Fleury v. Richemont North Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) .................................................................................................. 3

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ................................................ 19

*Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452 (9th Cir. 2009) ................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................... 1, 14, 16

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................... 18, 22

*In re Bluetooth Headset Prod. Liability*, 654 F.3d 935 (9th Cir. 2011) ..................... passim

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) .................................. 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768 (3d Cir. 1995) ............ 13

*In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008) .... 13, 14

*In re HP Inkjet Printer Litig.*, 5:05-CV-3580 JF, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011) ................................................................................................... 15

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010). ..................................... 16

*In re St. Jude Med., Inc.*, 522 F.3d 836 (8th Cir. 2008) .............................................. 13

*McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009) ........................................ 18

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) .................................................. 13, 14

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ............................................................................. 1

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)......................................................... 14

*Role Models Am., Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004) ............................................ 19

*Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992)............................................................................... 1

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .......... 10, 14, 16

*Sobel v. Hertz*, No. 3:06–CV–00545–LRH–RAM, 2011 WL 2559565 (D. Nev. June 27, 2011)....................................................................................................................................... 4

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................ 12, 14, 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)........................... 3

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993)..................................................... 2

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ............................. 3, 4, 15, 18

*Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ..................................... 2, 16

*Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007)................................. 18, 19, 20, 21

*Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir.1997)....................................................................... 15

*Zard v. Groupon, Inc.*, No. 11-cv-00605-PAM-FLN (D. Minn. Mar. 8, 2011) ............................... 13

**Statutes**

28 U.S.C. § 1711 note § 2(a)(3)(A) ................................................................................................ 8

28 U.S.C. § 1712........................................................................................................... 4, 5, 6, 22

**Other Authorities**

Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges (3d ed. 2010)............................................................................................. passim

*FAQ*, GROUPON.com, http://www.groupon.com/faq (last visited June 28, 2012)......................... 12

James Tharn & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443 (2005)............................................................................................................ 9

S. Rep. No. 109-14, at 27 (2005), *as reprinted in*  2005 U.S.C.C.A.N. 3, 27 ................................ 4

*The Groupon Promise*, GROUPON.com, http://www.groupon.com/groupon_promise/ (last visited June 28, 2012)............................................................................................................ 11

The State Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01 (2003) ............................................................................................................................ 19

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 4, 7, 22

**Treatises**

2 Herbert Newberg & Alba Conte, Newberg On Class Actions § 11.27 (3d ed. 1992) .................... 13

OBJECTION TO PROPOSED SETTLEMENT          CASE NO. 3:11-md-02238-DMS-RBB

# **INTRODUCTION**

Padraigin Browne, the Objector, represents tens of thousands of class members who have been harmed by Groupon's unlawful actions. The Proposed Settlement will extinguish the class members' legal claims against Groupon while providing zero recovery. There is nothing wrong with class counsel being richly rewarded for a job well done. Where the recovery to the class is nothing, though, and the settlement is designed to revert all cash net of attorney's fees to the defendant, class counsel should not be rewarded.

Ms. Browne spent valuable money on Groupon vouchers at a time when she was a recent graduate, heavily in debt and with little discretionary income. Ms. Browne should be entitled to the protections of federal and Minnesota consumer protection law. Yet, under the terms of the Proposed Settlement, Ms. Browne will receive nothing of value, while waiving all of her rights against Groupon both now and in perpetuity. The Proposed Settlement is unconscionable by its terms, violates the Class Action Fairness Act of 2005, and proposes a Settlement Class that cannot properly be certified. Furthermore, Class Counsel and other Plaintiffs' counsel would claim $2,125,000 in attorneys' fees for selling out Ms. Browne and the other absent class members. This is an unconscionable amount in light of the inadequate relief obtained, the indicia of collusion in obtaining the Proposed Settlement, and the inadequacy of Plaintiffs' counsel's billing practices. For justification of this amount, Class Counsel points to a proposed Settlement Fund which is designed to provide no money to class members, but instead revert to Groupon for its use in its business operations. For all of these reasons, the Court should reject the Proposed Settlement and the attorneys' fee award.

## I.    The Objector Is a Member of the Class

Padraigin Browne is a resident of the state of Minnesota who purchased at least two Groupon vouchers between November 2008 and December 1, 2011. The first of these was a $10 voucher for use at the Pumphouse Creamery, 4754 Chicago Ave. S., Minneapolis, MN 55407, which was purchased for $5 on April 2, 2010 and expired on April 23, 2011 without being redeemed or refunded. The second of these was a $50 voucher for use at U.S. and Canada Gap clothing stores,

which was purchased for $25 on August 22, 2010 and expired on November 19, 2010 without being redeemed or refunded.

The putative settlement class is defined as "all Persons who purchased or received one or more Groupon Vouchers for redemption at a Merchant Partner in the United States, from November 2008 until December 1, 2011. Excluded from the Settlement Class are Defendants, Merchant Partners, their parent companies, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, Groupon employees, and all judges assigned to hear any aspect of this litigation, as well as immediate family members of any of the preceding referenced individuals."

Ms. Browne has purchased two qualifying Groupon vouchers, according to this putative class definition, and does not fall within any of the excluded categories of persons and entities. Ms. Browne is therefore a class member with standing to object. She intends to appear at the fairness hearing through her counsel. Ms. Browne will provide her address, telephone number, e-mail address and proofs of purchase of her Groupon upon request by the Court or counsel. She withholds the information here for her privacy.

**II.    The Objector Provides a Valuable Perspective for the Court in the Exercise of its Independent Duty to Closely Scrutinize the Proposed Settlement**

"Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992); *see also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members."). Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).

This Proposed Settlement merits especially close scrutiny by the Court because it presents an instance where a settlement agreement precedes formal evaluation of class certification. "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318

F.3d at 953 (quoting *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)). "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liability*, 654 F.3d 935, 946–47 (9th Cir. 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Accordingly, mere consideration and satisfaction of the eight *Churchill* factors[1] alone are not enough to sustain a settlement as fair, and is "not enough to survive appellate review." *Id.* at 946–47. Rather, the Court must also look for "subtle signs" of collusion in facts such as a disproportionate attorneys' fees distribution or a "clear sailing" arrangement, both of which exist here. *See id.* at 947.

