Darrell Palmer (SBN 125147)
darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer PC
603 North Highway 101, Suite A
Solana Beach, California 92075
Telephone: (858) 792-5600
Facsimile: (858) 792-5655

Attorneys for Objectors
Chris Brown, Maggie Strohlein and Robert Falkner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GROUPON MARKETING AND SALES PRACTICES LITIGATION<br><br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:11-md-02238-DMS-RBB<br><br>AMENDED OBJECTION OF CHRIS BROWN, MAGGIE STROHLEIN AND ROBERT FALKNER TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING |

## I.  __INTRODUCTION__

CLASS MEMBERS CHRIS BROWN, MARGARET STROHLEIN and ROBERT FALKNER (hereinafter, "Objectors") submit the following arguments and hereby lodge their objections with this Court regarding the settlement of *In re Groupon Marketing and Sales Practices Litigation*, Case No. 3:11-md-02238-DMS-RBB, pending before the United States District Court for the Southern District of California.

In compliance with the requirements in the class notice (¶ 10) Objectors will provide their address, telephone number, email address, and proofs of purchase of their Groupon upon request by Court or counsel.  They redact the information here for privacy purposes.  The bases for their objections and the reasons supporting are submitted below.

Objectors intend to appear at the final fairness hearing by and through their counsel of record.

/ / /

## II. <u>LEGAL AUTHORITY</u>

**A. Fiduciary Duty of the Court**

The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent class members and to police class action proceedings." *Strong v. BellSouth Telecommunications*, Inc., 137 F.3d 844, 849 (5th Cir. 1998). The duty requires a review of the details of the settlement. *Id.* Rule 23(e) of the Federal Rules of Civil Procedure provides "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it is fundamentally fair, adequate and reasonable. *Id.* This rule has been read as a requirement for the court to "'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'" *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001), citing *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995).

The district court's scrutiny does not end with a detailed analysis of the settlement terms, but rather, extends to the fee request made by counsel as well. The 2003 Committee Notes to Rule 23(h) state that "[a]ctive judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

One such reason for the court's scrutiny lies in the inherent nature of class actions. Once a settlement is reached, both Class and Defense counsels' interests change. No longer vigorously advocating for their clients' interests, Class Counsel's interests are conflicted with the Class as they move to the front of the line to dip into the very fund they purportedly created with only their clients' interests in mind. Defense Counsel, alternatively, cares naught for the disbursement of fees to Class Counsel as payment of those fees will be deducted from the sum total their client is already paying. Whether Class Counsel takes 2% of the fund or 50% as the result is generally the same for the paying

1    defendant in either scenario.  The Court becomes the fiduciary for the class and must monitor

2    disbursement to the class and attorneys.   *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir.

3    1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989.)

4    **B.  The *Cy Pres* Award is Improper**

5           The doctrine of *cy pres* originated in the law of wills and trusts and allowed courts to redirect

6    money from trusts and testamentary gifts that would otherwise fail for legal reasons. *In Re Wells Fargo*

7    *Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998). However, a court cannot direct

8    excess funds to any seemingly worthwhile recipient. Instead, the funds must be used in such a way that

9    best serve the original intent of the settlor or testator. *Id*. at 1195.

10          In the context of class actions, distribution of funds through the use of *cy pres* should be limited

11   in two ways.  *Id*. at 1194. First, the doctrine of *cy pres* should only be invoked when "(1) no parties have

12   equitable interests in the residue or (2) distribution to such parties would be impractical." *Id*. Second, "a

13   court must be careful to direct the residue to an entity that will indirectly serve the interests of class

14   members or "others similarly situated, e.g. future class members who engage in future transactions of

15   the type involved in the class litigation." *Id*. at 1195.

16          This proposed settlement fails under this doctrine.  Distribution to the class is not impractical,

17   nor has it yet been attempted. Plaintiff intends to immediately disburse *cy pres* funds without first

18   making it available to the class.  Class Counsel owes a fiduciary duty to the entire class once the

19   complaint is filed. *Staton* 327 F. 3d at 960.  Class counsel has not explained why class should donate any

20   portion of the award, including a minimum of $75,000 or more of the $7.5 million dollar fund, <u>prior to</u>

21   <u>the class ever receiving one cent</u>.

