Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS LLC**
1718 M Street NW
No. 236
Washington, DC 20036
Tfrank@gmail.com
(703) 203-3848
*In pro per*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 3:11-md-2238-DMS-RBB |
| Groupon, Inc., Marketing and Sales Practices Litigation | **DECLARATION OF THEODORE H. FRANK, OBJECTION TO PROPOSED SETTLEMENT, AND NOTICE OF INTENT TO APPEAR**<br><br>Date:         September 7, 2012<br>Time:         1:30 p.m.<br>Courtroom:  10<br>Judge:        Hon. Dana M. Sabraw |

I, Theodore H. Frank, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I am a member of the class, and I object to this settlement for several reasons, but most of all because it unambiguously makes me worse off than if the class action had never been brought. Moreover, because the attorneys and class representatives have breached their duty under Fed. R. Civ. Proc. 23(a)(4) in bringing a class action and negotiating a class action settlement that benefits the attorneys at the expense of the class, the class cannot be certified.

3. I intend to appear at the Final Approval Hearing. My full name is Theodore Harold Frank. My business address is 1718 M Street NW, No. 236, Washington, DC 20036; my home address is available upon request and registered with Groupon under the name "Ted Frank" and email address tfrank@gmail.com. My telephone number is (703) 203-3848. Groupon, Inc., can verify that I have purchased numerous Groupon Vouchers from them, including, but not limited to:

| Order Number | Date | Entity | Purchase Price |
|---|---|---|---|
| 2891111 | April 27, 2010 | Finemondo | $20.00 |
| 3053837 | May 4, 2010 | Shoes, Cup and Cork Club | $12.00 |
| 3205910 | May 10, 2010 | Casa Oaxaca | $15.00 |
| 3483648 | May 20, 2010 | Z Pizza | $10.00 |
| 4254750 | June 16, 2010 | BDs Mongolian Barbeque Bethesda | $15.00 |
| 7856894 | September 1, 2010 | Corcoran Gallery of Art (two) | $10.00 |

These seven Groupon Vouchers are each unredeemed and expired. I eventually recognized that my aspirations for bargains exceeded my free time to use Groupon Vouchers or willingness to shlep to Leesburg to save a few dollars, and stopped using Groupon except for the occasional magazine subscription. The difficulty of dealing with magazine subscriptions through Groupon means that I no longer wish to use Groupon for even that. I have $50 in unused Groupon credits, and am unlikely to use them, and

1  do not wish to receive any more Groupon credits. As a past Groupon customer, the
2  prospective injunctive relief is worthless to me.

3  4.  The settlement is objectionable for several reasons, but most of all because it replaces
4  Groupon's friendly and exceptionable customer service experience with an unfriendly
5  class-action claims process that makes class members worse off. As such, there is no
6  class benefit achieved by the settlement, but the attorneys will collect millions.

7  5.  Groupon has always provided a money-back guarantee to customers who have had
8  problems with vouchers; they call this "The Groupon Promise." "[I]f Groupon ever lets
9  you down, we'll return your purchase—simple as that. Why? Because when we do a bad
10 job, we want it to be easy for you to punish us. We believe that when a customer has a
11 bad experience, companies pay for it sooner or later—so we'd rather pay fast so we can
12 make things right before it's too late." *See* Andrew, "The Groupon Promise,"
13 *GrouBlogPon* (Feb. 2, 2010), available at https://blog.groupon.com/cities/the-groupon-
14 promise/. A true and correct copy of a printout of the blog post, as accessed on July 26,
15 2012, is attached as Exhibit 1. (Pages on the Groupon website will not print in
16 "WYSIWYG" fashion for reasons I am not technically adept enough to fix.)

17 6.  For example, on June 11, 2010, within the class period, I purchased for $25.00 a Groupon
18 Voucher for a $60 "Stock Car Driving Experience" at Old Dominion Speedway in
19 Manassas, Virginia.  Unfortunately, the company rarely had appointment slots open,
20 and I was unable to redeem my Groupon within the expiry time. In Customer Service
21 Ticket 3488570 on or about June 5, 2011, before the settlement was signed on March 29,
22 2012, I protested to Groupon that I could not use the voucher because of the difficulty of
23 scheduling. With no questions asked, "Joshua G." of Groupon issued me a full cash
24 refund to my credit card the same day.

25 7.  On April 9, 2010, within the class period, I purchased for $30.00 two Groupon Vouchers
26 to be used at the *kaiten-zushi* restaurant Wasabi Sushi, redeemable only at their
27 Washington, DC location. Before I could use the Groupon Vouchers, however, that
   location went out of business at some point in early 2012, and I somehow did not notice

1    until that summer.

