1   Grenville Pridham
    Mark Lavery, Of Counsel
2   Christopher V. Langone, Of Counsel
    2522 Chambers Road, Suite 100
3   Tustin, CA   92780
    (714) 486-5144
4   grenville@grenvillepridham.com
    Counsel for Objector Andrea Pridham
5

6

7
                    UNITED STATES DISTRICT COURT
8
            FOR THE SOUTHERN DISTRICT OF CALIFORNIA
9

10  IN RE:  GROUPON MARKETING AND          )      Case No. 3:11-CV-205-H-(CAB)
    SALES PRACTICES LITIGATION             )
11                                         )
                                           )
12                                         )    **Objection to Class Action Settlement and**
                                           )    **Notice of Intent to Appear at Fairness**
                                           )    **Hearing** on September 7, 2012, on behalf of
13                                         )    Class Member Andrea Pridham
                                           )

14
15  TO:

16  | Clerk of Court | John J. Stoia, Jr. |
    | U.S. District Court for the Southern District of California | Robbins Gellar Rudman & Dowd LLP |
17  | 880 Front Street, Suite 4290 | 655 West Broadway, Suite 1900 |
    | San Diego, CA 92101-8900 | San Diego, CA 92101 |
18  | Telephone: 619-557-5600 | Tel:  (619) 231-1058 |
    |  | Fax:  (619) 231-7423 |
19  |  | Class Counsel |
    |  | Shirli F. Weiss |
20  |  | DLA Piper LLP (US) |
    |  | 401 B Street, Suite 1700 |
21  |  | San Diego, CA  92101 |
    |  | Tel:  (619) 699-3650 |
22  |  | Fax:  (619) 699-2701 |
    |  | Attorneys for Defendants |
23

24

25      Class Member and Objector Andrea Pridham objects to the settlement of In re Groupon

26  Marketing and Sales Practices Litigation, Case No. 3:11-md-02238-DMS-RBB.   Objector intends to

27  appear at the final fairness hearing through counsel.  Mrs. Pridham purchased multiple gift certificate

28  from Defendant between November 2008 and December 1, 2011.  Objector Pridham will provide her

Andrea Pridham Objection

1   address, telephone number, and personal email address used to purchase the groupon coupons, and other

2   information upon request by Court or counsel.   The personal information requested in the Notice is not

3   appropriate to be included in a publicly filed document.  She may be contacted through counsel.

4   Objector Pridham joins in and adopts all other objections made to final approval of this settlement.

5          1.       This Settlement Must Be Rejected Because *cy pres* Distribution of Unclaimed Class

6   Funds to Electronic Frontier Foundation and the Center for Democracy and Technology is Improper.

7          This settlement agreement's plan for the equitable distribution of any unclaimed class funds fails

8   to address any interests or issues implicated in this litigation.  In a consumer class action settlement in

9   which all claiming class members have been fully compensated to the maximum extent allowed, *cy pres*

10  distribution of any remaining funds is generally considered to adequately serve the interests of the class

11  under fluid recovery doctrine. *See McDonough v. Toys "R" Us, Inc.*, 834 F. Supp. 2d 329. However,

12  even where *cy pres* distribution is permitted, a particular distribution method must be rejected when it

13  fails to provide the "next best" distribution. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904

14  F.2d 1301, 1308 (9th Cir. 1990).   Where distribution is to a particular non-profit organization, this

15  organization must have at the very least some cognizable connection to the substantive issues underlying

16  the case. *In re Airline Ticket Commn. Antitrust Litig.*, 307 F.3d 679, 683 (8th Cir. 2002). (Distribution

17  to organization unable to claim any previous association to case prohibited by equitable considerations).

