UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED

2012 JUL 31   PM 3: 28

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ *um* _____ DEPUTY

In re GROUPON MARKETING AND SALES
PRACTICES LITIGATION

)
)
)
)
)
)

Case No. 3:11-md-02238-DMS-RBB

OBJECTION OF EVAN SPIES
AND NOTICE OF INTENT TO
APPEAR

Class Member and Objector Evan Spies, through his attorney Mark T. Lavery, hereby files this objection by mail and objects to the settlement of *In re Groupon Marketing and Sales Practices Litigation*, Case No. 3:11-md-02238-DMS-RBB. The grounds for his objection are submitted below. Objector Spies may intend to appear at the final fairness hearing through counsel. Mr. Spies purchased a gift certificate from Defendant for redemption at  Merchant Partner Player's Pub & Grill in Illinois between November 2008 and December 1, 2011 using the email cessnaspies@me.com. Objector Spies will provide his address, telephone number, and other information upon request by Court or counsel.  He may be contacted through counsel.

I.   INTRODUCTION

**col·lu·sion  [kuh-loo-zhuhn] noun**
1. a secret agreement, especially for fraudulent or treacherous purposes;
conspiracy: Some of his employees were acting in collusion to rob him.
2. Law . a secret understanding between two or more persons to gain something
illegally, to defraud another of his or her rights, or to appear as adversaries
though in agreement: collusion of husband and wife to obtain a divorce.

The definition of collusion seems to apply to this case.[1]  Class Counsel and

Defendant's Counsel seem to have colluded in the negotiation of this settlement to favor

---

[1] Even if the Court does not want to view this conduct as collusion it gives an appearance of collusion and represents self-dealing in light of the fact that EFF and CDT are preferenced via monetary recovery over class members with statutory damages claims under the CARD Act.

the proposed *cy pres* recipients, Electronic Frontier Foundation and Center for Democracy and Technology over the interests of class members who only have statutory damages claims. This proposed settlement guarantees $75,000 to EFF and CDT but provides not one penny to Objector Spies or the millions of other class members in exchange for the release of federal CARD Act claims for statutory damages. Class Counsel and DLA Piper have not disclosed their relationships with EFF and CDT in the Class Notice. Objector Spies is unaware of any disclosure made to the Court or Mediator about the pre-existing relationships between Class Counsel, DLA Piper and EFF and CDT.

The Class Notice states in relevant part:

"Groupon has paid Eight Million, Five Hundred Thousand Dollars ($8,500,000) into a Settlement Fund. Of this amount, $75,000 will be paid into a cy pres fund (to be donated to a civic or other non-profit association), and any attorneys' fees and expenses and plaintiffs' incentive awards approved by the Court, as well as the expenses of Claims Administration will be deducted from the Settlement Fund. The balance will be used for the benefit of Class Members." This statement is deceptive for two reasons. First, the $75,000 guaranteed minimum award will not be paid to some unknown "civic or other non-profit association" rather digital privacy organizations EFF and CDT receive the money. Second, the "balance of the fund" will not be used to benefit all Class Members. The balance of the fund will be used to pay claims of class members who have unredeemed gift certificates and then used further benefit EFF and CDT. No balance of the fund is used to compensate class members for their released CARD Act claims for statutory damages.

Furthermore, the Class has not be informed in the Class Notice that the Center for Democracy & Technology (CDT) and DLA Piper Rudnick Gray Cary US LLP launched a privacy law fellowship in honor of Ronald Plesser. "Other companies who agreed to contribute to the Fellowship and serve as 'founding supporters' include Microsoft, The Direct Marketing Association, Time Warner, Reed Elsevier, and the CDT." See www.jlns.com/articles/legal-wire/2005/03/16/center-democracy-and-technology-and-dla-piper-launch-fellowship-honor.

The Class has not been informed in the Class Notice that Lerach Coughlin Stoia Geller Rudman & Robbins, the name of the Stoia firm before William Lerach went to federal prison because of his involvement in a class-action kickback scheme, represented the Electronic Frontier Foundation in a Privacy Class Action against AT&T. See www.eff.org/press/archives/2006/01/31.

In this case, the Settlement Class and Settlement Class Member(s)" mean(s) all Persons who purchased or received one or more Groupon Vouchers for redemption at a Merchant Partner in the United States, from November 2008 until December 1, 2011. This class consists of two different types of consumers. First, there are people like Plaintiffs who purchased a Groupon gift certificate and did not redeem the gift certificate prior to expiration. But the vast majority of the class members redeemed gift certificates but bought a Groupon gift certificate that violated the Card Act. These consumers are entitled to statutory damages. The second class of people, of which Evan Spies is a member, receive no benefits in exchange for the release of statutory damages. Furthermore, the *cy pres* award is improper and the fee request is unreasonable. Spies requests that the Court deny approval of the settlement.

