1   JOHN J. STOIA, JR. (141757)                SHIRLI FABBRI WEISS (079225)
    RACHEL L. JENSEN (211456)                  CHRISTOPHER M. YOUNG (163319)
2   THOMAS R. MERRICK (177987)                 KATHERINE LARSON (259556)
    PHONG L. TRAN (204961)                     DLA PIPER LLP (US)
3   ROBBINS GELLER RUDMAN & DOWD LLP           401 B Street, Suite 1700
    655 West Broadway, Suite 1900              San Diego, CA  92101-4297
4   San Diego, CA  92101                       Telephone: 619/699-2700
    Telephone:  619/231-1058                   619/699-2701 (fax)
5   619/231-7423 (fax)                         shirli.weiss@dlapiper.com
    johns@rgrdlaw.com                          christopher.young@dlapiper.com
6   rachelj@rgrdlaw.com                        katherine.larson@dlapiper.com
    tmerrick@rgrdlaw.com
7   ptran@rgrdlaw.com                          Attorneys for Defendants

8   Class Counsel

9

10                        UNITED STATES DISTRICT COURT

11                      SOUTHERN DISTRICT OF CALIFORNIA

12
    ┌─────────────────────────────────────┐   Case No.  3:11-md-02238-DMS-RBB
13  │ In re GROUPON MARKETING AND          │
    │ SALES PRACTICES LITIGATION           │   **MEMORANDUM OF POINTS AND**
14  │                                      │   **AUTHORITIES IN SUPPORT OF JOINT**
    │ ──────────────────────────────────── │   **MOTION FOR FINAL APPROVAL OF**
15  │                                      │   **CLASS ACTION SETTLEMENT**
    │                                      │
16  │                                      │   Date:        September 7, 2012
    │                                      │   Time:        1:30 p.m.
17  │                                      │   Judge:       Hon. Dana M. Sabraw
    │                                      │   Courtroom:   10
18  └─────────────────────────────────────┘

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................ 3

    A.      Groupon's Services and Marketing........................................................... 3

    B.      Background of these Proceedings .............................................................. 4

        1.      The MDL and the Illinois State Court Action............................... 4

        2.      Plaintiffs' Claims and Defendants' Defenses .............................. 5

        3.      History of the Settlement Discussions ......................................... 6

III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE PARTIES'
       PROPOSED SETTLEMENT WHICH REFLECTS CAREFUL
       CONSIDERATION OF THE BENEFITS, BURDENS, AND RISKS
       ASSOCIATED WITH CONTINUED LITIGATION ........................................ 8

    A.      Legal Standards......................................................................................... 8

    B.      For Purposes of Settlement Only, the Settlement Class Meets the
        Requirements of Rule 23........................................................................ 10

    C.      The Settlement is Fair, Reasonable, and Adequate................................ 12

        1.      Strengths and Weaknesses of Plaintiffs' Case and the Risk,
           Expense, Complexity, and Likely Duration of Further Litigation ........... 12

        2.      The Risks of Obtaining Class Certification and of Maintaining
           Class Action Status ................................................................... 14

        3.      The Relief Provided to the Class in the Settlement Is Substantial............ 16

        4.      Extent of Discovery, Stage of Proceedings, and Experience and
           Views of Counsel ..................................................................... 20

        5.      Reaction of Class Members ..................................................... 21

    D.      Notice to the Settlement Class Was Adequate and Satisfied Due Process .......... 21

IV.     CONCLUSION............................................................................................ 25

1

**TABLE OF AUTHORITIES**

2

**Page**

3

CASES

4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .............................................................................................. 14

5

6

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (April 27, 2011) ................................................................. 6, 13, 15

7

*Browning v. Yahoo! Inc.*,
   no. C04-1463-HRL, 2006 WL 3826714, at *8-*9 (N.D. Cal. Dec. 27, 2006) ....................... 24

8

9

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 43 (2008) ................................................................................. 24

10

*Churchill Village, L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................ 8, 12

11

12

*CompuCredit Corp. v. Greenwood* ("*CompuCredit*"),
   __ U.S. __, 132 S. Ct. 665 (2012) ...................................................... 6, 13, 15

13

14

*Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) .............................................................................. 15

15

*Dean Witter Reynolds, Inc. v. Byrd.*
   470 U.S. 213 (1985) ............................................................................................ 15

16

17

*Farinella v. Paypal, Inc.*,
   611 F. Supp. 2d 250 (E.D.N.Y. 2009) ................................................................... 24

18

*Ferreira v. Groupon, Inc., et al.*,
   No. 3:11-cv-00132-DMS-POR .......................................................................... 4, 5

19

20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 8, 12, 20

21

22

*In re Ferrero Litig.*,
   No. 11-CV-00205-H-KSC, 2012 U.S. Dist. LEXIS 94900 (S.D. Cal. July 9, 2012) ........... 3, 4

23

24

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................. 20

25

*Lewis v. UBS Fin. Servs. Inc.*,
   818 F. Supp. 2d 1161 (N.D. Cal. 2011) ............................................................... 15

26

27

*Moses II. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................ 15

28

-ii-

**TABLE OF AUTHORITIES**
(continued)

Page

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................. 9

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)................................................................................................... 9

*Rodriguez v. West Publ'n Co.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................................... passim

*Siber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994)........................................................................................... 21, 24

*Six Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ............................................................................................. 19

*United States v. McInnes*,
556 F.2d 436 (9th Cir. 1977)............................................................................................... 13

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ............................................................................................... 13

**STATUTES**

15 U.S.C. §1693, *et seq.*................................................................................................................ 5

15 U.S.C. §1693m(a)(2)(B) ......................................................................................................... 6

15 U.S.C. § 1693m(s)(B) ............................................................................................................ 13

Cal. Bus. & Prof. Code §17204 .................................................................................................. 14

Cal. Civ. Code §1780(a) ............................................................................................................. 14

CARD Act, 15 U.S.C. §1963 *et seq.*........................................................................................... 10

**OTHER AUTHORITIES**

12 C.F.R. §205.20(g) .................................................................................................................. 13

Fed. R. Civ. P. 23 ................................................................................................................ passim

Fed. R. Civ. P. 23(a)............................................................................................................. 10, 11

-iii-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Civ. P. 23(b)(3).............................................................................................. 10, 11, 15, 16

Fed. R. Civ. P. 23(e)........................................................................................................ 8, 9

Fed. R. Civ. P. 23(e)(1)........................................................................................................ 21

Fed. R. Civ. P. 41(a)(1)(A)(i)........................................................................................................ 4

EAST\48503902.9

Plaintiffs Barrie Arliss, Nevin Booth, Julie Buckley, Ashley Christensen, Jason Cohen, Adam Dremak, William Eidenmuller, Anthony Ferreira, Sarah Gosling, Eli R. Johnson, Heather Kimel, Jeff Lawrie, Michael McPherson, Sarah Mehel, Eric Terrell, Carlos Vazquez, and Brian Zard (collectively "Plaintiffs"), and Defendants Groupon, Inc., Nordstrom, Inc., Full Circle Farms, Inc., Whirly West, Inc., and Fun Time, LLC (collectively "Defendants"), by and through their attorneys, respectfully submit this memorandum in support of their joint motion for final approval of the Class Action Settlement in this Action.[1]

## I.   INTRODUCTION

The parties' Settlement Agreement, which resolves these multi-district litigation ("MDL") proceedings, provides valuable monetary and injunctive relief to millions of consumers who purchased Groupon Vouchers with allegedly illegal expiration dates and other allegedly deceptive terms (the "Settlement").  The Settlement was achieved after many months of extensive, arms-length negotiations between the parties with the assistance of the Honorable Daniel H. Weinstein (Ret.) of JAMS, and was vigorously debated by the parties at every step of the way.

