1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11  In re GROUPON MARKETING AND SALES )   No. 3:11-md-02238-DMS-RBB
    PRACTICES LITIGATION                  )
12  _____ )   DECLARATION OF THE HONORABLE
                                          DANIEL H. WEINSTEIN (RET.) IN
13                                         SUPPORT OF JOINT MOTION FOR FINAL
                                          APPROVAL OF CLASS ACTION
14                                         SETTLEMENT
15
16
17
18
19
20
21
22
23
24
25
26
27
28

744468_1

1            I, HON. DANIEL H. WEINSTEIN (Ret.), DECLARE AS FOLLOWS:

2           1.      From early May, 2011, I served as the Mediator in connection with the proposed

3 settlement of *In re Groupon Marketing and Sales Practices Litigation.* I submit this declaration

4 in support of the parties' Joint Motion for Final Approval of Class Action Settlement. Except as

5 otherwise noted, I have personal knowledge of the matters set forth herein and I am competent to

6 testify thereto in a Court of law.

7           2.      All of the parties, entities, and individuals who were represented at the mediation

8 sessions or who participated in the negotiations executed a Confidentiality Agreement indicating

9 that the mediation process was to be considered settlement negotiations for the purpose of all

10 state and federal rules protecting disclosures made during such process from later discovery and /

11 or use in evidence. The Parties further agreed that the Confidentiality Agreement extends to all

12 present and future civil, judicial, quasi-judicial, arbitral, administrative and other proceedings.

13 Nothing in my declaration divulges any privileged information. Further, the filing of this

14 declaration does not constitute the waiver of any such confidentiality.

15           3.      From 1982 through 1988 I served as a Judge of the Superior Court of the State of

16 California, County of San Francisco. I also served as an Associate Justice Pro Tem of the

17 California Supreme Court and the First District Court of Appeal.

18           4.      Since retiring from the bench, I have been a full-time Mediator. For more than

19 twenty years, I have presided over the mediation of countless disputes, including many complex,

20 multi-party disputes throughout the United States. By way of example, only, I have mediated

21 dozens of class actions involving companies such as PIMCO, Adelphia, Broadcom, IndyMac,

22 Marsh & McLennan, UCBH, and other major New York Stock Exchange and NASDAQ cases. I

23 have also mediated a variety of other types of class actions, including ERISA cases, intellectual

24 property actions, domestic and international environmental cases, subprime litigation, litigation

25 with bankruptcy and regulatory aspects, and litigation brought by consumers, borrowers, credit

26 card customers, insurance purchasers, and air crash victims. Many of the cases involve complex

27 fact patterns and legal issues, and involve hundreds of millions (or billions) of dollars in claimed

28 damages. They often include numerous plaintiffs and plaintiffs' counsel, as well as numerous

1  defendants (e.g., issuers, directors, officers, insurance carriers, professional firms, etc.) and

2  defense counsel.  For each of the last ten years, I have assisted parties in effectuating settlements

3  of complex disputes involving more than one billion dollars in the aggregate.

4        5.      I set forth my background to provide context for the comments that follow, and to

5  demonstrate that my perspective on the settlement of this matter is rooted in significant

6  experience in the resolution of complex litigation.  As described below, the action presented

7  significant and complicated legal, factual, and practical issues.  The parties were represented

8  during the mediation process through zealous and able counsel who negotiated aggressively and

9  arm's length.  I view the settlement of the action reached at the end of this extensive mediation

10  process, as memorialized in the parties Stipulation of Class Action Settlement, as a reasonable

11  and practical resolution of this complex and uncertain litigation.  The Court, of course, will make

12  the determination of the "fairness" of the settlement under applicable legal standards. From a

13  mediator's perspective, however, I unreservedly recommend the settlement that has been reached

14  as reasonable, hard-fought, arm's length, and accurately reflective of the risks and potential

15  rewards of the claims being settled.

16  **I.      BACKGROUND**

17        6.      In this multi-district litigation proceeding, Plaintiffs allege that Groupon, Inc.

18  ("Groupon"), and its Merchant Partners marketed and sold Groupon Vouchers with overly

19  restrictive expiration periods and other deceptive terms, in violation of the federal Credit Card

20  Accountability Responsibility and Disclosure Act; various state gift certificate laws; and other

21  consumer protection statutes.  Defendants deny these allegations and dispute that they are liable

22  under any of the legal theories asserted by Plaintiffs.  Defendants also contend that Plaintiffs'

23  claims are subject to mandatory individual arbitration provisions and that Plaintiffs waived their

24  right to bring a class action under the terms and conditions applicable to Groupon Vouchers.

25  **II.     SUMMARY OF SETTLEMENT NEGOTIATIONS**

26        7.      I oversaw the settlement negotiations between the parties for nearly a year,

27  starting with a preliminary conference call in early May 2011 and also a full-day mediation

28  session on May 17, 2011. Before this initial session, and subsequently throughout the mediation

1    process, the parties submitted both lengthy exchanged and confidential mediation briefs that

2    included thorough analyses of the claims, defenses, and the current state of the proceedings. All

3    briefings were accompanied by a significant amount of documents and articulated the parties'

4    respective liability theories. During the mediation session, we discussed the parties' respective

5    positions on key contested issues, including the plaintiffs' liability theories and the possibility

6    that if this matter did not resolve, that the defendants would have filed a motion to compel

7    arbitration which, if successful, would have precluded this Class from any relief through this

8    action. I also received and evaluated lengthy oral presentations during certain joint mediation

9    sessions, again accompanied by reference to extensive documentary support. In confidential

10    submissions for the Mediator's Eyes Only, and in separate caucuses, the parties provided

11    additional candid assessments of their cases and their settlement positions.