The "clear sailing" agreement in the Proposed Settlement provides another reason for the Court to apply extra scrutiny. *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 20 (3d ed. 2010) (defining a "clear sailing" agreement as a "stipulation that attorney fees based on the inflated settlement figure will not be contested" and advising that it "adds decibels to the alarms set off" by other settlement red flags). The Ninth Circuit has cautioned that a clear sailing agreement is a "warning sign" that may point toward collusion. *In re Bluetooth*, 654 F.3d at 947. In the instant Proposed Settlement, Defendants agreed not to contest Plaintiffs' Counsel's fee request so long as it was for a total amount of less than 25% of the Settlement Fund amount. (Stipulation of Settlement § I.1.) Clear sailing provisions such as this are disfavored in the Ninth Circuit because they deprive the court and the absent class members of the benefit of the adversarial process, and thus necessitate greater scrutiny. *In re Bluetooth*, 654 F.3d at 949. "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991).

---

[1] These factors are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

1
2

## III. The "Settlement Vouchers" Are Coupons, and the Proposed Settlement Should Be Evaluated As Such

3   The primary relief offered by the proposed settlement is the issuance of Settlement Vouchers
4   for goods and services, in the amount of the Original Purchase Price paid by the class member, to
5   those class members who claim them. While there is a Settlement Fund, class members may only
6   receive cash compensation from the Settlement Fund under two circumstances: (1) if the relevant
7   Merchant Partner has gone out of business, in which instance the class member will receive a refund
8   of their Original Purchase Price, or (2) if the relevant Merchant Partner refuses to honor the
9   Settlement Voucher in exchange for goods or services, in which instance the class member will
10  receive a refund of their Original Purchase Price plus 20% of the Promotional Value of the relevant
11  Groupon voucher. (Stipulation of Settlement, ECF No. 40-5, § D.2.) The first of these possible
12  circumstances will obviously be rare. In Ms. Browne's case, for example, both businesses are still in
13  existence. The second will undoubtedly be rare, since it requires class members to complete a
14  procedural maze: filling out and submitting claim paperwork, visiting the relevant Merchant Partner
15  to redeem a Settlement Voucher, being rebuffed by the merchant, and finally filling out and
16  submitting yet another set of claim paperwork. In short, the Settlement Fund was designed to make
17  the cost of securing of a cash settlement greater than the benefit.

18  Because the primary relief offered by the proposed settlement is the Settlement Vouchers, the
19  proposed settlement is a "coupon settlement." *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d
20  1052, 1069 & n.20 (C.D. Cal. 2010) (finding a coupon settlement where coupons were the primary
21  form of relief, even where other forms of relief were involved); *Fleury v. Richemont North Am., Inc.*,
22  No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (defining a coupon
23  settlement as one where the relief constitutes "a discount on another product or service offered by the
24  defendant in the lawsuit"). The Settlement Vouchers are a form of in-kind compensation, which "is
25  worth less than cash of the same nominal value." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
26  463 F.3d 646, 654 (7th Cir. 2006) Furthermore it is foreseeable that "some percentage . . . will never
27  be used and, as a result, will not constitute a cost . . . ." *Id.* at 654. Coupon settlements are

28

problematic because: (1) they often do not provide meaningful compensation to class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they often require class members to do future business with the defendant in order to receive compensation. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1302 (S.D. Fla. 2007).

For these reasons, a higher level of court scrutiny has been mandated by Congress for coupon settlements than for other types of settlements, under the Class Action Fairness Act of 2005 (CAFA). *See, e.g.*, *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d at 654; *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d at 1069; *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d at 1321; *see also* S. Rep. No. 109-14, at 27 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 27 (Section 5 of CAFA "requires greater scrutiny of coupon settlements"); Fed. R. Civ. P. 23(h), 2003 Advisory Committee Notes ("Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class."). Accordingly, courts have rejected numerous proposed coupon settlements. *See, e.g.*, *Sobel v. Hertz*, No. 3:06–CV–00545–LRH–RAM, 2011 WL 2559565 (D. Nev. June 27, 2011) (denying final approval of proposed coupon settlement); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d at 1069–70, 1082–83 (declining to find proposed coupon settlement to be "fair, reasonable and adequate" under either Fed. R. Civ. P. 23(e) or 28 U.S.C. § 1712(e)).

## IV.   The Proposed Settlement Would Violate the Class Action Fairness Act (CAFA), and Final Approval Should Be Denied On This Basis Alone

Although Class Counsel has been careful to never use the word "coupon" in describing the proposed settlement, instead favoring the term "Settlement Voucher" (*see generally* Stipulation of Settlement), mere semantics are not sufficient to escape one's obligations under Federal law. In CAFA, Congress provided clear guidelines on how coupon settlements must be carried out and calculated. 28 U.S.C. § 1712. The proposed settlement would necessarily and by its own terms violate CAFA in two ways: by violating the requirement that attorney fees attributable to coupons be based upon actual coupon redemption, and by violating the prohibition against using any *cy pres* award in the calculation of attorney fees.

5

a.   **The Proposed Settlement would violate the CAFA requirement that attorney fees be based upon actual coupon redemption.**

Because this is a coupon settlement, any award of attorneys' fees attributable to the value of the coupons "*shall be* based on the value to class members of the coupons that *are* redeemed." 28 U.S.C. § 1712(a) (emphasis added). This narrow focus on the actual value of redeemed coupons is mandated even where other forms of relief are proffered in addition to coupons. *See* 28 U.S.C. § 1712(c) (requiring that where mixed relief is awarded, including both coupons and equitable relief, the portion of any attorneys' fees attributable to the value from coupons must still be calculated according to § 1712(a)). It is not enough merely to know the total value of coupons that could be issued, nor is it even sufficient to know the total number of class members who have submitted claims. "Determining the precise value to the class of the rare beneficial coupon settlement . . . calls for hard data on class members' redemption of the coupons." Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 18 (3d ed. 2010).