22          This disbursement is the antitheses of the purpose of this doctrine, because it takes money away

23   from its first best use – the class.  A *cy pres* recipient should only be chosen if distribution to the class is

24   proven to be impractical. Only then may the funds be put to use in such a way that effectuates the

25   underlying purpose of the cause of action. See *Bruno v. Superior Court,* 127 Cal.App.3d 120, 129

26   (1980).  Distribution of the funds to its first best use has not yet been proven impracticable.  This Court

27   should closely scrutinize this portion of the settlement.

28

Furthermore, class counsel has not yet indicated to which charity or charities the donation will be given.  The class is entitled to review the suggested donee and comment, prior to Court approval.

**C.  The Attorneys' Fee Request is Excessive.**

### 1.  *This is a Claims Made Settlement.*

The potential for abuse of the class action vehicle is most pronounced in cases involving claims-made settlements.  First, only a fraction of any given class is likely to claim the benefits provided for in a settlement. Indeed, "[i]t is not unusual for only 10 or 15% of the class members to bother filing claims," and "[w]hen settlements require class members to file statements or proofs of claim in order to receive their share . . . 'response rates are often very small, and rarely exceed 50%'." Christopher R. Leslie, The Significance of Silence: Collective Action Problems and Class Action Settlements, 59 FLA. L. REV. 71, 119-20 (2007) (quoting *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 605 (M.D. Pa. 1996)); See also *Sylvester v. CIGNA Corp.,* 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less.").

This settlement is more of a windfall for the Defendants than for the Class.  Defendants escape a tremendous liability and damage threat by paying only attorneys' fees to class counsel and providing a fund which will amount to *de minimis* awards to the class.  The minimal and, as yet undefined, value of the recovery to the Class and the significant worth of this settlement to the Defendants should be considered in this Court's final approval of the settlement.

### 2.  *The Fee Award Should Be Based on the Total Claims Made.*

In this case, the value of the total reward to the Class can only be calculated by a determination of the total claims made by the Class Members.  *See e.g.*, *In re Compact Disc Minimum Advertised Price Litig.*, 370 F.Supp.2d 320 (D. Me. 2005)(awarding attorneys' fees of 3% of value of redeemed coupons which was 30% of claimed lodestar).  *See also*, *In re Excess Value Ins. Coverage Litig.*, 2005 U.S. Dist. LEXIS 45104 (SDNY 2006) at *28-33 (awarding class counsel fees in the amount of 50% of vouchers redeemed, which was 35% of lodestar).

> Recognizing that percentage of funds is the preferred method of assessing fees in a settlement like this, with lodestar analysis providing only a check, the court can effectively gauge appropriate attorney fees only if it knows the total value of the settlement.  But although I am satisfied that the coupon settlement has value to the class, I am not confident of the redemption rate that has been projected and thus

AMENDED OBJECTION OF CHRIS BROWN, MAGGIE STROHLEIN AND ROBERT FALKNER
TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING

of the settlement's total value.  Therefore, I have determined to delay award of attorney fees until experience shows how many vouchers are exercised and thus how valuable the settlement really is.

*In re Compact disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp.2d 184 189-190 (D. Me. 2003)(Hornby, D.J.).[1]

The percentage of Settlement approach cannot be reasonably employed at this point because the Settlement's actual value to the Class is unclear and cannot accurately be assessed until the rate at which Class Members redeem … is known …

*In re Excess value Ins. Coverage Litig.*, 2004 2004 WL 1724980 (S.D.N.Y.,2004.) at *16.

The case of *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083. (N.D.Cal. 2008), is likewise applicable to the situation before this Court.  In *Yeagley,* these same objector attorneys argued that the court confront the task of evaluating a coupon settlement for the purpose of awarding attorney fees:

To award class counsel the same fee regardless of the claim participation rate, that is, regardless of the enthusiasm of the class for the benefits purportedly negotiated on their behalf, would reduce the incentive in future cases for class counsel to create a settlement which actually addresses the needs of the class.  In this case, for example, the one percent claim rate demonstrates that the brochure did not effectively educate the claim members about the importance of credit reports and monitoring their credit … Common sense dictates that a reasonable fee in a class action settlement is a fee that takes into account the actual results obtained… *Id.* at *9.