2  8.  On January 1, 2012, outside of the class period, with Order Number 68923016, I used

3      Groupon to purchase a 51-issue subscription to *The Economist* for $51.

4  9.  In July of 2012, I moved my home address. I subscribe to several magazines. My mother

5      volunteered to do me the favor of contacting these magazine publishers to change my

6      address, but when she contacted *The Economist*, she was told that I could only change my

7      mailing address by contacting Groupon because the subscription was through them.

8  10. Thus, on or about July 16, 2012, I did three things. First, I changed my home address on

9      file with Groupon. Second and third, I filed two customer-service tickets with Groupon.

10     In Ticket No. 10428534, I asked Groupon to change my mailing address for my *Economist*

11     subscription. In Ticket No. 10428537, I asked Groupon to refund my $30 purchase for

12     Wasabi Sushi because I could not use the vouchers at the closed location.

13 11. For some reason, Groupon had trouble matching my home address on file with

14     Groupon with the address I wanted on my *Economist* subscription because the customer

15     service representatives did not have access to that aspect of my account. Though all I

16     wanted Groupon to do was to provide my new address to *The Economist*, after only three

17     emails over the course of six days, they apparently decided it was simpler to give me a

18     full refund, which they did on July 22, 2012, which was both unsolicited and far and

19     beyond the level of customer service I expect—without even asking, I received a refund

20     and effectively got six months of *The Economist* for free because of a minor problem with

21     a Groupon Voucher I purchased outside the class period.

22 12. But the customer service response for the voucher for Wasabi Sushi, which I purchased

23     during the class period, and sought reimbursement for after the settlement was signed,

24     was remarkably different. Instead of giving me a refund, Groupon wrote me on July 16,

25     2012, to tell me that "because this Groupon was purchased between November 1, 2008

26     and December 1, 2011," I would have to go to the claims website and fill out a claim

27     form, whereupon I "may be eligible for a benefit from a class action settlement."

28 13. Of course, under the class action settlement, I would not be reimbursed for, at a

minimum, several months; even at the earliest possible "Effective Date," my experience with class action settlement administrators is that it takes them several weeks to process claims. Moreover, if the settlement fund was exhausted (in part because of the excessive fee request), I might not be reimbursed in full.

14. So, before the class action settlement, I (and presumably other class members) could get a full cash refund immediately when I had a problem with a Groupon Voucher. For problems with Groupon Vouchers that I purchased after the class period, and thus not eligible for the class action settlement, I (and presumably other class members) could get a full cash refund immediately when I had a problem with a Groupon Voucher without even asking for one. But for Groupon Vouchers subject to the class action settlement, instead of getting a full cash refund immediately, I have to go through the hassle of filling out a claim form and waiting several months—whereupon I might not even get a full refund.

15. By definition, a class action settlement where I (and presumably other class members) would have been better off if the class action settlement had never existed is unfair.

16. Not wanting the hassle of a claims process, I asked Groupon if there was any way I could avoid the claims process. In response to my email saying "I would just like my money back, please," the Groupon customer service representative wrote me:

> Unfortunately, if you wish to claim a refund for a purchase qualifying for the class action settlement, I am unable to issue the refund directly. Instead, you'll need to request a claim form by visiting http://grouponvouchersettlement.com or calling (800) 589-1256.
>
> I apologize for any inconvenience this might cause. If you have any more questions about this, please email groupon_notice@grouponvouchersettlement.com for additional assistance.
>
> Regards,

Matt N
Groupon Customer Support

17. Unwilling to accept the absurdity of a scenario where Groupon had handcuffed itself into offering worse customer service because of a class action settlement, I wrote back that I did not want an apology, but would rather have my money back and that Groupon honor its customer satisfaction guarantee, and asked to speak to a supervisor.

18. On July 17, 2012, Matt N. wrote back:

> Hi Ted,
>
> I'm sorry for the inconvenience. Normally, a Groupon that falls into the time frame outlined in the class action lawsuit would have to be handled through that process. However, I've made an exception and I've just canceled this order and issued a refund of $30 Groupon credit to your account.
>
> The credit is available in your account immediately and does not expire. You can see your available credit by selecting "My Account" or "My Gifts" from the drop down menu that appears when you place your cursor over your name in the top right corner of www.groupon.com. Your available credit will be displayed in the white box to the right.
>
> Regards,
>
> Matt N
> Groupon Customer Support

19. "Matt N" was correct. I did receive $30 credit to be used in future Groupon purchases on or about July 17, 2012.