18         Neither the Electronic Frontier Foundation nor the Center for Democracy and Technology can

19  claim such connection to this litigation.  This case is about the protection of consumer interests.  The

20  Electronic Frontier Foundation is a network of lobbyists and researchers operating in the realm of

21  internet privacy, openness, and free speech, which "aim(s) to improve the rights of free expression,

22  security, and privacy on the internet." *See* https://www.eff.org/work.  The mission statement of the

23  Electronic Frontier Foundation does not intersect at all with the issues of consumer advocacy implicated

24  in this case.  The mere fact that some of the consumer abuses from which this litigation arose might have

25  occurred via the internet does not rise to the level of a nexus between those abuses and the privacy and

26  open source issues addressed by the Electronic Frontier Foundation.

27         Indeed, the only cognizable reason an organization such as Electronic Frontier Foundation would

28  have been selected as a *cy pres* recipient is the close organization-organization relationship it  has

Andrea Pridham Objection

1   developed with Defendant's attorneys' law firm, DLA Piper.  DLA Piper has worked closely with

2   Electronic Frontier Foundation on lobbying Congress over issues such as SOPA, and has represented it

3   in pursuing internet openness policy goals.  *See* "Can the FBI Monitor Your Web Browsing Without a

4   Warrant?" https://www.eff.org/press/archives/2005/01/14-0.  Essentially, Defendant's lawyers are

5   attempting to secure a massive payout for a third-party client of theirs, who has absolutely no concrete,

6   theoretical, or even ideological connection to this case.  The selection of Electronic Frontier Foundation

7   as *cy pres* recipient is about scoring political points, and has nothing to do with protecting consumers

8   from predatory scams such as the disappearing vouchers at issue here.

9       The Center for Democracy and Technology is apparently an offshoot of Electronic Frontier

10   Foundation.   According to wikipedia, "In 1994, the board of the Electronic Frontier Foundation, a

11   digital rights advocacy group, fired its policy director, Jerry Berman for mismanaging the group's

12   organizational and fiscal responsibilities, although no impropriety or malfeasance was alleged.   Soon

13   after, Berman formed the Center for Democracy & Technology, assisted by seed donations from AT&T,

14   Bell Atlantic, Nynex, Apple and Microsoft."   Center for Democracy and Technology has the same goals

15   as Electronic Frontier Foundation -- free speech and privacy.   Center for Democracy and Technology,

16   like Electronic Frontier Foundation, has a strong link to DLA Piper.   DLA Piper has sponsored a

17   privacy law fellowship named after a former partner, Ronald Plesser, in conjunction with Center for

18   Democracy and Technology.   *See* andrewraff.com/blog/2005/11/28/privacy-law-and.html.

19       Under *In re Airline Ticket Commn. Antitrust Litig*, the class fund (even that part of the fund

20   which remains unclaimed) is the property of the class.  307 F.3d 679 at 683.   This fund must be

21   distributed in a manner which closely benefits the same individuals affected by the predatory behavior at

22   issue in this lawsuit, while serving the goals of the statute under which this litigation arose.  *See City of*

23   *Philadelphia v. Am. Oil Co.*, 53 F.R.D. 45, 72 (D.N.J. 1971).  Distribution of the fund to an entity which

24   devotes itself to issues of internet open-source information-sharing, and lobbies on behalf of businesses

25   which commit consumer violations as well as individual users, certainly does not serve the interests of

26   class members in this case who have not claimed into the fund.

27       Furthermore, distribution of this fund to an entity with no connection to or standing in this

28   litigation raises serious constitutional due process issues.  Essentially, the unchallenged diversion of

Andrea Pridham Objection

1   funds meant for individual consumers to an organization which at best does not ever address the

2   vulnerabilities of those consumers, and at worst lobbies in support of businesses which are directly

3   opposed to consumer interests (and works closely with Defendant's corporate defense firm), represents

4   an unconstitutional seizure and redistribution of monies to which consumers are entitled without due

5   process.  *See* Martin H. Redish et al., Cy Pres Relief and the Pathologies of the Modern Class Action: A

6   Normative and Empirical Analysis, 62 Fla. L. Rev. 617 (2010) (arguing that *cy pres* awards undermine

7   the due process rights of absent class plaintiffs).   Indeed, this view has been explicitly endorsed by the

8   9th Circuit.  *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011).  *See also Dennis v. Kellogg Co.*,

9   2012 U.S. App. LEXIS 14385, *11 (9th Cir. 2012).