1.      Settlement unfairly favors actual damage class members and over statutory damage class members. The Class Representatives and Class Counsel are inadequate to represent the interests of Class Members who have statutory

Recently, the Third Circuit reversed approval of a consumer class action settlement involving cellular telephone early termination fees.  In that case, Objectors argued that the Class Representatives did not not adequately protected class members. *Larson v. AT&T Mobility LLC*, 2012 U.S. App. LEXIS 13292, *22-23 (3rd Cir. 2012). The Third Circuit stated, "Rule 23(a)(4) provides that, in order to certify a class, a court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. More specifically, as we stated in *In re Community Bank of Northern Virginia*, the inquiry has two purposes: 'to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, ... and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class.' 622 F.3d 275, 291 (3d Cir. 2010) This inquiry is vital, as 'class members with divergent or conflicting interests [from the named plaintiffs and class counsel] cannot be adequately represented... .'" *Id.*  The Third Circuit also noted that the Ninth Circuit is in accord with this perspective.   See *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)

In this case, the named plaintiffs and their counsel are not vigorously prosecuting the action of behalf of class members with statutory-damage only claims.  The vast majority of class members included in the class definition redeemed their gift

certificates.  But since the Groupon gift certificates violated the CARD Act, all class members are entitled to statutory damages.

The Ninth Circuit recently determined that a consumer has standing to seek statutory damages even when the consumer did not suffer a pecuniary loss.  See *Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010).  Thus under Ninth Circuit law, **any** class members who purchased a gift certificate from Groupon that fails to comply with the CARD Act can obtain a minimum of $100 and maximum of $1,000.  According to publicly available information, Groupon has sold over ten million gift certificates to consumers.  Thus the maximum value of individual CARD Act statutory-damages litigation is billions of dollars.  The maximum value of CARD Act statutory damages class action relief is $500,000 plus costs and attorneys' fees.

Moreover, this settlement does nothing to stop Defendant's violation of the CARD Act.  In many respects this settlement like in *Larson*, has a problem because of "the license it grants to [Defendant} to continue" illegal conduct.  See *Larson v. AT&T Mobility LLC*, 2012 U.S. App. LEXIS 13292862, *30-33 (3rd Cir. 2012).

Before approving a settlement, a District Court must ask "whether the class settlement, taken as a whole, is fair, reasonable, and adequate to **all concerned**" (emphasis added). *Dennis v. Kellogg Co.*, 2012 U.S. App. LEXIS 14385, *11 (9th Cir. 2012).

"The structure of the settlement agreement itself, which divides a single class into two groups of plaintiffs that receive different benefits, supports the inference that the representative plaintiffs are inadequate." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 187 (3rd Cir. 2012).  The unredeemed group receives nominal benefits while

the statutory damages group receives nothing but the burden to opt out and proceed without the help of class counsel.

    2.      Settlement does not Meet Rule 23(b)(3) Superiority Requirement

This settlement is not the superior to other available methods for fair and efficient adjudication of this controversy. Class Counsel claims that there is a risk to the class due to arbitration to a claim of arbitration. First, Groupon has forfeited and waived its right to adjudicate this controversy in arbitration. Next, the only risk of arbitration is that Class Counsel cannot seek fees expended towards class litigation issues. Class members are free to seek statutory damages in Court or even arbitration.

Numerous Courts have held that class resolution of statutory damages claims is not the superior method of adjudication when a class member would unquestionably fare better by bringing an individual action for statutory damages. See *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 22 (D. Conn. 1997). See also *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *Shelley v. AmSouth Bank*, 2000 U.S. Dist. LEXIS 11429, (S.D. Ala. 2000); *Sonmore v. Checkrite Recovery Service, Inc.*, 206 F.R.D. 257 (D. Minn. 2001).

A class action is the superior method for managing litigation if no realistic alternative exits." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996). In this case, the majority of class members would be better of if this class action settlement request for approval was denied. There are realistic alternatives. First, the parties can be forced to return to the negotiating table. If the Court denies approval, a new settlement will emerge. Groupon will offer compensation to the class members who have statutory damage claims. For example, Groupon could offer $500,000

common fund that class members could claim into for cash.  That would provide a class

members with a realistic choice.  Take a pro rata share of the statutory maximum or opt

out.  That is the usual choice in a Consumer Credit Protection Act statutory damages

class action.  But to offer statutory damages absent class members nothing other than

the burden to opt out is not a superior method of adjudication. Especially since the class

has not been informed of the right to seek $100 to $1000 in statutory damages.