The Settlement requires Groupon to establish a Settlement Fund of $8,500,000 for Class Members.  *See* Settlement Agreement, §D.2.[2]  First, Class Members who meet certain criteria may obtain a Settlement Voucher to redeem the goods and services at the specific Merchant Partner designated on the original Groupon Voucher that they purchased.[3]  §E.1.f.  Second, if a Class Member is unable to redeem his or her Settlement Voucher because the merchant is out of business or refuses to honor the Settlement Voucher, the Class Member may file a claim for a cash refund from the Settlement Fund of:  (i) the purchase amount if the Merchant Partner has gone out of business; or (ii) the purchase amount plus an additional 20% of the promotional value of the original Groupon Voucher if the Merchant Partner is still in business but refuses to honor the Settlement Voucher.  §E.3.a.

---

[1]   All capitalized terms herein have the same meaning as in the Stipulation of Class Action Settlement ("Settlement Agreement") submitted to this Court on March 29, 2012 (Dkt. No. 40-3).

[2]   Unless otherwise noted all "§" and "§§" references are to the Settlement Agreement.

[3]   Class Members seeking relief under this part of Settlement must meet the following criteria: (i) they purchased or received a Groupon Voucher before December 1, 2011, and the Voucher was never redeemed or refunded; (ii) the Voucher was issued after August 22, 2010, or was issued for redemption in certain states before August 22, 2010; and (iii) they submit a Settlement Fund Proof of Claim.  §E.1.A.

After each Class Member's request for a refund is processed and paid, and only if funds remain after all payments to the Class Members are made, the Claims Administrator will send out a second class notice advising Class Members of a "Second Settlement Fund" that will be used to pay additional requests from Class Members for refunds based on purchases of Groupon Vouchers after December 1, 2011.  §D.2.  Additionally, *if and only if* a Second Settlement Fund is designated because funds remain after all Class Members' valid refund requests are paid as to Groupon purchases within the covered Class Period, there will be a *cy pres* payment of $75,000 to be divided among two non-profit consumer advocacy groups which focus on the Internet and protecting consumer rights.  §D.3.

Further, the Settlement provides for substantial injunctive relief, requiring Groupon to make certain changes to assure that its sales practices comply with certain requirements going forward, requirements which were not in effect before this lawsuit.  Specifically, under the Settlement Agreement, Groupon must:  (i) for three years after the Effective Date, agree not to issue Vouchers with expiration of the Customer Purchase Price, except for limited exceptions described in the Settlement ; (ii) provide clear and conspicuous disclosures prior to purchase and on the Groupon Vouchers, explaining the difference between the dates of expiration for the Promotional Value versus the Purchase Price; (iii) display disclosures on mobile devices and applications prior to purchase; and (iv) ensure that 90% or more of its annual Daily Deals have Promotional Values that extend for 30 days or more.  §§D.1.a; D.1.c.  Finally, Groupon Vouchers will be fully transferrable, with narrow exceptions for customized goods and services.  §D.1.d.

On April 24, 2012, this Court granted conditional class certification and preliminary approval of the parties' Settlement.  In granting preliminary approval, the Court assessed the fairness, reasonableness, and adequacy of the Settlement Agreement and found that the Settlement fell within the range of reasonableness under applicable law, thus meriting further proceedings, dissemination of notice to the Settlement Class, and possible final approval.  (Dkt. #42 ("Preliminary Approval Order") at 2.)  Since that date, notice has now been provided to the Settlement Class in accordance with the Court's Preliminary Approval Order.

/////

As the Ninth Circuit has made clear, in assessing the fairness, adequacy and reasonableness of a class action settlement, courts should examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Rodriguez v. West Publ'n Co.*, 563 F.3d 948, 964 (9th Cir. 2009).[4]  Further, the court properly "takes into account the strength of Defendant's defenses and obstacles to class-wide recovery . . . ." *In re Ferrero Litig.*, No. 11-CV-00205-H-KSC, 2012 U.S. Dist. LEXIS 94900, at *12 (S.D. Cal. July 9, 2012).

Here, the Settlement Agreement was the product of protracted and extended arms' length negotiations between the parties who were represented by capable, seasoned counsel on both sides, and with the assistance of a well-respected mediator.  The valuable monetary and injunctive relief afforded to the Settlement Class is fair, reasonable and adequate, particularly in light of the uncertainty inherent in continuing to litigate Plaintiffs' claims, and the effect of Groupon's arbitration provision.

For all the reasons set forth herein, Plaintiffs and Defendants jointly request the Court grant final certification of the Settlement Class for settlement purposes only, and grant final approval of their Settlement Agreement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Groupon's Services and Marketing

Formed in November 2008, Groupon is an e-commerce marketplace that connects consumers to merchants by offering promotional collective buying deals on a wide variety of products and services.  Declaration of Shirli F. Weiss in Support of Joint Motion for Final Approval of Class Action Settlement ("Weiss Decl."), ¶2.  Each day, Groupon provides consumers with a selection of "Daily Deal" promotional offers from merchants across the United States.  *Id.,* ¶3.  Consumers purchase Groupon Vouchers directly on Groupon's website, and the Groupon Vouchers can then be redeemed for the specified goods or services at the identified offering merchant.  *Id.*, ¶4.  A typical Daily Deal might allow a consumer to pay $20 to purchase a Groupon Voucher, which the consumer could then redeem for $40 value in goods or services at

---

[4] Citations and internal quotation marks and emphasis is added throughout unless otherwise noted.

the specified merchant as specified in the terms of the offer.  *Id.*, ¶ 5.

Consumers may sign up online to receive daily emails from Groupon regarding the promotional offers available each day in targeted geographic location(s) and categories selected by the consumer based on his or her personal preference.  *Id.*, ¶6.  Consumers may also access Groupon's promotional offers directly through Groupon's website and mobile applications.  *Id.*, ¶7.  In order to purchase any Groupon Voucher or subscribe to receive daily emails from Groupon, a consumer must create a Groupon account by providing a valid email address.  *Id.*, ¶8. Groupon has sold tens of millions of Vouchers nationwide since its inception in November 2008. *Id.*, ¶9.

### B.    Background of these Proceedings

#### 1.    The MDL and the Illinois State Court Action

These multi-district proceedings ("MDL"), styled *In Re Groupon Marketing and Sales Practices Litigation*, include seventeen cases, fifteen of which are putative class actions.[5]  The Actions comprising this MDL include:  *Arliss v. Groupon, Inc.*, case no. 3:11-cv-01374-DMS-RBB; *Booth v. Groupon, Inc.*, case no. 3:11-cv-01320-DMS –RBB; *Christensen v. Groupon, Inc.*, case no.3:11-cv-01233-DMS –RBB; *Cohen v. Groupon, Inc.*, case no. 3:11-cv-01245-DMS-RBB; *Eidenmuller v. Groupon, Inc.*, case no. 3:11-cv-01244-DMS –RBB; *Ferreira v. Groupon, Inc.*, case no.3:11-cv-00132-DMS –RBB; *Gosling v. Groupon, Inc.*, case no. 3:11-cv-01231-DMS-RBB; *Hinton v. Groupon, Inc.,* 3:11-cv-02674-DMS-RBB; *Johnson v. Groupon, Inc.*, 3:11-cv-02835-DMS-RBB; *Johnson v. Groupon, Inc.*, case no. 3:11-cv-01279-DMS-RBB; *Kimel v. Groupon, Inc.*, case no. 3:11-cv-01225-DMS –RBB; *McPherson v. Groupon, Inc.*, case no. 3:11-cv-01551-DMS-RBB; *Mehel v. Groupon, Inc.*, case no. 3:11-cv-01349-DMS-RBB; *Spencer v. The Gap, Inc.,* case no. 3:11-cv-01210-DMS-RBB; *Terrell v. Groupon, Inc.*, case no. 3:11-cv-01595-DMS-RBB; *Vazquez v. Groupon, Inc.*, case no. 3:11-cv-01253-DMS-RBB; and *Zard v. Groupon, Inc.*, case no. 3:11-cv-01232-DMS-RBB.  In addition to the aforementioned federal