12        8.      The parties' positions reflected highly disparate views about the claims and

13    liability asserted against the defendants, and their defenses thereto.

14        9.      I heard from the defendants credible arguments concerning why the plaintiffs

15    faced various legal and factual hurdles, and arguments supporting serious risks of whether the

16    plaintiffs would ultimately be able to continue this litigation or be forced into arbitration. They

17    further identified what they credibly contended were areas of vulnerability in the plaintiffs'

18    damages methodology which, if accepted by a jury, could have substantially reduced the

19    damages that the plaintiffs could reasonably expect to recover.

20        10.      In turn, the plaintiffs presented arguments concluding that the liability aspects of

21    the case were not without material risks to the defendants. Further, they offered a liability

22    analysis that, in the best-case scenario for them, could have yielded a significant damages award

23    against the defendants.

24        11.      There was extensive negotiation of the constituent elements of the non-monetary

25    consideration, as well. The parties recognized and agreed that this component of the overall

26    settlement consideration needed to represent real value to the Class. Neither party discussed

27    Plaintiffs' attorneys' fees nor expenses in their submissions as the parties had agreed to refrain

28    from such discussions until all the other material terms of a settlement could be fully resolved.

1       12.    During the mediation process, I stressed to each party the significant risks of

2 going forward.  As the Court knows well, this case triggered strongly contested debate on many

3 complex factual and legal issues.  The possibility of a failure to reach a settlement posed the

4 legitimate concern that significant resources would be consumed in the expense of ongoing

5 litigation or arbitration proceedings.  In addition, both the plaintiffs and defendants faced specific

6 risks.  As such, there was some common sense, practical and business considerations that had to

7 be faced.

8       13.    The parties ultimately reached a settlement, subject to Court approval, and with

9 the exception of attorneys' fees and expenses, in late August 2011.  As detailed in the Stipulation

10 of Class Action Settlement the settlement provides substantial benefits to Class Members.

11 Among other terms, the settlement provides for:  (a) valuable monetary and injunctive relief and

12 a modest amount of *cy pres* contribution; (b) an agreement by Groupon to change its business

13 practices in the manner in which it sells and markets its Groupon Vouchers in the future,

14 providing greater disclosures to consumers and ensuring that, for three years, it will not place

15 any expiration date on the purchase price of the Groupon Voucher (with some minor exceptions).

16       14.    I note that the documentation of the settlement, itself, involved exchanging more

17 than a dozen proposed versions of the Stipulation with significant exhibits, including the Class

18 Notice, Claim Form, Claims Administration, and Settlement Voucher.  During this process, I

19 frequently communicated with the parties regarding various issues.  There was a time in the Fall

20 of 2011 where the parties appeared to have reached an impasse, however, through numerous

21 telephonic conferences and other communications, the parties were ultimately able to resolve all

22 of the material issues in the draft Stipulation.

23       15.    I also oversaw the parties' negotiations concerning Plaintiffs' attorneys' fees and

24 expenses, and incentive awards, which were negotiated after all other substantive issues were

25 resolved.  With my assistance, and after considerable deliberation, the parties were able to reach

26 an agreement, with the defendants agreeing not to oppose an award of attorneys' fees and

27 expenses to plaintiffs' counsel not to exceed twenty-five percent of the total Settlement Fund, for

28

1 │ a maximum of $2,125,000.  Defendants also agreed not to oppose the payment of an Incentive

2 │ Award, not to exceed $500, to each of the Class Representatives.

3 │       16.     In light of the sophisticated factual, legal, and financial issues involved and the

4 │ significant time to litigate and negotiate this resolution, I view the settlement in large part as a

5 │ testament to the abilities and efforts of sophisticated and professional counsel who were fully

6 │ prepared and well-informed on the law and facts of this case, and the dedicated principals on

7 │ both sides, including members of Plaintiffs' Steering Committee.  I can state that each settlement

8 │ term represents a heavily negotiated and arm's-length compromise of disputed claims among

9 │ experienced and able counsel.

10 │       17.     Based on my experience as a mediator, and my specific experience in overseeing

11 │ the complicated negotiation process in this case, I believe that the total recovery proposed for the

12 │ Class through the settlement is fair, reasonable and adequate.  It represents meaningful

13 │ consideration flowing to the Class Members, with due recognition of the complexity of the facts

14 │ and legal contentions at issue, the risks presented to both sides, and a threat of continued

15 │ protracted litigation or arbitration and possible appeals.

16 │       18.     Therefore, based on my knowledge of the action, all materials provided to me, the

17 │ extensive efforts of skilled advocacy and arms'-length bargaining of counsel, the intensity of

18 │ negotiations, the litigation risks, and the benefits reached in the proposed Settlement, I believe it

19 │ is a fair, reasonable and adequate settlement of all of the claims against defendants and I

20 │ respectfully recommend that it be approved on a final basis by the Court.

21 │      I declare under penalty of perjury under the laws of the State of California that the

22 │ foregoing is true and correct.  Executed this 10th day of August, 2012.

23 │

24 │

25 │                                    THE HON. DANIEL H. WEINSTEIN (RET.)

26 │

27 │

28 │