Under the proposed settlement terms, the value to the class attributable to redeemed coupons is not determined, and there are no plans in place to track or evaluate coupon redemption. Instead, attorneys' fees are justified based upon lodestar calculations and as constituting 25% of the total Settlement Fund. The latter claim is very peculiar, considering that most Settlement Vouchers will not draw from the Settlement Fund whatsoever. (And the Settlement Fund itself will largely end up funding purposes distant from the interests of the class. *See infra* Part V.) Instead, Merchant Partners will be asked to voluntarily bear most coupon costs. A Settlement Voucher claim only draws on the Settlement Fund in the event that a relevant Merchant Partner is out of business or refuses to honor the Settlement Voucher. Thus, for the sake of mere convenience to Class Counsel in its mission to recover fees quickly and efficiently, actual coupon value and redemptions are entirely ignored in favor of a vague reference to an unrelated fund. Such shenanigans do not comport with CAFA, and insofar as this settlement represents an attempt to sidestep a CAFA-mandated focus on the value of redeemed coupons, it should not garner final approval.

6

1

2

**b.  The Proposed Settlement would violate the CAFA prohibition against using a *cy pres* award in calculating attorneys' fees.**

3

4

5

6

7

8

The text of CAFA further prohibits the use of *cy pres* award amounts in the calculation of attorneys' fees. "The court, in its discretion, may . . . require that a proposed settlement agreement provide for the distribution of a portion of the value of unclaimed coupons to [one] or more charitable or governmental organizations, as agreed to by the parties. The distribution and redemption of any proceeds under this subsection *shall not be used to calculate attorneys' fees* under this section." 28 U.S.C. § 1712(e) (emphasis added).

9

10

11

12

13

14

15

16

17

The total *cy pres* award amount under this proposed settlement is unknown—and will be indeterminate for years. While the settlement terms make clear that the amount of $75,000 will be withheld from the Settlement Fund specifically for the purpose of *cy pres*, the full value of the *cy pres* donation will also include any funds remaining in the Second Settlement Fund two years after the designation of that fund. (*See* Stipulation of Settlement § E.4.d.) In other words, the settling parties have agreed to distribute the unclaimed value precisely as CAFA contemplates a court might require. However, by these proposed settlement terms, the amount of the *cy pres* award—both its absolute value and its proportion to the total Settlement Fund—may not be known until two years have passed after the Second Settlement Fund Claims Notice is distributed. (*See id.* § D.3.)

18

19

20

21

22

23

24

25

26

27

Nevertheless, the proposed settlement would provide that attorneys' fees be paid at a time when the *cy pres* portion of the Settlement Fund is indeterminate in value. Plaintiffs' Counsel's attorneys' fees and expenses would be paid prior to the creation of the Second Settlement Fund. (*See* Stipulation of Settlement § E.4.a.) In fact, the fees for Class Counsel would be determined and paid "within five (5) business days after the Entry of the Final Judgment and Order Approving Settlement." (*Id.* § I.1.) This is a direct violation of CAFA. Further, to the extent that attorneys' fees are evaluated or cross-checked on a percentage-of-common-fund basis, the Court cannot make those judgments unless and until the *cy pres* award is both determinate and fully excluded from consideration in fee awards. *See* 28 U.S.C. § 1712(e). Here, that date will come no sooner than the closing of the Second Settlement Fund.

28

7

Congress passed CAFA in order to prevent abuses of the class action system. Where a proposed settlement would violate CAFA, as here, such settlement should not pass final approval without appropriate modifications. The primary modification necessary here, in addition to others, would be a delay in the award of attorneys' fees to allow the Court to both gather data on coupon redemption rates and exclude *cy pres* relief, in the manner prescribed and anticipated by CAFA. The advisory committee notes for Fed. R. Civ. P. 23(h) expressly recognize that, "[i]n some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known." Fed. R. Civ. P. 23(h), 2003 advisory committee notes. Furthermore, such a modification is expressly recommended in a guide published by the Federal Judicial Center. *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 33–34 (3d ed. 2010) ("Insist on actual information on claims filed . . . . hold back the portion of any attorney fee awards that is linked with coupons, discounts or other nonmonetary benefits . . . .").

## V.   The Settling Parties Have Failed to Carry Their Burden to Show That the Proposed Settlement Is Fair, Reasonable, and Adequate, and Final Approval Should Therefore Be Denied Under Fed. R. Civ. P. 23(e)

Even aside from the general problems with coupons as the main form of relief—and the accompanying violations of CAFA—the Proposed Settlement cannot be justified as fair, reasonable, and adequate. It is a deliberately-constructed Potemkin settlement, which rewards class counsel and the defendant at the expense of absent class members. The Objector, in particular, will realize zero value from any of the provisions of the Proposed Settlement touted by Class Counsel. The Court should also take notice that the class members will realize near-zero value from the proposed $8,500,000 Settlement Fund, which exists merely as a transparent attempt to justify attorneys' fees and is wholly unrelated to the provision of any benefits to the class. The proponents of a settlement bear the burden of proving its fairness, 4 Newberg on Class Actions § 11:42 (4th Ed. 2009), and where the settling parties fail to carry that burden, a proposed settlement must be denied. In order that the Objector might aid the Court in exercising its comprehensive scrutiny of the eight *Churchill* factors as well as for subtle signs of collusion in the Proposed Settlement, *In re Bluetooth*, 654 F.3d

at 946–47, the three main problematic features of the Proposed Settlement will be explored and explained here.

### a. Coupon redemption will be low and low-value.

To claim and use the Settlement Voucher coupons, class members must follow a tortuous procedure. First, they must submit a "Settlement Fund Proof of Claim" within sixty days of the claims notice, proving their identity, proving their purchase and date of purchase, and swearing that their Groupon voucher has not been redeemed or refunded, under penalty of perjury. (*See* Stipulation of Settlement, § E.1.a–b.) If the relevant Merchant Partner has gone out of business and the class member wants a cash refund, the class member is actually made *responsible* for knowing this and declaring it on the Proof of Claim, again under threatened penalty of perjury. (*See id.* § E.1.f.) This procedure alone is likely to deter class members from receiving just compensation where near-worthless coupons cannot be issued instead.