Accordingly, these Objectors request that the Court wait to make a determination regarding fees until all claims are in and the value to the class can truly be ascertained.

**D.  The Settlement Value and Injunctive Relief are Illusory.**

The settlement provides that, upon filing a valid claim form, "you *may* be entitled to receive a Settlement Voucher that will allow you to redeem unredeemed Groupon Vouchers that have not been

[1] See, for example, in *Ohio Pub. Interest Campaign v. Fisher Foods, Inc.,* 546 F.Supp. 1, 5 (N.D.Ohio 1982), the court approved a class action settlement involving the use of "Food Purchase Certificates." However, "[r]ecognizing the likelihood that many Food Certificates [would] not be used by their recipients," the settlement further provided that the defendants would make payments of food or cash to charitable organizations "to the extent that Certificates [were] not redeemed in any given year." *Id.* In *Langford v. Bombay Palace Restaurants, Inc.,* No. 88 Civ. 5279, 1991 WL 61107, at *1 (S.D.N.Y. April 8, 1991), and *In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.Supp. 1379, 1382 (D.Md.1983), the coupons issued as part of the settlements were redeemable for product discounts or, alternatively, for a lesser amount of cash. In other cases, scrip is used in class action settlements in conjunction with cash payments. See, e.g., *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 305 (N.D.Ga.1993*); In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.,* No. MDL 150, 1993 WL 39306, at *2 (C.D.Cal. Jan. 12, 1993); *New York v. Nintendo of Am., Inc.*, 775 F.Supp. 676, 679 (S.D.N.Y.1991).

refunded and that are past their stated expiration dates, for goods and services at the merchant listed in the voucher, *up to the purchase price that you paid.*"  (Notice ¶ 4.)(Emphasis added.)  These claims may be made, and for every corresponding claim, a monetary value is deducted from the common fund.

### 1.  *The Settlement Terms Change Nothing About Groupon's Pre-existing Business Practices.*

There are two problems with this settlement: One, this "settlement" changes nothing about Groupon's ordinary business practices.  With respect to expired Groupons, the Company has always offered to either refund the purchase price, and/or merchants have agreed to honor the Groupon up to the value paid.  Therefore, the class receives nothing it was not already entitled to by the terms and conditions of Groupon.

### 2.  *The Common Fund is Closer to $2.2 Million.*

Second, the supposed "common fund" is nothing more than what class members have already paid to Groupon and which they were already (and still) entitled to receive from Groupon – the actual value of what they paid to Groupon when they made a purchase.  Accordingly, Defendants have not put together a common fund.  They have merely recycled the monies received from sold Groupons, and have offered to continue to honor the paid value of these Groupons (which they already did prior to this settlement.)  Accordingly, the common fund is nothing more than $75,000, plus attorney's fees and costs amounting to $2.125 million, and the cost of notice and disbursement to the class.  This is a far cry short of the purported $8.5 million stated in the Notice.  Accordingly, Objectors request that the Court assess attorney's fees based upon this value, instead of the hypothetical common fund of $8.5 million.

## II.    ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS

These Objectors join in and adopt all well-taken, good-faith objections filed by other Class Members in this case and incorporate them by reference as if they appeared fully herein.

## III.    CONCLUSION

For the foregoing reasons and all others presented at oral argument, these Objectors respectfully request that the Court sustain their objections and grant the following relief:

A. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

B.  Award an incentive fee to Objectors for their service in improving the fairness of the settlement, as well as consider awarding an attorneys' fee to their attorney.

LAW OFFICES OF DARRELL PALMER PC

Dated:  July 10, 2012                    By: /s/ Darrell Palmer_____
                                             Darrell Palmer
                                             Attorney for Objectors

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2012, I electronically filed the foregoing AMENDED OBJECTION OF CHRIS BROWN, MAGGIE STROHLEIN AND ROBERT FALKNER TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING with the Clerk of the Court of the United States District Court for the Southern District of California by using the USDC CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC CM/ECF system.

____/s/ Darrell Palmer____
Darrell Palmer
Attorney for Objectors

AMENDED OBJECTION OF CHRIS BROWN, MAGGIE STROHLEIN AND ROBERT FALKNER
TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR AT HEARING