20. Thus, the attempt by the class attorneys to claim that the "$8.5 million settlement fund" is worth $8.5 million is entirely fictional. The class attorneys have not won class members anything that Groupon would not gratuitously provide. Indeed, class members would seem to be better off if they ignored the class action entirely, as it appears that Groupon has a customer-satisfaction policy that automatically provides

refunds or credits whenever a customer files both a ticket request and then two follow-up emails. This is a distinct disadvantage from a process where Groupon refunded your money immediately when you asked.

21. The only beneficiaries of this litigation are the class attorneys, who have breached their fiduciary duty by putting their interests ahead of those of their putative clients.

22. The class notice was misleading: it failed to communicate that the settlement made me worse off. And if I, an experienced attorney who has dealt with dozens of class action settlements, was misled, it is certain that laypeople class members were misled. Because I was misled by the class notice as to how bad the settlement was, I did not object by the original July 7 deadline, nor did I agree to represent any of the class members who contacted me wishing to object to the settlement on other grounds. (I thought the settlement unfair, but thought that the unfairness was similar to another case I already had pending in the Ninth Circuit, so was less interested in spending my limited time on the case.) It was only when Groupon initially claimed to me that the class action settlement precluded it from honoring its money-back guarantee that I decided to object: thousands, and perhaps millions, of Groupon customers are being prejudiced by this settlement, and may not be as persistent as I was about avoiding the unfair claims procedure.

23. The class attorneys seem to be taking credit for injunctive relief, but the injunctive relief does not make class members better off than the pre-existing customer-service guarantee. On May 22, 2012, I wrote class counsel Rachel Jensen at rachelj@rgrdlaw.com:

> Ms. Jensen,
>
> Several class members have inquired to me about the fairness of the settlement in this case, and I'm a class member myself though my notice hasn't yet shown up. If you can point me to persuasive evidence that the injunctive relief of permitting expired Groupons be used for purchase value was at the behest of class counsel rather than a unilateral change in Groupon policy, I'd be inclined to refrain from objection. My impression, perhaps mistaken, was that this was

Groupon policy since the inception of the company. How exactly has the settlement changed policy with respect to pre-existing expired Groupons?

Many thanks,

Ted Frank

24. Neither Ms. Jensen nor any other class counsel ever responded to my email. Ms. Jensen's declaration in support of the fee request fails to identify, much less value, any marginal improvement to consumers from the injunctive relief. (The settlement website misleadingly implies that the policy permitting use of the paid-for amount of the voucher after its expiration is a benefit of the class action rather than a pre-existing policy. Exhibit 2 is a true and correct copy of a printout of a 2010 Groupon blog post[1] discussing their rules for expired vouchers.) On information and belief, the injunctive relief is entirely gratuitous, because it represents no improvement in Groupon policies, and thus cannot be considered a benefit to the class from the class action settlement. American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13 Illustration 2 (2010). Even if the prospective injunctive relief could be considered a class benefit, it is of no benefit to class members like me who no longer do business with Groupon.

25. This case is exactly analogous to *In re Aqua Dots Prod. Liab. Lit.*, 654 F.3d 748 (7th Cir. 2011). In *Aqua Dots*, the defendant had already established a policy of full refunds to class members. The Seventh Circuit held that a class seeking relief that was already being offered could not be certified under Fed. R. Civ. Proc. 23(a)(4): there was no relief that the class attorneys could achieve that would not make class members worse off than the *status quo*, and thus the class action was being brought for the benefit of the attorneys, rather than the class. Thus, the class representatives were not adequate representatives of the class, and the class could not be certified. Similarly here, the class representatives have agreed, apparently in the hopes of an "incentive payment" and to

---

[1] https://blog.groupon.com/cities/groupon-organizes-class-action-against-itself/

favor their attorneys with a multi-million-dollar fee, to a settlement that actually makes class members worse off. This case is *worse* than *Aqua Dots*, where the problem of the class action costing the class members was wholly hypothetical. Here the scenario of an abusive self-dealing settlement at the expense of the class has actually been realized.