10          On the other hand, groups such as the National Association of Consumer Advocates have worked

11   to hold companies accountable to vulnerable consumers for the sort of behavior underlying this dispute,

12   in precisely the manner intended by statute.  The National Association of Consumer Advocates has

13   advocated tirelessly on behalf of consumers, lobbied directly for the passage of legislation protecting

14   consumers from the practices at issue in this case, and has produced comprehensive guidelines for

15   fairness in class action settlements.  The National Association of Consumer Advocates' guidelines were

16   drafted to protect consumer interests from collusive settlements and inappropriate settlement provisions,

17   and are operative here, as well.   Indeed, on the subject of *cy pres* distributions, the guidelines of the

18   National Association of Consumer Advocates cite commentators who "could not envision any

19   circumstance in which it was appropriate for a defendant to participate in the selection process" of a *cy*

20   *pres* recipient, as has occurred in this case with the selection of the Electronic Frontier Foundation.

21          Furthermore, district courts have recognized that continued legal representation of protected

22   demographics (*i.e.,* consumers in this case) is a desirable mission for a potential *cy pres* recipient to

23   pursue.  *See Lessard v. City of Allen Park*, 470 F. Supp. 2d 781 (E.D. Mich. 2007. (Contribution to Bar

24   Association's Access to Justice fund was acceptable because the legal services the fund provided to low

25   income individuals were substantially related to the underlying litigation).   Unlike the Electronic

26   Frontier Foundation, whose claim to these funds is brought into question by decisions such as *City of*

27   *Philadelphia v. Am. Oil Co and Nachshin v. AOL, LLC*, the mission statement of the National

28   Association of Consumer Advocates corresponds directly with the consumer interests implicated by this

Andrea Pridham Objection

1  litigation.  Unlike the Electronic Frontier Foundation, the National Association of Consumer Advocates

2  does not work closely with large technology companies in order to achieve pro-business legislative

3  goals.   Instead, the National Association of Consumer Advocates works directly on behalf of the

4  individual consumers who make up this class, with a focus precisely on combating unfair practices like

5  those at issue here.  That the National Association of Consumer Advocates' class action guidelines are

6  relevant to this *cy pres* dispute merely underscores the fact that this organization is a far more

7  appropriate, consumer-friendly destination for these funds; funds which, after all, are meant to benefit

8  wronged consumers, not the political allies of Defendant's counsel.

9         For the above reason, Objector Andrea Pridham respectfully requests that the settlement

10  agreement not be approved.

11        Objector Andrea Pridham will appear through counsel Grenville Pridham at the Fairness Hearing

12  presently scheduled for September 7, 2012.   Class Member Objector can be reached through counsel.

13        Respectfully Submitted, this 27th day of July 2012.

14        For Objector Andrea Pridham

15

16   /s/ *Grenville Pridham*
     By Her Attorney Grenville Pridham

17

     Grenville Pridham
18   Mark Lavery, Of Counsel
     Christopher V. Langone, Of Counsel
19   2522 Chambers Road, Suite 100
     Tustin, CA   92780
20   (714) 486-5144

21   grenville@grenvillepridham.com
     mtllaw@gmail.com
22   langonelaw@gmail.com

23

24                    **CERTIFICATE OF SERVICE BY ECF**

25        I hereby certify that on July 27, 2012, I caused the foregoing Objection to Class Action

26  Settlement and Notice of Intent to Appear at Fairness Hearing to be served via ECF noticing upon those

27  counsel of record who are registered for electronic filing.

28   /s/ *Grenville Pridham*

                         Page 5 of 5

                    Andrea Pridham Objection