      3.     Notice failed to inform class members of statutory minimum awards
available under the CARD Act.

The Class Notice fails to advise Class Members of their rights.  Objector Spies

contends that that the opt-out provision of the settlement renders the release provision

fair. The notice that was sent to the class members did not inform them of the potential

statutory minimum awards available under the Card Act.  Thus, class members have not

been informed that by failing to opt-out of the settlement, they were foregoing the

potential of statutory award of up to $1,000 in an individual law suit. It is almost certain

that absent class members are not familiar with the CARD Act statutory damages

provision.  Thus a class member who did not suffer pecuniary loss will not understand

that he or she has a claim for up to $1,000 against Groupon.  The Court in *Clement v.*

*Am. Honda Fin. Corp.*, 176 F.R.D. 15, FN 22 (D. Conn. 1997), held that a notice that did

not inform class members of their right to statutory damages was not proper.

      4.     Arbitration Does Not Provide Justification for Settlement

Class Counsel states that one of the reasons to approve the settlement is the so-

called risk of "arbitration".  What Class Counsel really means is that there is a risk that

no jumbo attorney's fees will be awarded to Class Counsel in arbitration.  However,

Class Counsel has provided no evidence that the majority of class members would lose individual claims in arbitration.

Class Counsel has also not provided evidence that arbitration is valid in this case. A party that breaches arbitration clause cannot compel arbitration. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012-1013 (9th Cir. 2005). Party that acts (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988). Groupon has breached the arbitration clause by attempting to resolve billions of dollars in individual statutory damages claims through court mechanism rather than arbitration. "[T]here is nothing irrevocable about an agreement to arbitrate.... Both of the parties may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration."" *Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 490 (2d Cir. 2010).

    4.    The Cy Pres Proposal at a minimum creates an appearance of self-dealing and at worst provides evidence of collusion

Cy pres distributions have been criticized for "violating the ideal that litigation is meant to compensate individuals who were harmed." *In re Heartland Payment Sys.*, 2012 U.S. Dist. LEXIS 37326 (S.D. Tex. 2012) "Judge Posner, writing for a panel of the Seventh Circuit, has questioned whether such payments in fact benefit class members: 'There is no indirect benefit to the class from the defendants giving the money to

someone else. In such a case the 'cy pres' remedy . . . is purely punitive.' Id. citing

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004).

EFF and CDT do not advocate for consumer disclosures in financial transactions.

EFF and CDT advocate for free speech and privacy rights.  EFF and CDT are

organizations that are favored by both Class Counsel (EFF is former client) and by

Defendant's Counsel (CDT and DLA Piper have a legal fellowship).

If the money goes to CDT, there is no restriction in the terms of use.  For

example, it could be used to fund to DLA Piper Plesser Fellowship.  This use which is

permissible under the deal structured by Class Counsel and DLA Piper, would have no

benefit to the class and would actually benefit the law firm that opposed the interests of

the class members.  Likewise, if the money goes to EFF there is no restriction in use.

The money could be used to fund privacy litigation brought by EFF in a future case

involving the Stoia firm.   Any class action settlement that would allow such conduct

should never be approved.

### CONCLUSION

Objector Spies respectfully requests that the Court deny the proposed settlement

for the reasons stated. Spies also adopts and joins in the objections made by other

class members.

RESPECTFULLY SUBMITTED,
Objector Evan Spies,

By His Attorney

Mark Lavery
733 Lee St.
Des Plaines, IL 60016
847-813-7771

## CERTIFICATE OF SERVICE AND FILING BY MAIL

I, Mark T. Lavery, an attorney, certifies under penalty of perjury that he filed this

Objection by mail to the United States District Court for the Southern District of

California (940 Front Street, Courtroom 10, San Diego, California 92101-8900) and

served this objection via First Class Mail to John J. Stoia, Jr., 655 West Broadway, Suite

1900 San Diego, CA 92101 and Shirli F. Weiss, 401 B Street, Suite 1700, San Diego,

CA 92101 by causing the objection to be mailed by dropping the objection in the mail at

the U.S. Post Office in Des Plaines, IL at 684 Lee St. prior to 4:00 p.m..

Mark T. Lavery