---

[5] One of the Plaintiffs, Jennifer Bates, voluntarily withdrew and dismissed her action entitled *Bates v. Groupon, Inc., et al.,* No. 3:11-cv-01547-DMS-RBB, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), on March 21, 2012.  (Dkt. #39)  *Spencer v. The Gap, Inc.,* case no. 3:11-cv-01210-DMS-RBB was transferred to this Court and consolidated as part of the MDL proceedings on May 21, 2012, after the parties had filed their joint motion for preliminary approval of class action settlement. (Dkt. #43.)

1   actions, a related putative class action is pending in Illinois state court: *Dremak v. Groupon, Inc.,*

2   case no. 11-CH-8076 (Kane County, IL). *See* Weiss Decl., ¶10.

3                    **2.        Plaintiffs' Claims and Defendants' Defenses**

4               Plaintiffs in the aforementioned cases assert class claims based on federal and state law

5   arising out of Defendants' marketing and sale of Groupon Vouchers, alleging, *inter alia*, that the

6   expiration dates stated on Groupon Vouchers during the class period violate the Electronic Funds

7   Transfer Act ("EFTA"), as amended by the Credit Card Accountability Responsibility and

8   Disclosure Act ("CARD Act"), 15 U.S.C. §1693, *et seq.*, and various state laws. *See, e.g.*, First

9   Amended Complaint, *Ferreira v. Groupon, Inc., et al.*, No. 3:11-cv-00132-DMS-RBB, ¶10

10  ("Ferreira Complaint") (Dkt #1); Declaration of John J. Stoia, Jr. in Support of Joint Motion for

11  Final Approval of Class Action Settlement ("Stoia Decl."), ¶4.  Specifically, Plaintiffs allege that

12  the CARD Act prohibits the sale of gift certificates with expiration periods of less than five years

13  and that the CARD Act's provisions apply to Groupon's Vouchers. *See* Ferreira Complaint, ¶50.

14  Plaintiffs allege that the inclusion of expiration dates on Groupon Vouchers also violates a

15  number of state laws that apply to the expiration dates of gift certificates. *Id.*, ¶¶61-64.  Plaintiffs

16  further allege that Groupon imposes other restrictions, such as "Must use gift certificate in one

17  visit," on its Groupon Vouchers, which Plaintiffs contend are unlawful. *Id.*, ¶27.  Plaintiffs

18  contend that the above and other activities are illegal or not sufficiently disclosed, and that

19  Groupon's Terms and Conditions and website are misleading or deceptive to consumers. *Id.*, ¶34.

20  Accordingly, Plaintiffs seek damages, restitution, injunctive relief, and other remedies in the

21  Actions. *Id.*, ¶10; Stoia Decl., ¶4.

22              Defendants deny Plaintiffs' allegations and dispute that they are liable under any of the

23  legal theories asserted by Plaintiffs.  Weiss Decl., ¶11.  Defendants dispute that the CARD Act

24  and various state statutes under which Plaintiffs sued were intended to prohibit the expiration of

25  Groupon Vouchers' Promotional Value.  Defendants contend that: (1) the Groupon Vouchers are

26  encompassed within an exception for promotional gift certificates in the EFTA; (2) expiration of

27  the Promotional Value of Groupon Vouchers is permitted under state law; and (3) expiration of

28  the Customer Purchase Price value, as disclosed to consumers in Groupon's Terms and

Conditions, expires in accordance with applicable state laws of the jurisdiction in which the Groupon was sold.  *Id.*, ¶12.  Defendants further contend that all restrictions applicable to the Groupon Vouchers were adequately disclosed to consumers in Groupon's Terms and Conditions, its promotional offers relating to the Groupon Voucher, and/or on the face of the Groupon Voucher, and that such terms were not misleading or deceptive.  *Id.*, ¶13.

More importantly, Defendants have always contended all of Plaintiffs' and the classes' claims are subject to mandatory arbitration and that Plaintiffs have waived the right to bring a class action under Groupon's Terms and Conditions.  *See id.* at ¶14; *see also CompuCredit Corp. v. Greenwood* ("*CompuCredit*"), __ U.S. __, 132 S. Ct. 665, 668-69 (2012) (citing *AT&T Mobility LLC v. Concepcion,* ("*Concepcion*"), __ U.S. __, 131 S. Ct. 1740 (2011) (upholding waiver of right to bring class action in arbitration agreement).)  Defendants also assert that any purported damages for all class actions under EFTA are capped at $500,000.  *See* 15 U.S.C. §1693m(a)(2)(B).

As ordered by the Court, the parties engaged in extensive formal discovery relating to Defendants' contention that the class claims are subject to mandatory arbitration, exchanging and responding to numerous written discovery and document requests, including requests for admission served on certain Merchant Partners, and the parties were in the process of scheduling the deposition of the parties before staying this MDL.  Weiss Decl., ¶15; Stoia Decl, ¶¶8-11.

**3.      History of the Settlement Discussions**

Prior to submitting their Settlement Agreement to the Court for approval, the Parties engaged in hard-fought, arms-length settlement negotiations spanning nearly a year.  Importantly, their negotiations were undertaken under the supervision and with the active participation of the Honorable Daniel Weinstein (Ret.) of JAMS.  *See* Declaration of Hon. Daniel H. Weinstein (Ret.) ("Weinstein Decl.), ¶¶1, 7-18; Weiss Decl., ¶18; Stoia Decl., ¶13; *see also Rodriguez,* 563 F.3d at 956 ("The sessions were mediated by the Honorable Daniel Weinstein (Ret. Superior Court of California, San Francisco County) of JAMS, a provider of ADR services, who had extensive experience in this type of [consumer class action] case.").

/////

Following multiple telephonic settlement meetings, the parties agreed to submit their dispute to mediation.  Weiss Decl., ¶20; Stoia Decl., ¶14.  Weinstein Decl., ¶7.  Thereafter, the parties submitted settlement briefs to Judge Weinstein and attended an all-day mediation session on May 17, 2011, during which the parties narrowed the issues but were unable to reach a resolution.  Weinstein Decl., ¶7; Weiss Decl., ¶20; Stoia Decl., ¶14.  The parties continued to negotiate the terms of settlement by way of innumerable telephonic conferences and other exchanges between the parties and with Judge Weinstein, which efforts ultimately led to an agreement in principle in August 2011, with the exception of Plaintiffs' attorneys fees and expenses, which the parties refrained from negotiating until all other terms of Settlement were set.[6]  Weinstein Decl., ¶¶7-13; Weiss Decl., ¶21; Stoia Decl., ¶15.  After reaching agreement on the terms of Settlement, the parties subsequently drafted and negotiated the Settlement Agreement, exchanging over a dozen versions of the Stipulation and the settlement exhibits, including the class notice, claim form, notice and claims administration program, and settlement vouchers.  Weinstein Decl., ¶13-14; Weiss Decl., ¶22; Stoia Decl., ¶16.