If class members are issued Settlement Vouchers, which in most cases they will be, such coupons have no determinable value whatsoever. Any value from the Vouchers does not come out of the Settlement Fund—rather, it is dependent on the voluntary participation of the relevant Merchant Partner. (*See id.*) These Settlement Vouchers are claimed only to be valid for 130 days (*see id.*), but in fact they are not "valid" in any real sense, at any time, and do not entitle class members to anything. Merchant Partners may *voluntarily choose* whether or not to honor these coupons. (*See id.* § E.3.a (explicitly allowing for situations where a Merchant Partner is "unwilling for any reason to redeem a Settlement Voucher).) It is hard to distinguish in any practical sense between an expired Groupon—something that Ms. Browne currently possesses—and a Settlement Voucher. After all, a Merchant Partner is always free to honor or reject Ms. Browne's expired Groupon. Thus, a class member might go through the Proof of Claim procedure, get a coupon, travel to the relevant Merchant Partner, select the goods or services that she desires, then discover at the last minute that the Merchant Partner will not honor her "Voucher." In such a scenario, the class member may only extract value by submitting yet another round of paperwork, under penalty of perjury, before finally drawing any compensation from the Settlement Fund. (*See id.*)

OBJECTION TO PROPOSED SETTLEMENT          CASE NO. 3:11-md-02238-DMS-RBB

Thus the Settlement Vouchers are not truly *vouchers*—not in the sense of having a fixed value in goods or services. Nor are they even truly "coupons," which might at least allow for remedies under state consumer protection laws if not honored. Instead, these proposed Settlement Vouchers are simply pieces of paper, with hopeful words written upon them but zero intrinsic value. It is easy to imagine how participation rates by class members might be low—and were intentionally designed to be so.

Even with claims processes that are not designed to deter participation, the low redemption rate for class action coupons is well known, and was one of the motivating factors behind the Class Action Fairness Act. *See* 28 U.S.C. § 1711 note § 2(a)(3)(A). The rule of thumb is that a redemption rate for a coupon without a secondary market is between 1% and 3%. *See generally* James Tharn & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443 (2005). Here, any secondary market is diminished to the point of nonexistence by the distinct possibility that the Merchant Partner may voluntarily choose not to honor the Settlement Voucher. A voucher that a merchant may voluntarily choose not to honor will necessarily have a secondary market value approaching zero. Any secondary market is further limited by being confined to the geographic locality where the relevant Merchant Partner is located.

Considering that Groupon likely has or has access to information regarding (a) its merchant partners, (b) its former customers, and (c) redemption of Groupon vouchers by former customers which would be sufficient to obviate this circuitous claims process entirely, the Court should inquire more closely into the settling parties' reasons for choosing this process, especially for those customers whose relevant Merchant Partners have gone out of business. *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 30 (3d ed. 2010) ("First, consider whether a claims process is necessary at all. The defendant may already have the data it needs to automatically pay the claims of at least a portion of class members who do not opt out."). The Court should also bear in mind that the deterrent effect of the settling parties' chosen process reduces the value of the settlement—and thus its fairness, reasonableness, and adequacy—to

the class. *See id.* ("If the claims process deters class members from filing claims, the settlement may have less value to the class than the parties assert.")

   **b.   The "Second Settlement Fund" provides no true benefit to the class and obscures a reversion of funds to the Defendant.**

Considering that the vast funds in the original Settlement Fund will not be drawn upon for the issuance of Settlement Vouchers, as explained above, the Court should consider the destinations to which the remainder of this $8,500,000 fund will flow. In the case of the instant Proposed Settlement, such scrutiny reveals that the remainder is likely to flow to two inappropriate destinations: first, to class members for reasons completely unrelated to class membership, and second, to Groupon for reimbursement of its ongoing business expenses.

After claims have been processed, and the Settlement Fund has been used to pay attorneys' fees and expenses, notice expenses, claims administration expenses, and incentive awards and expenses, a "Second Settlement Fund" will be created. (Stipulation of Settlement § E.4.a.) Claims may initially be made against the Second Settlement Fund by class members, through submission of another round of paperwork completed under penalty of perjury. (*See id.* § E.4.c.) However, such claims can only be made for reimbursement of the purchase price paid for Groupon vouchers which are *not* relevant to class membership—for vouchers purchased "after December 1, 2011." (*See id.* § E.4.c–d.) Membership in the proposed settlement class is contingent on the purchase of a Groupon voucher *before* December 1, 2011. (*Id.* § A.50; *see also* Order Preliminarily Approving Class Action Settlement at 1, Apr. 24, 2012, ECF No. 42.) Thus, the Second Settlement Fund distributes funds based on criteria completely unrelated to class membership—and therefore unrelated to the claims of class members. The terms of the Second Settlement Fund are contrary to binding precedent. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("The district court's choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members."); *cf. Acosta v. TransUnion LLC*, 243 F.R.D. 377, 387 (C.D. Cal. 2007) (rejecting proposed settlement in part due to a finding that "dates are

arbitrary and bear no relationship to the procedural or substantive limitations on the class members' claims").

This, however, is not the most egregious feature of the Second Settlement Fund—that distinction belongs to its functionality as a tool for Groupon to reimburse itself for its ongoing business expenses. After a short initial period, Groupon will be able to make claims against the Second Settlement Fund for purchase-price refunds it makes to class members for Groupon vouchers purchased at any point after December 1, 2011. (Stipulation of Settlement § E.4.d.) The Second Settlement Fund may continue to be used in this way for two years. (*Id.*) As discussed above, the purchase of Groupon vouchers after December 1, 2011 is unrelated to class membership, and thus such reimbursements to Groupon are wholly unrelated to class relief. Furthermore, Groupon explicitly promises to make refunds available to all customers during its ongoing business operations, regardless of class membership. *See The Groupon Promise*, GROUPON.com, http://www.groupon.com/groupon_promise/ (last visited June 28, 2012) ("If the experience using your Groupon ever lets you down, we'll make it right or return your purchase. . . . any unredeemed, unprinted Groupon may be returned within the first seven days after purchase.") Because Groupon's business strategy anticipates and relies upon a significant percentage of non-redemption of the Groupon vouchers it sells, the proposed settlement class would include tens of thousands of people, many of whom are likely to have become repeat customers sometime between December 1, 2011 and the closing of the Second Settlement Fund, two years from when it is created. Groupon possesses sufficient information to identify every member of the proposed settlement class, regardless of whether they have made claims against the original Settlement Fund. In this way, a significant percentage of the $8,500,000 Settlement Fund is likely to be reclaimed by Groupon as reimbursement for its ongoing business expenses in honoring its "Groupon Promise," for refunds it would have issued regardless of this settlement, for Groupon vouchers which are completely unrelated to the definition and claims of the proposed settlement class.

Thus, the Second Settlement Fund is disguised as relief focused on the settlement class, but its larger purpose is to effectively provide significant reversion of unclaimed funds to Groupon.