26. I am an attorney, and a member of the bar of, *inter alia*, the state of California and of the Southern District of California. I am an elected member of the American Law Institute. As the founder of the non-profit Center for Class Action Fairness LLC, I have successfully represented *pro bono* numerous class members in objections to unfair settlements, winning millions of dollars for class members. *E.g.*, *In re Bluetooth Headset Prod. Liab. Lit.*, 654 F.3d 935 (9th Cir. 2011); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *Robert F. Booth Trust v. Crowley*, 2012 U.S. App. LEXIS 11927 (7th Cir. Jun. 13, 2012); *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012); *In re Classmates.com*, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012). Because of this background, it has been my experience that class action attorneys often attempt to discredit my objections by accusing me of being a "professional objector" bringing an objection in bad faith, despite my track record of success in court. This is wrong: a "professional objector" is a term of art to describe a for-profit objector that attempts to hold up settlements in the hopes of negotiating a *quid pro quo* payment for himself to withdraw his objection or appeal. As has been widely documented, I have never agreed to withdraw an objection or appeal in exchange for payment. *E.g.*, Ashby Jones, "A Litigator Fights Class-Action Suits," *Wall Street Journal* (Oct. 31, 2011). But if the Court has any skepticism whether I bring this objection in good faith in the interests of the class at large, I will be happy to stipulate to an injunction forbidding me or any affiliated entities from receiving payment to settle my objection. *Cf.* Brian T. Fitzpatrick, "The End of Objector Blackmail?", 62 Vanderbilt L. Rev. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem).

27. At least nine separate class members, including lawyers, a law professor, and an Eleventh Circuit clerk, contacted me to complain about this settlement, and I could have

easily chosen to bring an objection on behalf of one or more of them. More would have done so had I blogged about the problems of the settlement before filing an objection. But rather than take on a client, I am personally objecting because my personal customer service experience with Groupon demonstrates both why this settlement is unfair, and why the class representatives cannot meet the Rule 23(a)(4) requirement.

28. I further object to the attorneys' fees. Because the settlement makes class members worse off, any fees to the attorneys, much less the millions of dollars that they have requested, are by definition disproportionate under *Bluetooth* and under *Dennis v. Kellogg Co.* (9th Cir. July 13, 2012). I further note that at least some of the "$8.5 million" is earmarked to be paid to the class in coupons, and, even if the settlement were approved, the fee request is inconsistent with the requirements of 28 U.S.C. § 1712 that fees be based on the value of the *redeemed* coupons, rather than their face value. It is certain that some of the coupons (which are misleadingly called "Settlement Vouchers") will not be redeemed, because there is a 130-day time-limit for their use. (In contrast, my $30 in Groupon Bucks that I received as reimbursement for my unused Wasabi Groupon Voucher will last as long as Groupon does.)

29. The $8.5 million figure is further illusory, because it includes the costs of "claims administration." Claims administration should not be treated as a class benefit. To do so would lead to the absurd conclusion that the class is indifferent between an $8 million settlement where $1 million is spent on claims and $7 million on administration and a settlement where $7 million is spent on claims and $1 million on administration. Class members clearly prefer the latter settlement. It is for this reason that attorneys' fees should be based on the amount the class actually receives, rather than the amount paid by the defendant. *See Bluetooth, supra*; *Dennis, supra* (noting disproportion between $2 million in fees and $800,000 in class recovery, notwithstanding the millions of dollars of *cy pres* in the settlement and the cost of settlement administration). Class counsel achieves the "25% benchmark" only by this artificial inflation of the denominator to include money not actually being paid to the class—even aside from the fact that the $8.5

million fund is a *reduction* from the pre-settlement status quo in what class members could have received from Groupon if everyone entitled to make a claim made a claim.

30. The *cy pres* component is objection because money is paid to *cy pres* before it is paid to the class; this is inconsistent with Section 3.07 of the American Law Institute's *Principles of the Law of Aggregate Litigation*, which prohibits the use of *cy pres* if it would be feasible to pay money to the class instead.

31. I incorporate by reference any other objections filed in this case that are not inconsistent with my objection.

32. I reserve the right to cross-examine any witnesses who testify in support of the settlement.

33. For the foregoing reasons, I ask that this Court deny the motion to approve the settlement, and rule that the class cannot be certified pursuant to Rule 23(a)(4) and *Aqua Dots.* If the Court does approve the settlement, the fee request should be reduced to a token amount to reflect that the class benefit is largely illusory, and nowhere near worth $8.5 million to the class. At a minimum, the fee award must comply with the Class Action Fairness Act's strictures on coupon settlements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 27, 2012, in Salt Lake City, Utah.

_/s/ Theodore H. Frank_
Theodore H. Frank

1

## CERTIFICATE OF SERVICE

2
3
4

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via first class mail to the following participants at the addresses listed below:

5
6
7

John J. Stoia, Jr.
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

8
9
10
11

Shirli F. Weiss
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101

12

DATED this 27th day of July, 2012.

13
14

<u>(s) Theodore H. Frank</u>
Theodore H. Frank

15
16
17
18
19
20
21
22
23
24
25
26
27