Throughout the negotiations process, the parties frequently consulted Judge Weinstein on various issues, including the monetary and injunctive relief, the claims administration process, and the form of notice.  Weinstein Decl., ¶¶13-14; Weiss Decl., ¶23; Stoia Decl., ¶17.  During the Fall of 2011, the parties reached impasse in their negotiations.  Weinstein Decl., ¶14; Weiss Decl., ¶24; Stoia Decl., ¶17.  The settlement was close to deteriorating at several critical junctures, but with Judge Weinstein's able guidance and assistance, the parties persevered and were ultimately able to resolve all the material issues in the draft Stipulation and 11 exhibits thereto.  Weinstein Decl., ¶13; Weiss Decl., ¶24; Stoia Decl., ¶17.  Thus, the parties achieved what ultimately became the subject Settlement Agreement filed with, and preliminarily approved by, this Court.  Weinstein Decl., ¶¶13-14; Weiss Decl., ¶24; Stoia Decl., ¶17.

As Judge Weinstein witnessed, throughout the parties' settlement discussions, including the initial mediation session on May 17, 2011, and the parties' negotiations thereafter, the parties

---

[6] Plaintiffs address the reasonableness of the attorneys' fees and expenses, as well as the Incentive Awards separately in their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Award Payments, filed on June 22, 2012 (Dkt. #48).

1   always negotiated at arms-length.  Weinstein Decl., ¶¶5, 16-18.  There was never any indication

2   of any type of collusion between the parties in any of the negotiations.  *Id.*  In fact, the

3   negotiations were intense at every step of the way, and the parties vigorously defended their

4   respective positions.  *Id.*  Judge Weinstein can attest to the fact that the parties conducted

5   themselves with utmost professionalism, ethics, and competence throughout the process.  *Id.*  In

6   fact, as he has averred in his declaration submitted concurrently herewith, Class Counsel and

7   Counsel for Defendants are intelligent, capable lawyers who fought very hard on behalf of their

8   clients' positions and were fully prepared, well informed on the law and facts of the case and

9   negotiated accordingly.  *Id.*

10       While reasonableness is ultimately for the Court's determination, Judge Weinstein as the

11   mediator of this dispute has recommended, based on his knowledge of the case, the barriers to

12   resolution, and the parties' substantial hard work in resolving their disputes, that the Settlement is

13   fair, reasonable, and adequate to settle the Class' claims asserted in this matter.  *Id.*, ¶¶5, 17-18.

14   **III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE PARTIES'
         PROPOSED SETTLEMENT WHICH REFLECTS CAREFUL CONSIDERATION
15       OF THE BENEFITS, BURDENS, AND RISKS ASSOCIATED WITH
         CONTINUED LITIGATION**

16

17       The proposed Settlement Agreement reflects careful consideration by the parties of the

18   benefits, burdens, and risks associated with continued litigation of these Actions.  Furthermore,

19   Judge Weinstein oversaw the arms-length negotiations between the parties and has submitted a

20   declaration opining that the Settlement is "fundamentally fair, reasonable and adequate," and thus

21   recommending that the Court grant final approval of the Settlement.  *See* Weinstein Decl., ¶¶5,

22   17-18.  Accordingly, the parties respectfully submit that this Court should grant final approval of

23   their Settlement Agreement and order that relief be given to the Class.

24       **A.   Legal Standards**

25       Rule 23(e) provides that the "claims, issues, or defenses of a certified class may be settled,

26   voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).

27   The Ninth Circuit strongly encourages the settlement of class actions.  *See Churchill Village,*

28   *L.L.C. v. GE*, 361 F.3d 566, 572 (9th Cir. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

(9th Cir. 1998); *Rodriguez*, 563 F.3d at 948.  The Ninth Circuit reviews district court "approval of a class action settlement for a 'clear abuse of discretion'" and "'will affirm if the district judge applies the proper legal standard and his or her findings of fact are not clearly erroneous.'" *Rodriguez*, 563 F.3d at 963-64.  "'[R]eview of the district court's decision to approve a class action settlement is extremely limited.  It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'"  *Id.* at 964.

The standard for approval of class action settlements under Rule 23(e) is well settled in the Ninth Circuit: a class action settlement should be reviewed under "the universally applied standard [of] whether the settlement is fundamentally fair, adequate, and reasonable."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit has described the role of the court as follows:

> [T]he court's intrusion upon what is otherwise a private consensual arrangement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that *the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.* Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.*; *accord Rodriguez*, 563 F.3d at 963-64.

Additionally, where, as here, a proposed settlement has been reached after discovery and arms' length negotiations conducted by capable counsel, and with the assistance of a well-respected mediator, it is presumptively fair.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  Here, Class Counsel and Defense Counsel are capable, seasoned attorneys with great experience in nationwide consumer class actions.  Weinstein Decl., ¶¶5, 17-18.  The Settlement was reached after formal discovery into issues surrounding arbitration.  Weiss Decl., ¶¶15, 19; Stoia Decl., ¶¶8-12.  Moreover, the Settlement was reached at arms-length under the oversight of a well-respected mediator, Judge Weinstein of JAMS.  *Id.* The Court should grant final approval.

**B.** **For Purposes of Settlement Only, the Settlement Class Meets the Requirements of Rule 23**

The Court has already conditionally certified the Settlement Class and appointed the Class Representatives and Class Counsel to represent the Settlement Class Members. (Preliminary Approval Order at 1-2.) As set forth in Plaintiffs' Motion for Conditional Certification of the Settlement Class and Appointment of Class Representatives and Class Counsel, which Defendants do not oppose for purposes of settlement only, the Settlement Class satisfies the requirements for class certification set forth in Rule 23(a) and Rule 23(b)(3). (*See* Dkt. #41-1 ("Memo of Points and Authorities in Support of Motion for Conditional Certification of the Settlement Class") at 1-5.)

The Settlement Class satisfies the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy for purposes of settlement. It is undisputed that Groupon has sold millions of Groupon Vouchers throughout the United States, thus readily satisfying the numerosity requirement. (*See* Plaintiffs' Memo of Points and Authorities in Support of Motion for Conditional Certification of the Settlement Class") at 2.) Commonality is satisfied because the claims of Plaintiffs and the Settlement Class Members are based on a number of alleged common sales practices used in connection with the sale of Groupon vouchers and upon alleged violations of the EFTA, as amended by the CARD Act, 15 U.S.C. §1963 *et seq.*, and state statutes governing gift cards. (*See id.* at 2-3.)

Specifically, Plaintiffs alleged that the federal CARD Act is applicable to Groupon Vouchers and prohibits the sale of gift certificates with expiration periods of less than five years, and that a number of state laws similarly prohibit expiration of gift certificates, which they alleged include Groupon Vouchers. (*See id.*) Plaintiffs contend, and Defendants do not oppose for purposes of settlement, that the typicality requirement is met because the claims of the named Plaintiffs and the Settlement Class Members are all based primarily on the same alleged core facts and underlying legal theories: Defendants' marketing and sale of Groupon Vouchers with stated expiration dates on the Vouchers allegedly are in violation of one or more laws. (*See id.* at 3.)

/////

In addition, Plaintiffs contend, and Defendants do not oppose for purposes of settlement, that the named Plaintiffs are adequate to represent the Settlement Class, and that there is no conflict between the named Plaintiffs' interests and those of the Settlement Class.[7]  Finally, with respect to Rule 23(a), Class Counsel, John J. Stoia, Jr. of Robbins Geller Rudman & Dowd LLP is indisputably qualified and experienced in class action litigation, as the Court found in appointing him and Robbins Geller Rudman & Dowd LLP as Interim Class Counsel and subsequently Class Counsel in the Court's Preliminary Approval Order.  (*See id.* at 3-4.); *see* Order Appointing Robbins Geller Rudman & Dowd LLP as Interim Class Counsel and Approval of Plaintiffs' Steering Committee (Dkt. #10); *see also* Preliminary Approval Order.