12

1   Provisions that allow unclaimed funds to revert to Defendants are generally disfavored, and in

2   combination with clear sailing agreements may be held to create a presumption of unfairness.

3   Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for

4   Judges 19–20 (3d ed. 2010). While reversion to defendants has been upheld where "exceptional

5   results for the class" were obtained and collusion thereby disproven, *Glass v. UBS Fin. Servs., Inc.*,

6   331 F. App'x 452, 456 (9th Cir. 2009), it merits greater scrutiny. Where, as here, the class members

7   receive relief with zero real value, Class Counsel cannot meet its burden to show the fairness of the

8   Second Settlement Fund.

9           **c.   The injunctive relief is illusory.**

10          The injunctive relief in the proposed settlement purports to alter the terms of Groupon's

11   Vouchers going forward from the Effective Date. Specifically, Groupon agrees that for three years

12   following the Effective Date, it will not issue "more than 10% of the number annually of its Daily

13   Deals with . . . any expiration date applying to the Customer Purchase Price, except for . . ." a

14   number of time- or availability-limited categories. (Stipulation of Settlement § D.1.a.) However,

15   Groupon already assures its customers that the Customer Purchase Price value of its Groupon

16   vouchers will never expire. *FAQ*, GROUPON.com, http://www.groupon.com/faq (last visited June

17   28, 2012) ("If your Groupon's promotional value expires, you can always redeem it for the amount

18   paid.").

19          The Ninth Circuit has criticized district courts for failing to fully understand "the limited

20   scope . . . of the injunctive provisions of [a] decree." *Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th

21   Cir. 2003). Specific criticism was directed toward a district court which found, in its evaluation of

22   proposed injunctive relief, "that 'changes *will be made* . . . . [when i]n fact, the changes . . . had

23   already been implemented . . . ." *Id.* (emphasis in original). The injunctive relief here purports to

24   offer class members assurances that Groupon already gives its customers, and which state consumer

25   protection laws require. As such, the Court should find that such injunctive provisions provide no

26   actual benefit to the class whatsoever.

27

28
                                                    13

In exchange for these injunctive provisions, class members would "agree . . . that Groupon shall be permitted to sell Groupon Vouchers with expiration dates applying to their Promotional Values"—one of the exact ways in which Groupon had allegedly violated state consumer protection laws—"without challenge from the Settlement Class." (Stipulation of Settlement § D.1.a.) This provision, unlike Groupon's three-year promises, has no time limitation and would bind the class in perpetuity. The proposed settlement's injunctive relief is illusory, purporting to benefit class members by giving them assurances that Groupon will obey the law in a minimal fashion for a mere three years while wholly liquidating class members' consumer rights. Such an arrangement cannot meet the standards of fairness, adequacy, and reasonableness necessary for final approval.

## VI. The Proposed Settlement Class Should Be Decertified Because Individualized Issues Predominate Over Common Issues

When the simultaneous notice of the class and the settlement is distributed to the proposed class, objecting class members can still challenge the class on commonality, typicality, adequacy of representation, superiority, and predominance grounds—they are not limited to objections based strictly on the settlement's terms. *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 791 (3d Cir. 1995) (citing 2 Herbert Newberg & Alba Conte, Newberg On Class Actions § 11.27 at 11–40 (3d ed. 1992)). The particular area where evaluation of a proposed settlement class often falls short is in predominance. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 693. The evaluation of a settlement class should not be less rigorous than formal evaluation of a class for litigation purposes, because such "legal or factual questions . . . preexist any settlement." *Id.* at 622–23. Although the predominance requirement is "readily met in certain cases alleging consumer . . . fraud," *id.* at 625, the presence of individualized issues regarding the necessity of proving reliance may preclude a finding of predominance. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222–25 (2d Cir. 2008). Furthermore, the existence of differences in state law will compound any disparities. *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 624. Multiple courts have decertified proposed settlement classes based upon inadequacies found during the predominance

14

inquiry. *E.g.*, *Id.* at 625; *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008).

The proposed settlement class is nationwide, and would treat class members from divergent states in an identical manner. (*See* Stipulation of Settlement § A.50.) The class members in this consolidated litigation, like the Objector (who resides in Minnesota), have very different and specific claims based on divergent state consumer protection statutes. The original complaints, pre-consolidation, sounded claims in state consumer protection laws including fraud, misrepresentation and false advertising *E.g.*, Complaint at 15–21, *Zard v. Groupon, Inc.*, No. 11-cv-00605-PAM-FLN (D. Minn. Mar. 8, 2011), ECF No. 1. Federal courts have held that some state consumer protection laws—including those of Minnesota—implicate reliance as an element, requiring individualized proof. *E.g.*, *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. at 146, 153–55; *see also In re St. Jude Med., Inc.*, 522 F.3d 836, 839–40 (8th Cir. 2008) (decertifying a nationwide class of purchasers to whom the lower court had decided to apply Minnesota consumer-fraud law). Such reliance issues, implicated here, preclude final certification of this proposed settlement class. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d at 222–26 (decertifying nationwide class on predominance grounds due to individualized reliance issues); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017–19 (7th Cir. 2002) (decertifying two nationwide classes on predominance grounds due to differences in state law); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. at 155–57. "Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court." *In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1020.

## VII. The Attorney Fee Request Is Disproportionate to the Actual Benefit Derived By the Class and Should Be Both Reduced and Delayed.

Regardless of how the Court evaluates the Proposed Settlement, the Court should also carefully scrutinize the motion of Class Counsel for an award of attorneys' fees. "Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prod. Liability*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting

15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (internal quotation marks omitted)). During the settlement of class actions, "there is great concern that attorneys may sacrifice the interests of the class" for the sake of a fee award. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). For this reason, "when fees are to come out of the settlement fund, the district court has a fiduciary role for the class." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009). "Given . . . economic realities, the assumption in scrutinizing a class action settlement agreement must be, and has always been, that the members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). Fees must be "fundamentally fair, adequate, and reasonable." *Id.* The Ninth Circuit therefore instructs that "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963.