Plaintiffs contend, and Defendants do not dispute for purposes of settlement, that the Settlement Class also satisfies the requirements for certification under Rule 23(b)(3) that common questions predominate because many of the same alleged operative facts and legal issues apply to all of the Settlement Class Members' claims.  (Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Conditional Certification of the Settlement Class at 3-4.)  Each Settlement Class Member purchased at least one Groupon Voucher stating an expiration date which Plaintiffs contend violates one or more laws.  (*See id* at 4-5.)  Further, a class action is also the superior method of adjudicating the claims of the Settlement Class, and given the relatively small size of each Class Member's potential claim and the common elements among the legal claims of Class Members, a class action is the most efficient and cost-effective way to address the legality of Groupon's Vouchers.  (*See id.* at 5.)

Accordingly, the Parties respectfully request that the Court grant final approval of certification of the Settlement Class as defined in the Settlement Agreement for purposes of effectuating the Settlement, and order that the Settlement Class Members are bound by the

---

[7]  Plaintiffs have applied for modest Incentive Awards of $500 as compensation for their time and effort in prosecuting this action, which Groupon agreed may be paid from the Settlement Fund if awarded by the Court.  As the Ninth Circuit has observed, "[i]ncentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958.  Incentive awards are "intended to compensate class representatives for work done on behalf of the class."  *Id.*  Given the modest amount requested, there is no conflict with Settlement Class Members, particularly where no award was requested or negotiated until after the other material Settlement terms were agreed upon.  *See id.* at 959.

1   Settlement Agreement and the Final Judgment entered in this Action, except for those Settlement

2   Class Members who have submitted timely Requests for Exclusion.  *See* Hodne Decl., ¶31, Ex. C.

3           **C.      The Settlement is Fair, Reasonable, and Adequate**

4           In evaluating the fairness, reasonableness, and adequacy of a class action settlement,

5   courts consider and balance a number of factors under Rule 23, including: (1) the strength of

6   plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

7   risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

8   (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and

9   views of counsel; and (7) the reaction of the class to the proposed settlement.  *See Churchill*

10  *Village,* 361 F.3d at 575-76; *see also Hanlon,* 150 F.3d at 1026.

11          The Court has already initially considered all the relevant factors in deciding to grant

12  preliminary approval of the Settlement (with the exception of the reaction of Class Members,

13  which could not yet be evaluated because Settlement Class Members had not yet received notice

14  of the Settlement) and found that the settlement falls within the range of reasonableness meriting

15  possible final approval.  (*See* Dkt. #40-1 ("Memo of Points and Authorities in Support of Motion

16  for Preliminary Approval"), pp. 12-16; Preliminary Approval Order at 2 ("The Court, having

17  conducted a preliminary assessment of the fairness, reasonableness, and adequacy of the

18  Settlement Agreement, hereby finds that the Settlement falls within the range of reasonableness

19  meriting further proceedings and possible final approval and dissemination of the Class

20  Settlement Notice to the Settlement Class.")

21          As argued in the joint Motion for Preliminary Approval of Class Action Settlement, each

22  of these factors weighs in favor of approval of the Settlement.  (*See* Memo of Points and

23  Authorities in Support of Motion for Preliminary Approval at 12-16.)

24                  **1.      Strengths and Weaknesses of Plaintiffs' Case and the Risk, Expense,
                    Complexity, and Likely Duration of Further Litigation**

25

26          First, the strengths and weaknesses of Plaintiffs' case, as well as the risk, expense,

27  complexity and likely duration of further litigation, all weigh in favor of approval of the

28  Settlement.  This Action, like every class action, involves uncertainty on the merits.  The parties'

1  Settlement resolves that inherent uncertainty; for this reason, settlements are thus strongly favored

2  by the courts, particularly in class actions such as this one.  *See Van Bronkhorst v. Safeco Corp.*,

3  529 F.2d 943, 950 (9th Cir. 1976); *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977).

4  This Action is not unique in this regard – the Parties disagree about every material aspect

5  of the merits, including but not limited to, whether Plaintiffs' claims can be litigated at all or are

6  subject to mandatory individual arbitration provisions; whether Defendants violated federal or

7  state law as alleged by Plaintiffs; and the existence of alleged damages.  *See* Weiss Decl., ¶¶10-

8  14; Stoia Decl., ¶18.  Though Plaintiffs believe that they have valid claims, they recognize the

9  risk that Groupon could compel them to individual mandatory arbitration in the wake of

10 *Concepcion* and *CompuCredit*, thus foreclosing **any relief** to the Settlement Class on a classwide

11 basis.  *See* Weinstein Decl., ¶9; Stoia Decl., ¶18.

12 Further, Defendants believe they have substantial defenses to Plaintiffs' claims.  First,

13 Defendants dispute that the Plaintiffs' federal claims arising under the EFTA apply to Groupon

14 Vouchers, which Defendants maintain represent special promotions.  Weiss Decl., ¶¶11-12.

15 Defendants also argue that the EFTA cannot apply to Groupon Vouchers sold from the time of

16 Groupon's inception in 2008 through August 21, 2010, as the EFTA provisions prohibiting the

17 issuance or sale of gift cards with expiration dates prior to five years from date of sale did not

18 become effective until August 22, 2010 and is not retroactive.  *See* 12 C.F.R. §205.20(g).  Finally,

19 Defendants assert that statutory damages in a class action arising out of an EFTA violation are

20 capped to the *lesser* of $500,000 or 1% of Defendant's net worth.  *See* 15 U.S.C. § 1693m(s)(B).

21 Plaintiffs dispute the application of a cap to their claims and argue that the EFTA's cap would

22 apply, if at all, to each violation, *i.e.*, each "Daily Deal" offered by Groupon.  Stoia Decl., ¶19.

23 Further, Defendants contend that Groupon's Terms and Conditions evidence their

24 compliance with the laws of the states in which the Vouchers were sold.  Weiss Decl., ¶13.  Thus,

25 Defendants contend that, while the various state statutes that Plaintiffs argue apply to Groupon

26 Vouchers differ, with some imposing no restrictions on gift cards and others imposing

27 restrictions, and while the definition of gift cards varies with respect to their application to

28 Groupon Vouchers, consumers were informed that the expiration date of the Customer Purchase

EAST\48503902.9                     -13-

Price value of a Groupon Voucher was tied to the state law of the state in which it was sold. *Id.* Plaintiffs disagree and contend that Groupon's small print was inadequate to put consumers on notice that the Vouchers did not expire on the date provided on their face.  Stoia Decl., ¶20.

Defendants further contend that, if as alleged by Plaintiffs, the Customer Purchase Price value of Groupon Vouchers did not expire in certain states, Plaintiffs suffered no economic injury. *See, e.g.*, Cal. Bus. & Prof. Code §17204 (imposing requirement that plaintiff have suffered injury in fact and have lost money or property as a result of the unfair competition); Cal. Civ. Code §1780(a) (imposing requirement that plaintiff have suffered damages).  In sum, there is substantial uncertainty about the ultimate outcome of this litigation absent settlement.