While courts in this circuit regularly have afforded a presumption of fairness to non-collusive settlement, the same deference is not appropriate in considering the fairness of an award of attorneys' fees. *See Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need to carefully scrutinize the fee award."); *In re HP Inkjet Printer Litig.*, 5:05-CV-3580 JF, 2011 WL 1158635, at *9 (N.D. Cal. Mar. 29, 2011); *Create–A–Card, Inc. v. Intuit, Inc.*, No. C 07–06452 WHA, 2009 WL 3073920, at *2 (N.D. Cal. Sept. 22, 2009) ("It is clearly within the Court's discretion to award less in fees than the amount sought by counsel, even absent defendant's objection to the requested amount."). The Court remains independently obligated to ensure that any fee award is fair and reasonable, even if the parties have already agreed to an amount. *In re Bluetooth*, 646 F.3d at 941; *see also Wing v. Asarco, Inc.,* 114 F.3d 986, 988 (9th Cir.1997)

    **a.  The particular circumstances and terms of the Proposed Settlement necessitate an especially high level of scrutiny.**

Courts have applied special care to evaluating fee requests which are "negotiated at the same time as the substantive relief to the class." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d at 1078.

16

This is because such negotiation creates a risk of collusion. One prominent example of simultaneous negotiation is found in "clear sailing" agreements. *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 20 (3d ed. 2010) (defining a "clear sailing" agreement as a "stipulation that attorney fees based on the inflated settlement figure will not be contested" and advising that it "adds decibels to the alarms set off" by other settlement red flags). The Ninth Circuit has cautioned that a clear sailing agreement is a "warning sign" that may point toward collusion and gives "the district court . . . a special obligation to assure itself that the fees awarded in the agreement were not unreasonably high"—because if they are, this may indicate an unfair settlement agreement. *In re Bluetooth*, 654 F.3d at 947 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) (internal marks omitted)).

In the instant Proposed Settlement, the settling parties instituted a clear sailing arrangement, whereby Defendants agreed not to contest Plaintiffs' Counsel's fee request so long as it was for a total amount of less than 25% of the Settlement Fund amount. (Stipulation of Settlement § I.1.) Clear sailing provisions such as this are disfavored in the Ninth Circuit because they deprive the court and the absent class members of the benefit of the adversarial process, and thus necessitate greater scrutiny. *In re Bluetooth*, 654 F.3d at 949. "[T]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991). The role of the Second Settlement Fund in reverting funds back to Groupon heightens these concerns further.

In addition, this litigation presents an instance where a settlement agreement precedes formal evaluation of class certification, which alone merits greater scrutiny by the Court. "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liability*, 654 F.3d at 946–47 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d at 1026). Accordingly, mere consideration and satisfaction of the *Churchill* factors alone are *not enough* to sustain a settlement as fair, and is "not

17

1   enough to survive appellate review." *Id.* at 946–47. Rather, the Court must also look for "subtle

2   signs" of collusion in facts such as a disproportionate attorneys' fees distribution, a "clear sailing"

3   arrangement, or the reversion of funds to the defendants—all of which exist here. *See id.* at 947.

4   **b.  The attorney fee request cannot be justified under a "common fund" analysis.**

5   A "common fund" analysis is an appropriate method that a court has the discretion to select

6   for the purpose of determining attorneys' fees, only "[w]here a settlement produces a common fund

7   for the benefit of the entire class." *In re Bluetooth*, 654 F.3d at 942; *see also In re Mercury*

8   *Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). In such cases, 25% of the fund serves as a

9   reasonable "benchmark," and the court should explain any special circumstances justifying a

10  departure. *In re Bluetooth*, 654 F.3d at 942; *Six (6) Mexican Workers*, 904 F.2d at 1311.

11  However, the common fund approach rests on the court's judgment that such a fund exists,

12  and that "the benefit to the class is easily quantified" by reference to that common fund. *In re*

13  *Bluetooth*, 654 F.3d at 942. Furthermore, the court must exercise its discretion "so as to achieve a

14  reasonable result." *Id.*

15  In the proposed settlement before the Court, no true common fund exists from which the

16  Court could easily quantify the benefit to the class. The value of any Settlement Vouchers is not

17  accounted for by the Settlement Fund, but is voluntarily paid by Merchant Partners. The amount of

18  the Settlement Fund which will become part of a *cy pres* award—and thus should be excluded for

19  purposes of calculating attorneys' fees—is completely unknown. *See supra* Part IV.b. The amount of

20  the Settlement Fund which will go to benefit the class—and not revert back to Groupon through

21  reimbursements for its ongoing business expenses during Second Settlement Fund administration—

22  is completely unknown. The Court has received no testimony or evidence as to the value of the

23  injunctive relief or of the Settlement Vouchers, and as such should not accept the $8,500,000

24  Settlement Fund figure as a simple common fund, or find 25% of that fund to be a reasonable

25  amount for fees, without further investigation. *See* Barbara J. Rothstein & Thomas E. Willging,

26  Managing Class Action Litigation: A Pocket Guide for Judges 20 (3d ed. 2010) ("Redemption data

27  or other evidence of class use is essential. In some cases, particularly settlements involving

28  

OBJECTION TO PROPOSED SETTLEMENT          CASE NO. 3:11-md-02238-DMS-RBB

1   injunctive or declaratory relief, you might use expert valuations based on reliable, objective

2   standards. In other cases, perhaps a majority, the only reliable test of the benefit to the class will be

3   evidence of class members' use or redemption of the coupons, warrants, or other nonmonetary

4   scrip.")

5          The use of a common fund analysis, and the 25% benchmark, is inappropriate here, where the

6   "Settlement Fund" identified by the settling parties as a common fund in no way suffices to represent

7   the value to the class. The Ninth Circuit has instructed courts to "ensure that the fee award is

8   reasonable considering, *inter alia*, the degree of success in the litigation and benefit to the class." *In*

9   *re Bluetooth*, 654 F.3d at 945. The proposed Settlement Fund does not provide an adequate reference

10  point for such a determination, and so the 25% of that fund agreed to by the settling parties in their

11  clear sailing arrangement is *per se* unreasonable, as it is completely divorced from any consideration

12  of benefit to the class. The Court should therefore decline to treat the Proposed Settlement as

13  establishing a common fund for the purposes of calculating fee awards, and should make other

14  modifications to ensure that any fee award is based on the benefit secured for the class members.