In addition to the uncertainties and risks of litigation, if litigation were to proceed, the parties agree that they face the *certainty* that further litigation would be expensive, complex, and time consuming.  Weiss Decl., ¶27; Stoia Decl., ¶21.  The parties anticipate the need for complicated litigation on a number of issues, including whether the claims can be litigated or are subject to arbitration on an individual basis.  Weiss Decl., ¶28; Stoia Decl., ¶21.  Assuming that the Court were to determine that Plaintiffs' claims are not subject to arbitration, extensive discovery on class certification and the merits of Plaintiffs' claims and Groupon's defenses would be required. *Id.*  There is no doubt that continued litigation would be expensive, complex, and time consuming. *See id.*  This factor should weigh heavily in favor of approving the Settlement.

### 2. The Risks of Obtaining Class Certification and of Maintaining Class Action Status

Moreover, Plaintiffs face the risk that outside of settlement, they would not be able to obtain certification of a class and, in the event that they were able to obtain class certification, that they would not be able to maintain class action status.  However, for purposes of this motion for final approval, the Court may disregard any manageability issues for assessing the certification of this Settlement Class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

Defendants contend that any dispute raised by a putative class member arising from a Groupon transaction is subject to a contractual obligation to arbitrate the dispute and to a contractual waiver of any right to bring a class action.  Weiss Decl., ¶14.  Under federal law,

courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*. 470 U.S. 213, 221 (1985), and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses II. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). More importantly, the United States Supreme Court and other courts have upheld mandatory individual arbitration provisions and class action waivers, which Defendants argue are similar to those at issue here. *See Concepcion*, 131 S. Ct. 1740; *CompuCredit,* 132 S. Ct. at 669; *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1167 (N.D. Cal. 2011). Plaintiffs dispute the enforceability of these arbitration provisions as unconscionable under applicable state law, but face the risk that, but for this Settlement, Groupon would have moved to compel Plaintiffs to individual arbitration.[8]

Furthermore, if Plaintiffs' claims were to be litigated, Defendants would contend that individual issues predominate over common issues, precluding class certification under Rule 23(b)(3). Defendants argue that Plaintiffs challenge millions of different Groupon deals, each with different Merchant Partners, different Customer Purchase Prices and Promotional Values, different expiration dates, and different deal-specific terms. If these Actions were to be tried, Defendants would argue that varying state laws would apply to different Groupon Vouchers depending on the state in which the Vouchers were purchased, and various state laws treat Vouchers differently. Defendants would also argue that circumstances surrounding each Plaintiff's purchases may present affirmative defenses that preclude Plaintiffs' success at trial.

Plaintiffs contend that Groupon uniformly misrepresented that its Vouchers' Promotional and Purchase Price values were subject to short expiration dates and other misleading terms that resulted in windfall profits to it and its Merchant Partners, and that the federal EFTA and CARD Act applies nationwide to prohibit such expiration periods, in addition to certain state laws. State Law claims could easily be grouped as subclasses with similar state laws relating to expiration periods or gift cards and gift certificates. Finally, Plaintiffs believe that class certification could be determined on legal questions as individual factual determinations are irrelevant in

---

[8] The Parties' Settlement Agreement preserves Defendants' right to seek to compel arbitration and Plaintiffs' right to oppose any such motion in the event that the Settlement is not finally approved.

1   determining whether Groupon Vouchers violated Federal or State Law.  Plaintiffs recognize the

2   risk, however, that as in any case, the court could deny any motion for class certification.

3         **3.      The Relief Provided to the Class in the Settlement Is Substantial**

4         As demonstrated by the terms of the Stipulation, the injunctive and monetary relief to the

5   Settlement Class Members provided by the Settlement Agreement is substantial, and further

6   supports final approval of the Settlement.  (*See* §D.)  Going forward, the Settlement Agreement

7   also provides Class Members with invaluable injunctive relief in terms of required changes to the

8   appearance, disclosures and content of Groupon Vouchers, to avoid any potential

9   misunderstanding by consumers in the future.  (*See* §D.1.)  For a period of three years following

10  the Effective Date, except for certain limited types of offers set forth in the Settlement

11  Agreement, Groupon agrees it will not offer or sell Groupon Vouchers with any expiration date

12  applying to the Customer Purchase Price, and agrees not to offer or sell more than 10% of its

13  Daily Deals annually with an expiration date of the Promotional Value of less than 30 calendar

14  days from the Groupon Voucher's date of issuance.[9]  (*Id.*)  On and after the Effective Date, where

15  there is a difference between the date of expiration of the Promotional Value versus the date of

16  expiration of the Customer Purchase Price, Groupon Vouchers will contain clear and conspicuous

17  disclosures explaining the difference between such expiration dates, both prior to purchase and on

18  the face of the Groupon Voucher.  Groupon Vouchers will clearly state the date of the expiration

19  of the Promotional Value, and clearly and conspicuously state that the Customer Purchase Price

20  does not expire unless the Groupon Voucher is redeemed or refunded.  (§D.1.c.)  In addition to

21  the above disclosures on the face of Groupon Vouchers, the terms and conditions of the Groupon

22  Voucher expiration periods shall be shown on the "Daily Deal" promotion displayed to the

23  consumer prior to purchase, including on mobile devices.  (*Id.*)

24        The Settlement also provides valuable monetary relief to individual Class Members.  The

25  monetary relief provided to the Settlement Class under the Settlement Agreement is illustrated as

26

27  [9] These restrictions will apply to all Groupon Vouchers except for: (i) Groupon Now! Vouchers, (ii) Groupon Vouchers sold for travel related offers; (iii) Groupon Vouchers sold for admission to ticketed events; and (iv) Groupon Vouchers that offer goods, services or events which are inherently limited by time or availability.  §D.1.a.

28

follows:



As shown above, the Settlement requires Groupon to set up a Settlement Fund in the amount of $8,500,000 to provide monetary relief to Class Members who are unable to obtain goods or services from the Merchant Partner because the Merchant Partner has gone out of business or refuses to honor their Settlement Voucher.  (§E.3.)  Prior to submitting a claim for a refund, Class Members will file Claim Forms to receive a Settlement Voucher to redeem with the Merchant for the goods or services they originally sought in the amount of the Purchase Price paid.  (§E.1.)

In the unlikely event that a Merchant Partner has gone out of business or refuses to honor a Class Member's Settlement Voucher, the Class Member may claim a refund to be paid out of the $8.5 million Settlement Fund.  (§E.3.)  Significantly, Merchant Partners have obligations to fulfill their duties of honoring Settlement Vouchers presented to them by Class Members in exchange for their release.  (§E.2.)  Further, Groupon has informed all Merchant Partners of the Settlement and begun to educate them on the terms of the Settlement, including their obligations to honor Settlement Vouchers presented within 130 days of the issue date.[10]  Weiss Decl., ¶35.

---

[10] The Settlement Agreement provides: "Within seven (7) days of the Effective Date, Groupon will notify all past and current Merchant Partners through means and content reflected in Exhibit 10 that they may be

The Claims Administrator has also fielded calls from inquiring Merchants and referred them to Groupon to communicate with them directly about their obligations under the Settlement.  Hodne Decl., ¶23.

Nevertheless, if a Merchant Partner has gone out of business or refuses to honor a Settlement Voucher despite the obligation to do so, a Class Member may request a refund, to be paid from the $8.5 million Settlement Fund.  (*See* §E.3).  If a Merchant Partner has gone out of business, the Class Member will receive a cash refund of the full Customer Purchase Price of the Groupon Voucher.  (*See* §E.3.a).  If a Merchant Partner remains in business but ***refuses*** to redeem a Settlement Voucher, the Class Member can submit a claim for a refund the Customer Purchase Price, plus an additional amount equal to 20% of the Promotional Value of the Groupon Voucher on which the claim is based.  (*See id.*).