15              **c.  The attorney fee request is excessive under a lodestar analysis, shows evidence of**

16                  **unreasonable hours claimed, and requires scrutiny by the Court.**

17          While a lodestar method of awarding fees is permissible under CAFA, application of a

18  "lodestar amount is particularly inappropriate where . . . the benefit achieved for the class is small

19  and the lodestar amount large." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d at 1077. While a

20  lodestar figure is presumptively reasonable, the Ninth Circuit has cautioned that any lodestar figure

21  should be adjusted upward or downward based on an appropriate positive or negative multiplier

22  based on reasonableness factors. *In re Bluetooth*, 654 F.3d at 942. The foremost consideration in

23  determining the reasonableness of a lodestar figure should be "the benefit obtained for the class." *Id.*

24  (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *McCown v. City of Fontana*, 565 F.3d

25  1097, 1102 (9th Cir. 2009)). The contingency nature of plaintiffs' counsel's representation cannot be

26  used to justify a fee enhancement or an inflated hourly rate. *Welch v. Metropolitan Life Ins. Co.*, 480

27  F.3d 942, 947 (9th Cir. 2007); *see also Cann v. Carpenters' Pension Trust Fund*, 989 F.2d 313, 318

28

1  (9th Cir. 1993) (contingency fee enhancement); *Davis v. City and Cnty. of San Francisco*, 976 F.2d

2  1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (1993) (inflated hourly

3  rate). Rather, the "key consideration in determining a fee award is reasonableness in light of the

4  benefit *actually conferred*," even under a lodestar analysis. *Create-A-Card, Inc. v. Intuit, Inc.*, No. C

5  07-06452 WHA, 2009 WL 3073920, at *3 (N.D. Cal. Sept. 22, 2009).

6          Under the Proposed Settlement terms, the class has achieved extremely limited results—

7  unfair, inadequate, and insufficient results, as argued elsewhere in this brief. "[W]here the plaintiff

8  has achieved 'only limited success,' counting *all* hours expended on the litigation—even those

9  reasonably spent—may produce an 'excessive amount' . . . ." *In re Bluetooth*, 654 F.3d at 942

10  (quoting *Hensley*, 461 U.S. at 436, 440). Therefore, the fee award requested by Plaintiffs' counsel is

11  excessive in this case, and a negative multiplier should be applied due to the sheer inadequacy of the

12  results obtained for the class. Further separate and independent negative reductions from the lodestar

13  amount are also appropriate for block billing and billing in quarter-hour increments, as will now be

14  explained in depth.

15          Reductions are appropriate where plaintiffs' counsel chooses to "block bill" its time rather

16  than itemize each task individually. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d at 948. The fee

17  applicant bears the burden of documenting the appropriate hours expended in the litigation and must

18  submit evidence in support of those hours worked. *Id.*; *see also Gates v. Deukmejian*, 987 F.2d 1392,

19  1397 (9th Cir. 1992). Block billing justifies reductions because it makes it more difficult to

20  determine how much time was spent on particular activities. *Welch*, 480 F.3d at 948; *see also, e.g.*,

21  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours

22  because counsel's billing "lump[ed] together multiple tasks, making it impossible to evaluate their

23  reasonableness"); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that a

24  district court may reduce hours to offset "poorly documented" billing). Block billing "may increase

25  time by 10% to 30%." *See* The State Bar of California Committee on Mandatory Fee Arbitration,

26  Arbitration Advisory 03-01 (2003).

27

28

Here, Class Counsel as well as other Plaintiffs' counsel have failed to individually itemize the tasks completed during the hours claimed—only total accumulated hours have been submitted per attorney, with no timesheets specifying what tasks relating to the litigation were accomplished. (*See generally* Pl.'s Notice Of Mot. & Mot. For Award of Att'y's Fees, Reimbursement of Expenses & Incentive Award Payments, June 22, 2012, ECF No. 48 (and attached supporting documents).) It may be true that counsel possess such documentation, and have merely failed to submit it, in which case reduction is only appropriate for those hours which were actually block billed. *Welch*, 480 F.3d at 948. Therefore, the Court should direct Class Counsel and other Plaintiffs' counsel to submit full billing records for the Court's evaluation, and enter reductions to the hours claimed where block billing has occurred. Once the Court has separated block billed hours from those for which counsel can submit appropriate documentation, a 20% reduction on block billed hours would be appropriate, as this represents the middle range of the likely unjustified increase in billed time from block billing practices. *See id.*

Reductions are also appropriate where plaintiffs' counsel chooses to bill in quarter-hour increments. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d at 948–49. This is because it may result in a request for compensation for hours not reasonably expended on the litigation. *Id.* Such findings may be made upon a review of the firm's summary time sheet for features such as "phone calls and e-mails that likely took a fraction of the time," as well as "quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences." *Id.* at 949 (affirming the district court's 20% across-the-board reduction on counsel's requested hours where counsel had billed in quarter-hour increments).

A review of the documentation submitted by Class Counsel and other Plaintiffs' counsel in their fee request shows a likelihood that hours were billed in quarter-hour increments, due to the presence of claimed hour totals which end in ".0," ".25," ".5," and ".75." (*See generally* Pl.'s Notice Of Mot. & Mot. For Award of Att'y's Fees, Reimbursement of Expenses & Incentive Award Payments, June 22, 2012, ECF No. 48 (and attached supporting documents).) Thus, the firms that appear to have engaged in quarter-hour billing include Class Counsel, Robbins Geller Rudman &

Dowd LLP (*see* Decl. of Rachel L. Jensen ISO Award of Att'y's Fees, Expenses & Incentive Awards, at 12 ¶ 54, June 22, 2012, ECF No. 48-2.) This is especially significant because Class Counsel appear to have billed approximately half of the total hours claimed. (*See id.* at 14 tbl.1.) Other firms that appear to have engaged in quarter-hour billing include Cuneo Gilbert & LaDuca LLP (*see id.*), Foote Meyers Mielke & Flowers, LLC (*see id.*), Audet & Partners, LLP (*see id.*), Strange & Carpenter (*see id.*), Levin Fishbein Sedran & Berman (*see id.*), Van Eyk & Moore, PLLC (*see id.*), Parry Deering Futscher & Sparks PSC (*see id.*), Law Offices of Julio J. Ramos (*see id.*), Blood Hurst & O'Reardon, LLP (*see id.*), The Terrell Law Group (*see id.*), and Baillon Thome Jozwiak Miller & Wanta LLP (*see id.*).