Importantly, the majority of consumers who purchased Groupon Vouchers during the Class Period have already redeemed their Vouchers for the goods and services bargained for and thus are not entitled to receive a refund from the First Settlement Fund.[11]  Further, the great majority of Class Members will be able to enjoy the goods and services that they originally sought from the Merchant Partner through redemption of the Settlement Vouchers, thereby receiving the monetary benefit of their bargain.  Indeed, most Merchant Partners remain in business, and the parties believe that they will honor the Settlement Vouchers for the reasons stated herein.  The small number of Class Members who will require refunds because they are unable to redeem their Settlement Vouchers is not expected to exceed the amount set aside by the

presented with Settlement Vouchers and requesting that they redeem all Settlement Vouchers presented by Settlement Class Members presented within 130 days of the Settlement Voucher's Issue Date."  (§E.2.) After signing the Settlement Agreement, however, the Parties agreed, subject to Court approval, to a minor modification of that arrangement, replacing the language above with the following language: "Groupon will notify all past and current Merchant Partners of the Settlement.  As the Settlement Vouchers are issued by the Claims Administrator in response to Class Member Claims, Groupon will send notice through means and content reflected in Exhibit 10 to potentially impacted Merchant Partners and request that they redeem all Settlement Vouchers presented by Settlement Class Members within 130 days of the Settlement Voucher's Issue Date." Weiss Decl., ¶36; Stoia Decl., ¶22.

[11] Though Groupon and its Merchant Partners do not track redemption rates, industry publications indicate that non-redemption rates range from 5% to 20%.  *See* Stoia Decl., ¶27 & Exs. A-B.  Moreover, given the number of Class Members who have inquired to date or filed Claims, the parties do not anticipate that the Settlement Fund will be depleted.  *See generally* Hodne Decl.

Settlement Fund.  Thus, the possibility that the Settlement Fund will be insufficient to satisfy the Class Members' claims for full refunds is unlikely.  However, in the unlikely event that Class Members' requests for refunds exceed the amount of the Settlement Fund, refunds will be reduced pro rata.  (*See* §E.3.b.)  Plaintiffs and Defendants believe that no pro rata reduction will occur because Merchant Partners are required to honor the Settlement Vouchers, and the vast majority of Class Members who have unredeemed, expired Groupon Vouchers will be able to redeem their Settlement Vouchers to obtain the goods or services from the Merchant for the amount of the Purchase Price of their Groupon Vouchers.  The small number of Class Members who will still require refunds because they are unable to redeem their Settlement Vouchers is highly unlikely to result in refunds which exceed the amount set aside by the Settlement Fund.

In the very likely event that, as the parties anticipate, there are funds still remaining in the Settlement Fund after all valid requests for refunds relating to Groupon Voucher purchased during the Class Period are paid, the Claims Administrator will provide a second notice to Class Members that they may request refunds for Groupon Vouchers purchased after December 1, 2011.  Moreover, if and only if funds remain *after* all Class Members' refund requests are satisfied from the first Settlement Fund, will a *cy pres* payment of $75,000 or more be made to two non-profit consumer Internet advocacy organizations.  These organizations are the Electronic Frontier Foundation and the Center for Democracy and Technology, two advocacy organizations dedicated to pursuing consumer rights on the Internet.  §D.3; see *also* Weiss Decl., ¶33, Ex. 1 (screen shots of cy pres beneficiaries' websites).

The *cy pres* payments are contingent, and distributed only after Class Members' requests for refunds of unredeemed Settlement Vouchers have been fully satisfied; the *cy pres* component also represents a small percentage of the overall monetary relief, and these organizations address the types of abuses that were alleged by Plaintiffs here; Accordingly, the *cy pres* meets the Ninth Circuit's standards for distributing such unclaimed funds.  *See, e.g. Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990)).

/////

/////

### 4.     Extent of Discovery, Stage of Proceedings, and Experience and Views of Counsel

The stage of the proceedings and the experience and views of counsel also weigh in favor of approving the Settlement.  This litigation has been pending for a year and a half, and the Settlement was reached only after extensive arms-length negotiations, including over an 8 month-long mediation process overseen by an experienced retired judge.  Weiss Decl., ¶18.  Prior to reaching this Settlement, the Parties engaged in formal and informal discovery regarding arbitration, permitting them to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed Settlement Agreement to further litigation.  Weiss Decl., ¶19; Stoia, ¶23.  Counsel for Defendants and Plaintiffs, both of whom have substantial experience in litigating class actions, zealously negotiated on behalf of their respective clients' best interests, and a settlement was reached only after multiple settlement proposals had been exchanged and rejected.  Weiss Decl., ¶25; Stoia, ¶¶14-17  Counsel believe and jointly represent to this Court that the Settlement Agreement is fair, reasonable, and adequate, which weighs heavily in favor of a finding that the Settlement Agreement is fair.  *See* Weiss Decl., ¶30; Stoia, ¶24; *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution…"); *see also In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation"); *Hanlon*, 150 F.3d at 1027 ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.")  Similarly, Judge Weinstein has submitted a declaration recommending to the Court that it should approve the Settlement Agreement reached by the parties in this Action.  Weinstein Decl., *passim*.

/////

/////

### 5.        Reaction of Class Members

Finally, the overwhelmingly positive reaction of the Class to the proposed Settlement, the only relevant factor not considered by the Court in granting preliminary approval of the Settlement, further weighs heavily in favor of final approval of the Settlement.  As demonstrated by the sworn declaration of Rust Consulting, the Settlement Class has now been provided Notice of the Settlement.  Hodne Decl., ¶¶ 7, 13.   Out of millions of Settlement Class Members, a *de minimis* number has objected or sought exclusion; in contrast, approximately 40,000 class members have filed claims indicating their interest in participating before the formal time to submit Claims has even begun.  *Id.*, ¶¶29, 31-33.

Further, many of the minimal number of objections have been filed by professional objectors who routinely appear in class actions, such as this, in the hopes that they may hold up the Settlement here or in the Court of Appeals for their own pecuniary gain.  *See* Weiss Decl., ¶32; Stoia Decl., ¶24.  The parties will further address objections in their brief currently due on or before August 24, 2012.[12]  However, suffice it to say for purposes of this brief that the lack of significant objections or substantial number of requests for exclusion and all other relevant factors support a finding that the Settlement is fair, reasonable, and adequate.

### D.        Notice to the Settlement Class Was Adequate and Satisfied Due Process

Further, the Notice to the Settlement Class was adequate and satisfied both Rule 23 and due process.  Under Rule 23(e)(1), the court must direct notice in a reasonable manner to all class members who would be bound by the proposal.  *Rodriguez*, 563 F.3d at 962; Fed. R. Civ. P. 23(e)(1).  Rule 23 requires only that the best notice practicable rather than actual notice is provided.  *Siber v. Mabon,*  18 F.3d 1449, 1453 (9th Cir. 1994) (holding that the best notice practicable, rather than actual notice, is the proper standard for providing notice of a proposed settlement to absent class members.)  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Rodriguez*, 563 F.3d at 962.

---

[12] Plaintiffs will separately address any objections pertaining to their motion for an award of Attorneys' Fees and Expenses, and Plaintiffs' Incentive Awards, in their brief also due on August 24, 2012.

Here, in granting preliminary approval, this Court previously approved the Settlement Class Notice and the Notice Program, and ordered notice to Settlement Class as follows:

Direct Email Notice:  The Court directed the Claims Administrator to cause the Class Settlement Notice, in the form approved by the Court, to be disseminated to potential Settlement Class Members no later than fifty-five (55) days before the Final Approval Hearing via an email message transmitted to the email address provided by each Settlement Class Member at the time of purchasing Groupon Voucher(s), from a domain name including the word "Groupon" so that, to the extent possible, the emails would not be excluded from Settlement Class Members' email inboxes.  (Preliminary Approval Order at 6-7.)