Admittedly, there is no way for the Objector or the Court to ascertain whether quarter-hour billing occurred without the provision of a true summary time sheet for each attorney at the relevant firms. Nor is there a way to ascertain whether such quarter-hour billing was likely to result in significant over-billing unless such summary time sheet sufficiently itemizes the tasks completed during given time periods and does not use block billing, as discussed above. However, it is especially troubling that more than half the hours claimed here—including those hours claimed by Class Counsel—facially appear to have used this flawed method. The Court should instruct those firms whose billing practices have raised suspicion to submit all such further documentation as would aid it to execute its fiduciary duty to the absent class members. Upon any finding that a firm or an individual attorney at said firm used quarter-hour billing, the Court should then determine whether such firm or individual attorney adequately itemized the services rendered during the claimed time periods, such that the Court can determine that the billing practices did not result in excessive hours claimed. If the Court finds that such firms or attorneys used block billing, or that the itemized summary time sheet shows a likelihood of excessive hours claimed, the Court should apply an across-the-board 20% reduction to those claimed hours. A 20% reduction under these circumstances is entirely appropriate as part of the Court's independent fiduciary duty to the absent class members, and is well within the Court's discretion. *See Welch v. Metropolitan Life Ins. Co.*,

22

480 F.3d 942, 948–49 (9th Cir. 2007) (affirming and approving a 20% across-the-board reduction in hours claimed under similar circumstances).

In summation, the Court should reject the use of a common fund analysis in favor of a lodestar analysis. However, the court should institute several independent reductions from the lodestar amount to ensure the fairness and reasonableness of any fee award. First, a negative multiplier for the minimal, inadequate results obtained. Second, a 20% reduction in any hours claimed which suffer from block billing. Third, a 20% across-the-board reduction in any hours claimed which use quarter-hour billing in a way that appears likely to create an excessive or inflated total hours amount. However, all of this should occur according to the provisions of CAFA, which necessitates that the consideration of a fee award be delayed considerably from the proposed schedule.

**d.   The attorney fee request is premature under CAFA, and under the proposed settlement terms cannot be properly calculated until the Second Settlement Fund has been closed.**

The advisory committee notes for Fed. R. Civ. P. 23(h) expressly recognize that, "[i]n some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known." Fed. R. Civ. P. 23(h), 2003 advisory committee notes. In coupon settlements, attorneys' fees "*shall be* based on the value to class members of the coupons that *are* redeemed" rather than the theoretical value of the coupons available for redemption. 28 U.S.C. § 1712(a) (emphasis added). Furthermore, CAFA section 1712(e) prohibits the use of any *cy pres* award amounts in calculating attorneys' fees. 28 U.S.C. § 1712(e).

Even under a lodestar analysis, the ultimate determining factor in the reasonableness of a fee award is "the benefit *actually conferred*." *Create-A-Card, Inc. v. Intuit, Inc.*, No. C 07-06452 WHA, 2009 WL 3073920, at *3 (N.D. Cal. Sept. 22, 2009); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983); *In re Bluetooth*, 654 F.3d at 942. Such benefit cannot be determined here, in light of

the indeterminate coupon redemption rate and *cy pres* amount,[2] until very late in the claims administration process—even until the closing of the Second Settlement Fund. Thus, even if the Court chooses to use a lodestar analysis it cannot adequately cross-check any fee award against the benefits actually conferred to the class until a much later date in the settlement timeline.

To award attorneys' fees now, at this juncture of the litigation, would be to reward Plaintiffs' counsel for structuring a settlement that gives indeterminate, minimal relief to the class, and to encourage such settlements in the future. A guide to class actions published by the Federal Judicial Center admonishes in no uncertain terms that judges should "not award fees until you know the true value of the settlement," and advises "ensur[ing] that you have sufficient information" by "hold[ing] back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use." Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 34–35 (3d ed. 2010). Such a plan is reasonable and appropriate here. However, because of the indeterminate *cy pres* award, which is effectively a redistribution of unclaimed coupon value that under CAFA may not be applied towards attorneys' fees, the Court should postpone any award of attorneys' fees until the full conclusion of claim administration and the closing of the Second Settlement Fund. Only then will the Court be adequately informed to cross-check the value of any fee award against the value of benefits truly provided to the class.

## CONCLUSION

Neither the Proposed Settlement, nor the proposed attorneys' fee award should be given final approval by the Court. The Proposed Settlement is a coupon settlement which violates multiple provisions of CAFA, and should be rejected on that basis alone. The terms of the Proposed Settlement also would provide extremely minimal relief to the class, such that the Proposed Settlement cannot be approved as fair, reasonable, or adequate under Fed. R. Civ. P. 23(e). Further, the Proposed Settlement Class should be decertified because individualized issues of state consumer

---

[2] For a full discussion of the indeterminacy of class relief in this Proposed Settlement, and the ways in which the settling parties' proposed timeline would violate CAFA, see *supra* Part IV.

24

protection law predominate over any common issues. Finally, the proposed attorneys' fee award is excessive and unjustifiable under any theory of calculation, and must be both reduced and delayed in order for the Court to faithfully execute its independent fiduciary duty to the class.

For all of these reasons, the Proposed Settlement and attorneys' fee request represent an unfair and unjust attempt to liquidate the consumer rights of the Objector and tens of thousands of similarly-situated consumers for grossly inadequate consideration. Due to the signs of collusion, the Objector can only conclude that Class Counsel sacrificed the interests of the class for a chance at obtaining significant attorneys' fees without opposition from Groupon or the other Defendants. In the interests of justice, the Proposed Settlement and attorneys' fee award must be rejected. Plaintiff respectfully respects an incentive award and the court's consideration of an award of attorney's fees for Plaintiff's efforts in defending the interests of absent class members against the collusive terms of the Proposed Settlement.

Respectfully Submitted,

**DATED: July 6, 2012**

By:  ____/s/  Brett L. Gibbs, Esq._____

Brett L. Gibbs, Esq. (SBN 251000)
38 Miller Avenue, #263
Mill Valley, CA 94941
*Attorney for Objector, Padraigin Browne*

25

OBJECTION TO PROPOSED SETTLEMENT          CASE NO. 3:11-md-02238-DMS-RBB

1

## CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that on **July 6, 2012**, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system.

3

4

5

<u>/s Brett Gibbs</u>

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28