Publication to Settlement Website:  The Court further directed the Claims Administrator to establish a Settlement website, making available copies of this Order, Class Notices (the Class Settlement Notice and the Settlement Fund Claims Notice), the Settlement Agreement and all Exhibits thereto, instructions on how to submit Claims and requests for refunds online or by email or facsimile, commonly or frequently asked questions ("FAQs") and answers, Orders of the Court pertaining to the Settlement, a toll-free telephone number and addresses to contact the Claims Administrator by email and mail, and such other information as may be of assistance to Settlement Class Members or required under the Settlement Agreement.  (*Id.* at 6.).  The Claims Deadline was also set forth on the website of Class Counsel.

In granting preliminary approval of the Settlement, the Court found that the above-described methods are the best practicable means by which the Settlement Class could be provided notice, and therefore, meet the requirements of Fed. R. Civ. P. 23 and due process.  (Preliminary Approval Order at 6.)  Indeed, consumers of Groupon Vouchers are accustomed to using email and the Internet to interact with Groupon and transact business with Groupon, as the Internet is the means by which Groupon both solicits and receives its purchase orders.  *See* Weiss Decl., ¶4, 6-7.  As such, the Court correctly found the notice set forth above was adequate.

Pursuant to the Preliminary Approval Order, Notice has now been provided to the Settlement Class, and the Claims Administrator, Rust Consulting, has filed with the Court its proof of compliance.  Hodne Decl., ¶¶7.  Moreover, the Claims Administrator established a

Settlement Website, which became operational on May 21, 2012, and may be viewed at www.grouponvouchersettlement.com. *Id*., ¶13. The Settlement Website includes copies of the Settlement Agreement and all Exhibits thereto, instructions on how to submit Claims and requests for refunds online or by email or facsimile, FAQs and answers thereto, Orders of the Court pertaining to the Settlement, and a toll-free telephone number and addresses to contact the Claims Administrator by email and mail. *Id.*, ¶14. The "Commonly Asked Questions" page on the Settlement Website has been periodically updated to address inquiries that the Claims Administrator has received from Class Members. *Id.*, ¶15.

The Settlement Class Notice was disseminated to Class Members via email as described above on or before May 25, 2012. *Id.*, ¶7. Groupon's records identified approximately 14.4 million potential Settlement Class Members. Email messages were disseminated to all of these potential Settlement Class Members for which Groupon had email addresses on a rolling basis over a number of days beginning May 21, 2012, with all emails disseminated by May 25, 2012. *Id.*, ¶¶8-10. The email notices were in the form approved by this Court, and included a link to the Settlement Website and instructions to Class Members. *Id.,* ¶12. Further, the email notice was sent from a "domain" that included Groupon's name, so that the notices to Settlement Class Members would not be inadvertently treated as "spam" email. *Id.,* ¶11. Class Counsel also posted the deadline for Settlement Claims Forms on its website. Stoia Decl., ¶26.

More recently, in order to further clarify certain terms of the Settlement Agreement to the Settlement Class, the parties provided additional notice via email and update the website to the Settlement Class regarding certain terms of the Settlement Agreement. (*See* Dkt. #49 ("Joint Motion and Stipulation to Continue Hearing on Final Approval of Class Action Settlement and Related Dates").) The parties applied to the Court and requested a brief extension of the time for Class Members to seek exclusion from the Settlement Class, or to object to the Settlement. (*Id.*) The Court approved a continuance of the final approval hearing and related dates in order to permit the parties to provide this additional notice to the class. (Dkt. #50 ("Order Granting Motion to Continue Date Set for Hearing on Final Approval").) That supplemental notice was subsequently and timely distributed to the class by email. Hodne Decl., 25 & Ex. B.

Importantly, the Notice Program informed Settlement Class Members of the Settlement terms, provided contact information for Rust as the Claims Administration in the event they had questions, and explained that, when the Court considers final approval at the Fairness Hearing, Settlement Class Members who object to the Settlement may be heard. Weiss Decl., ¶34; Hodne Decl., ¶14. The Notice also informed objectors to file written objections with the Court and to give notice if they intend to appear at the Fairness Hearing. *Id.* Further, the Notice informed Settlement Class Members about the procedures for requesting exclusion. *Id.* Finally, the Notice Program advised the Settlement Class of Class Counsel's fee and expense request, as well as Plaintiffs' intention to apply to this Court for modest Incentive Awards. *Id.*

The Notice Program carried out in accordance with the Preliminary Approval Order, complies with Rule 23 and satisfies due process, and is the best notice practicable. *See Siber*, 18 F. 3d at 1453 (holding that the best notice practicable, rather than actual notice, is the proper standard for providing notice of proposed settlement to absent class members.) Because Groupon communicates with its customers almost exclusively by means of the internet and by email, and does not have physical mailing addresses for the majority of Settlement Class Members, the Notice Program approved by the Court is the best notice practicable and is targeted to reach Settlement Class Members. *See Farinella v. Paypal, Inc.,* 611 F. Supp. 2d 250, 256-57 & n.10 (E.D.N.Y. 2009) ("[C]lass members in this case are uniquely suited for email notification because (1) their interactions with the defendants have exclusively or predominantly been via email and over the internet and (2) while the email addresses associated with their PayPal accounts have been verified by the defendants, their mailing addresses have not."); *Browning v. Yahoo! Inc.*, no. C04-1463-HRL, 2006 WL 3826714, at *8-*9 (N.D. Cal. Dec. 27, 2006) (finding email notice directing class members to official settlement website particularly appropriate where class members' "allegations arise from their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar with and comfortable with email and the Internet"); *see also Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 58 (2008) (approving email notice directing class members to settlement website and stating "[u]sing a summary notice that directed the class member wanting more information to a Web site containing a more detailed notice, and provided

-24-

1   hyperlinks to that Web site, was a perfectly acceptable manner of giving notice in this case.").

2          Indeed, the response and interest of Class Members in this Settlement further

3   demonstrates the Notice Program's effectiveness.  As of the date of this filing, the Settlement

4   Website has been visited 4,054,027 times.  Hodne Decl., ¶16.  Further, the Claims Administrator

5   has received 8,179 calls to the telephone support line, with approximately 803 of these calls

6   transferred to a customer service representative, and received 7,907 email inquiries as of the date

7   of this filing.  *Id.* ¶¶21, 24.

8          As it turns out, the Settlement has also been well-publicized by the media over the few

9   months, and a number of media sources, including major newspapers and broadcasters such as the

10  Los Angeles Times and ABC News, have publicized the Settlement and provided the Settlement

11  Website URL for Class Members to obtain additional information.  Weiss Decl., ¶31.

12         Accordingly, adequate notice has been provided to the Settlement Class.

13  **IV.    CONCLUSION**

14         Plaintiffs and Defendants respectfully submit that the Settlement is fair, reasonable, and

15  adequate.  For the reasons set forth above, the Parties respectfully request that the Court grant

16  final approval of the Settlement and enter the Judgment and Dismissal with Prejudice submitted

17  herewith.

18  DATED:  August 10, 2012                    Respectfully submitted,

19                                             ROBBINS GELLER RUDMAN & DOWD LLP
20                                             /s/ John J. Stoia, Jr.
                                               JOHN H. STOIA, JR.
21                                             Class Counsel

22  DATED:  August 10, 2012                    DLA PIPER LLP (US)
23
                                               /s/ Shirli Fabbri Weiss
24                                             SHIRLI FABBRI WEISS
25                                             Counsel for Defendants
26

27

28