1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  JOHN J. STOIA, JR. (141757)
   RACHEL L. JENSEN (211456)
3  THOMAS R. MERRICK (177987)
   PHONG L. TRAN (204961)
4  655 West Broadway, Suite 1900
   San Diego, CA  92101
5  Telephone:  619/231-1058
   619/231-7423 (fax)
6  johns@rgrdlaw.com
   rachelj@rgrdlaw.com
7  tmerrick@rgrdlaw.com
   ptran@rgrdlaw.com
8
   Class Counsel
9

   DLA PIPER LLP (US)
   SHIRLI FABBRI WEISS (079225)
   CHRISTOPHER M. YOUNG (163319)
   KATHERINE LARSON (259556)
   401 B Street, Suite 1700
   San Diego, CA  92101-4297
   Telephone: 619/699-2700
   619/699-2701 (fax)
   shirli.weiss@dlapiper.com
   christopher.young@dlapiper.com
   katherine.larson@dlapiper.com

   Attorneys for Defendants

10

11  [Additional counsel appear on signature page.]

12              UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14

15  IN RE GROUPON MARKETING AND          )  No. 3:11-md-02238-DMS-RBB
    SALES PRACTICES LITIGATION           )
16  _____ )  JOINT RESPONSE TO OBJECTIONS TO
                                           )  FINAL APPROVAL OF CLASS ACTION
17                                            SETTLEMENT

18                                            Date:    September 7, 2012
                                              Time:    1:30 p.m.
19                                            Judge:  Hon. Dana M. Sabraw
                                              Courtroom:  10
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .............................................................................................1

II.     THE CLASS HAS REACTED FAVORABLY TO THE SETTLEMENT.......................2

III.    SERIAL OBJECTORS GENERATED THE MAJORITY OF THE
        OBJECTIONS FILED ........................................................................................3

IV.     THE COURT SHOULD OVERRULE THE OBJECTIONS BECAUSE THEY
        DO NOT UNDERMINE THE FAIRNESS OF THE SETTLEMENT ...........................6

        A.      The Settlement Provides Valuable Relief to the Class .............................7

        B.      The Claims Process Is Not Overly Burdensome.......................................12

        C.      The Settlement Provides Valuable Injunctive Relief................................13

        D.      The Settlement Fund Amount is Fair and Reasonable..............................14

        E.      The *Cy Pres* Award Complies with Ninth Circuit Standards .................17

        F.      The Class Claims May Be Certified for Settlement Purposes ..................19

        G.      Notice to the Settlement Class Was Adequate and Consistent with Due
                Process ......................................................................................................20

V.      CONCLUSION.................................................................................................22

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Behrens v. Wometco Enters., Inc.*,

5
    118 F.R.D. 534 (S.D. Fla. 1988) ...................................................................16

6

*Browning v. Yahoo! Inc.*,
    No. C04-1463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) .......................................21

7

*Catala v. Resurgent Cap. Servs. L.P.*,

8
    No. 08cv2401 NLS, 2010 WL 2524158 (S.D. Cal. June 22, 2010) .........................18

9

*Chavez v. Netflix, Inc.*,

10
    162 Cal. App. 4th 43 (2008) ..................................................................21

11

*Churchill Vill., L.L.C. v. G.E.*,
    361 F.3d 566 (9th Cir. 2004) ...................................................................3

12

*DeHoyos v. Allstate Corp.*,

13
    240 F.R.D. 269 (W.D. Tex. 2007) ...........................................................13

14

*Dennis v. Kellogg Co.*,

15
    No. 11-55674, 2012 WL 2870128 (9th Cir. July 13, 2012) ...........................18, 19

16

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) .................................................................11

17

*Eisen v. Carlisle & Jacquelin*,

18
    417 U.S. 156 (1974) ..............................................................................20

19

*Evans v. Jeff D.*,

20
    475 U.S. 717 (1986) ................................................................................6

21

*Farinella v. Paypal, Inc.*,
    611 F. Supp. 2d 250 (E.D.N.Y. 2009) ....................................................20

22

*Gemelas v. The Dannon Co., Inc.*,

23
    No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) ........................4

24

*Hanlon v. Chrysler Corp.*,

25
    150 F.3d 1011 (9th Cir. 1998) ..........................................................2, 11

26

*Harris v. Vector Mktg. Corp.*,
    No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .......................17

27

*Hartless v. Clorox Co.*,

28
    273 F.R.D. 630 (S.D. Cal. 2011) .............................................................18

Page

*In re Apple Inc. Sec. Litig.,*
  No. 5:06-CV-05208-JF (HRL), 2011 WL 1877988 (N.D. Cal. May 17, 2011) .....................5

*In re Aqua Dots Prod. Liab. Litig.,*
  654 F.3d 748 (7th Cir. 2011) ...................................................................................................9

*In re Capitol Holdings Fin. Prods. Sec. Litig.,*
  33 F.3d 29 (9th Cir. 1994) .......................................................................................................3

*In re Ferrero Litig.,*
  No. 3:11-CV-0205-H-KSC, 2012 WL 2802051 (S.D. Cal. July 9, 2012).........................4, 16

*In re Lorazempam & Clorazepate Antitrust Litig.,*
  205 F.R.D. 369 (D.D.C. 2002)................................................................................................6

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ..................................................................................................2

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................................3

*Kardonick v. JPMorgan Chase & Co., et al.,*
  No. 1:2010-cv-23235 (S.D. Fla.) .............................................................................................4

*Lonardo v. Travelers Indem. Co.,*
  706 F. Supp. 2d 766 (N.D. Ohio 2010)....................................................................................5

*Nachshin v. AOL, LLC,*
  663 F.3d 1034 (9th Cir. 2011) .........................................................................................17, 18

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ...................................................................................................7

*Rodriguez v. West Pub. Corp.,*
  No. CV-05-3222 R(MCx), 2007 WL 3165661 (C.D. Cal. Sept. 10, 2007).............................4

*Rodriguez v. West Pub'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ........................................................................................ *passim*

*Schiller v. David's Bridal, Inc.,*
  No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776
  (E.D. Cal. June 11, 2012).......................................................................................................20

*Siber v. Mabon,*
  18 F.3d 1449 (9th Cir. 1994) .................................................................................................20

Page

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ........................................................................................17

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ...........................................................................14

*The Authors Guild, Inc. v. Google, Inc.*,
    No. 05 CV 8136, 2009 WL 2980745 (S.D.N.Y. Sept. 8, 2009) .........................................4

*United States v. Oregon*,
    913 F.2d 576 (9th Cir. 1990) ............................................................................................7

*White v.Experian Info. Solutions, Inc.*,
    No. SACV-05-1070 DOC (MLGx), 2011 WL 2971836 (C.D. Cal., July 15, 2011)...............4

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
    §1407................................................................................................................................7

Fla. Stat.
    §501.95
    §501.142.........................................................................................................................10

Federal Rules of Civil Procedure
    Rule 23...........................................................................................................................20
    Rule 23(e)(1)...................................................................................................................20

1   Plaintiffs and Defendants, by and through their attorneys, respectfully submit this joint

2   response to the objections filed to the Class Action Settlement.[1]

3   **I.    INTRODUCTION**

4   As demonstrated in the parties' Joint Motion for Final Approval of Class Action Settlement

5   ("Joint Motion") (Dkt. No. 72) filed on August 10, 2012, the Settlement provides valuable injunctive

6   and monetary relief to the Class, and the Settlement falls squarely within the range of reasonableness

7   for settlements routinely approved by courts in the Ninth Circuit.

8   The vast majority of Class Members have shown their approval of the Settlement.  Of the

9   millions of potential Class Members who purchased Groupon Vouchers during the Class Period,

10  over 45,000 Class Members have already submitted Claim Forms – before the Claims Period has

11  even begun to run.  Declaration of Tiffaney Janowicz ("Janowicz Decl."), ¶7, filed concurrently

12  herewith.  Further, the Settlement Website has been accessed by over four million unique visitors,

13  and the Claims Administrator has fielded over 8,000 telephone calls from Class Members and

14  received nearly 8,000 e-mails from class members.  *Id.* at ¶5.  In stark contrast, only 18 objections on

15  behalf of only 25 objectors – representing less than .00025% of Class Members – have been filed

16  with the Court.  Importantly, neither the United States Attorney General nor any state attorney

17  general has filed an objection to the Settlement.  These facts all strongly support the Court's

18  preliminary finding that the Settlement is within the range of a fair, reasonable, and adequate

19  settlement.

20  Nevertheless, as is typical in class action settlements, a handful of largely professional

21  objectors have filed objections to try to derail or delay the Settlement.  As demonstrated herein, and

22  in Plaintiffs' response to objections to their attorneys' fees motion, filed concurrently herewith, the

23  objections to the relief provided under the Settlement, to the class notice, or to the requested award

24

25

---

26  [1]    All capitalized terms herein have the same meaning as in the Stipulation of Class Action
    Settlement ("Settlement Agreement") submitted to this Court on March 29, 2012 (Dkt. No. 40-3).
27  All emphasis is added and internal citations omitted, unless noted otherwise.

28

1  of attorneys' fees are either specious or misguided, and do nothing to undermine the fairness of the

2  Settlement as a whole.

3        Tellingly, many of the objections contradict each other, demonstrating that no matter what

4  the parties agreed to, some few individuals would surely object.  At most, the objections show that

5  reasonable minds may differ as to the best approach to this Settlement, or that the Settlement could

6  theoretically be a better or different settlement for the class.  Objections on this basis, however, do

7  not justify rejection of the Settlement.  The standard is clear – all that is required is that the

8  Settlement fall within the range of fairness.  The Settlement undeniably meets the requisite standard.

9        For all the reasons set forth herein, as well as set forth in their opening papers, the parties

10  jointly request that the Court grant final certification of the Settlement Class for settlement purposes

11  only, and grant final approval of their Settlement Agreement.

12  **II.        THE CLASS HAS REACTED FAVORABLY TO THE SETTLEMENT**

13        The vast majority of the millions of consumers who comprise the Settlement Class have

14  responded favorably to the Settlement.  In total, only 18 objections filed on behalf of 25 individuals

15  were filed with the Court.[2]  *See* Dkt. Nos. 45, 47, 51, 53, 55, 57-58, 60, 62, 64-66, 68-71.[3]  This

16  small percentage of the class in and of itself constitutes strong evidence of the fairness of the

17  Settlement and counsels in favor of final approval.  *See Rodriguez v. West Pub'g Corp.*, 563 F.3d

18  948, 967 (9th Cir. 2009); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (low

19  number of objections supports fairness finding); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th

20  Cir. 1998) ("the fact that the overwhelming majority of the class willingly approved the offer and

21  stayed in the class presents at least some objective positive commentary as to its fairness").  Notably,

22  "[i]n litigation involving a large class it would be 'extremely unusual' not to encounter objections,"

23

24  _____

25  [2]        Additionally, the parties received approximately 10 *pro per* objections that were not filed
   with the Court.  *See* Declaration of John J. Stoia, Jr. in Support of Joint Response to Objections to
26  Class Action Settlement ("Stoia Response Decl."), ¶2, filed concurrently herewith.

27  [3]        The Claims Administrator received timely requests for exclusion on behalf of 1,815
   individuals.  Declaration of Tore Hodne ("Hodne Decl.") (Dkt. No. 72-3),¶31 & Ex. C.

28

1  thus the fact that objections were filed does not undermine final approval.  *In re NASDAQ Market-*

2  *Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998).

3      The minimal number of objections by Class Members compares favorably to the number of

4  objections that the Ninth Circuit has considered in other cases when approving class action

5  settlements.  *Rodriguez*, 563 F.3d at 967 (finding a favorable reaction of the class where of 376,301

6  putative class members who received notice, 54 submitted objections); *Churchill Vill., L.L.C. v.*

7  *G.E.*, 361 F.3d 566, 577 (9th Cir. 2004) (finding a favorable reaction of the class where of 90,000

8  putative class members who received notice, 45 submitted objections).  Moreover, the relatively few

9  objections filed here are baseless and largely originate from professional objectors who seek to hold

10  up this Settlement on the basis of flimsy arguments.

11  **III.   SERIAL OBJECTORS GENERATED THE MAJORITY OF THE OBJECTIONS FILED**

12      Of the objections filed, many were filed by individuals who can be classified as "serial

13  objectors" to class action settlements.  The parties respectfully submit that these objectors are

14  attempting to hold up the settlement for their own pecuniary or other gain.[4]  For example:

15      •   **Thomas Cox** represents four of the objectors, including Kimberly Cogbill, Jordon

16      Echols, Tracy Klinge, and Warren Sibley.  He was recently admonished by a court

17      for filing frivolous objections to a class action settlement.  *See* Objection of Warren

18      Sibley, Tracy Klinge, Jordon Echols, and Kimberly Cogbill, *et al.* ("Cogbill, *et al.*

19      Objection") (Dkt. No. 71); *see, e.g.*, *In re: Reebok Easytone Litig.*, No. 3:12-MC-

20      00001-L(BF) (N.D. Tex) (Dkt. No. 4) at 4 ("Mr. Cox is a 'frequent and professional

---

[4]      Absent proof that they purchased or received at least one Groupon Voucher prior to December 1, 2011, objectors have not shown that they are members of the Settlement Class with standing to object.  Moreover, "[s]imply being a member of a class is not enough to establish standing.  One must be an aggrieved class member."  *See In re Capitol Holdings Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994).  The following class members have not filed proof of expired unredeemed Groupon Vouchers purchased during the class period: Daniel Hall, Sean Hull, Joan Sheppard, Julie Simmons, Chris Brown, Maggie Strohlein, Robert Falkner, Padraigin Browne, Andrea Pridham, Nicholas Spencer, and Phuong Wolkiewicz.

objector"') and at n.3 (noting none of his objections were sustained in any case since 2010).  *See* Stoia Response Decl., Ex. A.

- **Darrel Palmer** represents Chris Brown, Maggie Strohlein, and Robert Falkner and has a long history of objecting to class action settlements, then appealing the district courts' rulings when his objections are overruled.[5]  Mr. Palmer was found by a district court to be a "'serial objector'" in the *Dannon* case.  *See Gemelas v. The Dannon Co., Inc.*, No. 1:08 CV 236, 2010 U.S. Dist. LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010); *see also Poss v. 21st Century Ins. Co.*, No. BC297438 (L.A. Super. Ct. Apr. 25, 2011), Tr. at 18 (noting Mr. Palmer's history of objecting; "There is a history here, and the history is not one that you [Mr. Palmer] should be proud of.").  *See* Stoia Response Decl., Ex. B.

- **Steve Miller** represents five of the objectors (Aileen and Maureen Connors, Jen Maxfield, Chris Schultz, and Andrea Miller) and is a serial objector.  *See, e.g., In re Mattel, Inc.*, ML 07-1897 DSF (AJWx) (Dkt. No. 194) (C.D. Cal.); *see also Kardonick v. JPMorgan Chase & Co., et al.*, No. 1:2010-cv-23235 (S.D. Fla.).

- **Mark Lavery**, who represents Andrea Pridham and Evan Spies, also has a history of filing objections.  *See, e.g., In re Ferrero Litig.*, No. 3:11-CV-0205-H-KSC, 2012 WL 2802051 (S.D. Cal. July 9, 2012).

---

[5]      *See, e.g., In re Magsafe Apple Power Adapter Litig.*, No. C 09-01911 JW (Dkt. No. 161) (N.D. Cal); *White v.Experian Info. Solutions, Inc.*, No. SACV-05-1070 DOC (MLGx), 2011 WL 2971836 (C.D. Cal., July 15, 2011); *Troyk v. Farmers Group, Inc.*, No. G1C836844 (San Diego Super. Ct.), Cal. Ct. App. No. D056803; *The Authors Guild, Inc. v. Google, Inc.*, No. 05 CV 8136, 2009 WL 2980745 (S.D.N.Y. Sept. 8, 2009); *Berger v. Property ID Corp.*, No. 2:05-cv-05373 (C.D. Cal. Feb. 27, 2009) (Dkt. No. 897); *Rodriguez v. West Pub. Corp.*, No. CV-05-3222 R(MCx), 2007 WL 3165661 (C.D. Cal. Sept. 10, 2007), *aff'd*, 563 F.3d 948 (9th Cir. 2009).  In each of these cases, Mr. Palmer objected that the attorneys' fees were too high.

- **Brett Gibbs** represents Padraigin Browne.  Gibbs appears to be a "ghostwriter" for serial objector Paul Hansmeier who sent a draft of the same objection on behalf of Browne to Class Counsel.  Stoia Response Decl., ¶3.

- **Ted Frank** is a professional objector whose organization's ideological agenda is to end class actions, not improve them; thus, his interests are in conflict with the Class. As recently observed in the context of another settlement:

> Mr. Frank founded the "Center for Class Action Fairness LLC," a conservative group that opposes class actions for ideological reasons.  Its sole purpose is to file objections to disrupt and deter class action settlements.  As Mr. Frank puts it, he is in the business of representing objectors in class action settlements and he characterizes his attacks as "guerilla operation[s]."  Mr. Frank resists the title "professional objector," by which he means a "for profit" lawyer who seeks to "disrupt a settlement" – hoping to distinguish himself from "for profit" objectors like those just mentioned.  But the fact that his foundation is compensated differently does not change his professional status.  Like the others, Mr. Frank has an agenda unrelated to the merits of this settlement.

*Magsafe*, No. C 09-01911 JW (Dkt. No. 98) at 5-6 (filed Jan. 27, 2012).  *See* Stoia Response Decl., Ex. C.  In that case, the parties observed that Frank plays fast and loose in with the facts.  *See Magsafe* at 16-17.  In *Magsafe*, the district court overruled Frank's objections and required him to pay an appeals bond.  *Id.* (Dkt. No. 107) at 2 and (Dkt. No. 161) at 5.  Similarly, as pointed out in *Honda*, objector Frank "would likely be against virtually *any* consumer litigation," particularly in view of his exaggerated estimates of the cost of class action litigation to the United States economy. *See True v. Am. Honda Motor Co., Inc.*, No. ED 07-cv-287 VAP-OP, Plaintiffs' Consolidated Response to Objections to Settlement Agreement at 17-18 (filed Feb. 22, 2010).[6]  Stoia Response Decl., Ex. D.  Further, Mr. Frank has authored numerous blog posts and articles expressing his

---

[6]     It appears that Mr. Frank has filed objections in at least 25 other class action settlements in the past few years.  *See, e.g., In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF (HRL), 2011 WL 1877988, at *4-*6 (N.D. Cal. May 17, 2011); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010); *In re: NVIDIA GPU Litig.* (N.D. Cal.), No. 5:08-cv-04312-JW (*see* Order Overruling Objections to Settlement, May 2, 2011 (Dkt. No. 378)); *In re Online DVD Rental Antitrust Litigation* (N.D. Cal.), No. 12-15705 (Dkt. No. 27); *Weeks v. Kellogg* (C.D. Cal.), No. CV-09-08102; *In re: Baby Products Antitrust Litig.*, No. 12-1165 (Dkt. No. 003110878258 – Appellate Brief); *In re: Classmates.com*, No. C09-00045-RAJ (W.D. Wash.); *In re Bluetooth Headset Product Liability Litig.*, No. 07-ML-1822 (C.D. Cal.).

1  animosity not only toward class actions, but to consumer cases in general.  For example, Mr. Frank

2  has written:

> 3  • One cheap way to do so without increasing government debt is to stop making it profitable for trial lawyers to bring meritless cases that impose what is effectively a multibillion-dollar litigation tax on productive sectors of the economy.[7]

4

5

> 6  • What's happening is that entrepreneurial lawyers have discovered a profitable means of rent-seeking: with the help of a cooperative shareholder, bring a meritless shareholder derivative suit on some technical ground or the other, threaten to impose millions of dollars of discovery expenses and hassle on the officers and directors of the company, and collect an attorneys' fee for settling the case for a token change of no benefit to the shareholders.[8]

7

8

> 9  • But judges have their own perverse incentives: approving a settlement (often presented to the court ex parte without any well-crafted objections helpful to the court's consideration) is easy, and reduces a court's workload by taking a complicated case off the docket; scrutinizing or rejecting a settlement requires hard work, and adds to the court's workload.[9]

10

11

12  **IV.   THE COURT SHOULD OVERRULE THE OBJECTIONS BECAUSE THEY DO NOT UNDERMINE THE FAIRNESS OF THE SETTLEMENT**

13          The objections filed are based on meritless arguments.  Further, the objectors contradict each

14  other and nitpick portions of the Settlement but do not address the Settlement as a whole and the real

15  monetary benefits to the Class that it provides.  The objectors ignore the fact that every settlement is

16  the product of compromise which the parties negotiate subject to the court's acceptance or rejection

17  as a whole.  *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986).  Further, many of the objections are

18  cursory and vague, offering no real analysis or support for the positions that are taken.  *See, e.g.*, *In*

19  *re Lorazempam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting

20  unsupported objections because they are "of little aid to the Court").  Finally, all of the objections

21

22  _____

23  [7]    "Win or Lose, Trial Lawyers Get Millions in Vioxx Fees," August 18, 2011, http://www.manhattan-institute.org/html/miarticle.htm?id=7387#.UDVF6sF2j6U.

24  [8]    "Important Seventh Circuit ruling against shareholder derivative strike suits," June 14, 2012, http://www.pointoflaw.com/archives/2012/06/important-seventh-circuit-ruling-against-shareholder-derivative-strike-suits.php.

25

26  [9]    "The Problem of self-dealing by class counsel," April 17, 2012, http://www.pointoflaw.com/feature/archives/2012/04/the-problem-of-self-dealing-by-class-counsel.php.

27

28

1   ignore the fundamental issue that, pursuant to established law, this Court does not determine whether

2   the Settlement represents the ***best possible*** recovery but, rather, analyzes the Settlement in the

3   context of the strengths and weaknesses of Plaintiffs' claims.  *See Officers for Justice v. Civil Serv.*

4   *Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (courts recognize that "the very essence of a settlement

5   is compromise, 'a yielding of absolutes and an abandoning of highest hopes'").

6        Here, the Class obtained significant and valuable relief – this is an excellent outcome given

7   the challenges that Plaintiffs faced, not the least of which was Groupon's mandatory arbitration and

8   class action waiver clause in its agreements governing its relationships with class members.  The

9   objectors have not met their burden of demonstrating the Settlement is less than fair, adequate, and

10  reasonable and the objections should be overruled.[10]  *See United States v. Oregon*, 913 F.2d 576, 581

11  (9th Cir. 1990) ("In this circuit, we have usually imposed the burden on the party objecting to a class

12  action settlement.").

13       **A.      The Settlement Provides Valuable Relief to the Class**

14       As detailed in the parties' Joint Motion, the Settlement provides valuable monetary relief to

15  the Class Members.   The Settlement entitles Class Members who have unredeemed Groupon

16  Vouchers to receive the goods and services they purchased though the expiration date on the

17  Voucher has passed.  Class members are also entitled to a cash refund of the Purchase Price if the

18

19

---

20  [10]      To the extent the "objection" filed by Nicholas Spencer ("Mr. Spencer") seeks to sever his

21  lawsuit and remand it to the district court in Illinois, such request is untimely and procedurally
    improper and should be denied. Mr. Spencer purports to request exclusion from the Settlement on

22  behalf of himself and a class of Illinois Groupon purchasers that he seeks to represent.  This Court's
    Order Preliminarily Approving Class Action Settlement ("Preliminary Approval Order") (Dkt. No.

23  42) explicitly states that requests for exclusions "filed on behalf of multiple Persons or classes of
    Persons are prohibited and will be deemed to be void." Preliminary Approval Order at 8.  At most,

24  Mr. Spencer may seek to exclude himself from the Settlement Class.  If he excludes himself,
    however, he cannot object to the Settlement.  Furthermore, to the extent that Mr. Spencer objects to

25  the inclusion of his case in the MDL in the first place, his objection is untimely.  The Judicial Panel
    on Multidistrict Litigation found Spencer's case appropriate for transfer under 28 U.S.C. 1407 to this

26  MDL proceeding on May 10, 2012.  Conditional Transfer Order No. 4 (Dkt. No. 43).  If Mr. Spencer
    opposed the transfer, the appropriate time to object would have been during the seven-day period

27  during which the transfer order was conditional and stayed in order to provide time for objection.
    Mr. Spencer did not object.  Thus, the stay was lifted on May 18, 2012 and his case was accordingly

28  properly transferred to this Court on May 21, 2012.  *Id.*

1   merchant is out of business and to a cash refund of the Purchase Price plus 20% of Promotional

2   Value if the merchant is still in business but refuses to honor the Settlement Voucher.

3         Some objectors mistakenly assert that the Settlement provides no real benefit to the Class

4   because prior to the Settlement, dissatisfied consumers were guaranteed a refund under Groupon's

5   "Groupon Promise." *See* Declaration of Theodore H. Frank, Objection to Proposed Settlement, and

6   Notice of Intent to Appear ("Frank Objection") (Dkt. No. 67) at 2; Amended Objection of Chris

7   Brown, Maggie Strohlein and Robert Falkner ("Brown *et al.* Objection") (Dkt. No.58) at 6.

8   However, this argument wholly misconstrues the nature of the "Groupon Promise."

9         In fact, the "Groupon Promise" addresses customer dissatisfaction with goods or services; it

10   is not a "money-back guarantee" that promises a refund upon demand or after an expiration date has

11   passed and does not principally address the issue of expired vouchers, the primary thrust of this

12   Action.[11]   To be sure, Groupon prides itself on the quality of its customer service and when

13   contacted by a dissatisfied consumer, will attempt to rectify the situation, which, in some cases, may

14   result in a refund being issued. *See, e.g.*, Frank Objection (Dkt. No. 67), ¶6; *see also* Harrow Decl.,

15   ¶2.   But fundamentally, the "Groupon Promise" is a customer satisfaction guarantee, and not a

16   guarantee that a consumer will receive an automatic refund upon request after a stated expiration

17   date has passed.  Indeed, many of the Plaintiffs themselves were ***unable*** to get refunds for their

18   Vouchers pursuant to the "Groupon Promise" prior to bringing this action, which is part of the

19   reason they sued in the first place.  *See* Kimel Complaint, ¶43 (Dkt. No. 7-3, Ex. J); Christensen

20   Complaint, ¶¶68-71 (Dkt. No. 7-3, Ex. L); *see also* Declaration of Heather Kimel in Support of Joint

21   Motion, ¶¶8-10; Declaration of Plaintiff Ashley Christensen in Support of Motion for Final

22   Approval, ¶¶9-10, both filed concurrently herewith.

23   _____

24   [11]      The Groupon Promise, the wording of which varied slightly during the Class Period, is a
customer satisfaction guarantee.  Declaration of Joe Harrow in Support of Joint Response to

25   Objections to Class Action Settlement ("Harrow Decl."), ¶4.  The Groupon Promise is intended to
assure consumers that if a consumer purchases a Groupon Voucher, uses the Groupon Voucher, and

26   is dissatisfied with the goods or services received from the merchant, Groupon will make every
effort to make it right.  *Id.*  The Groupon Promise is ***not*** intended to address situations where a

27   consumer simply failed to use a Groupon Voucher before the Promotional Value expired or changed
his or her mind about the goods or services purchased. *Id.*, ¶5.

28

1      Further, the objectors neglect two critical points.  First, while Groupon highly values

2  customer satisfaction and has issued refunds to some consumers upon request, Groupon vigorously

3  disputes that Class Members are **entitled** to a refund by merely invoking the "Groupon Promise."

4  Harrow Decl., ¶¶2-5.  Second, by **requiring** Groupon to provide a refund to Class Members where a

5  Merchant Partner is out of business or refuses to honor a Settlement Voucher, the Settlement entitles

6  Class Members to a cash refund in certain circumstances where they previously had merely a

7  dispute.  But, the Settlement goes further.  The Settlement provides that, where a merchant refuses to

8  honor a Settlement Voucher for the Purchase Price, the Class Member will receive a refund of the

9  Purchase Price **plus** 20% of the Promotional Value of the original Groupon Voucher.  This provision

10  gives affirmative monetary relief beyond out of pocket expense, and is a substantial benefit to the

11  Class which no one contends Groupon was obligated to provide absent the Settlement.[12]

12      This case is nothing like *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011)

13  ("*Aqua Dots*"), cited by objector Frank.  *See* Frank Objection (Dkt. No. 67) at 7-8.  First, *Aqua Dots*

14  was a decision on class certification, **not** a settlement, and relied on fact-specific issues relating to

15  adequacy.  There, the court found plaintiffs did not suffer physical harm from the toys' defect and

16  the refunds that they sought were already available through the defendants' pre-suit recall program,

17  as shown by refunds obtained by many other putative class members.  *Id.*  Whereas in *Aqua Dots*,

18  defendants voluntarily undertook a recall program to remedy a defect, Groupon denies any liability

19  and maintains that Groupon purchasers suffered no injury and lack standing to pursue litigation,

20  much less have any entitlement to refunds, damages, or relief of any kind.  Declaration of Shirli

21

22

23  [12]      Thodore Frank, who objects *pro per*, proves no differently.  His declaration demonstrates that
24  Groupon previously gave him a refund for Old Dominion Speedway because the merchant did not
   have slots available for Mr. Frank to use his Groupon Voucher – a customer dissatisfaction issue.
25  *See* Frank Objection (Dkt. No. 67) at 2.  Further, Groupon gave him a refund on July 22, 2012, for
   his purchase of the Economist magazine even after this Settlement was filed with the Court, showing
26  the "Groupon Promise" remains in effect. *Id.* at 3.  Finally, his apparently-manufactured complaint
   about Wasabi Sushi proves nothing because he cannot show Groupon would have given him a
27  refund prior to the Settlement, and in any event, he obtained a credit for Wasabi Sushi after the
   Settlement was filed, eliminating any standing to complain about this Voucher.  *Id.*

28

1    Fabbri Weiss in Support of Joint Response to Objections to Class Action Settlement ("Weiss

2    Response Decl."), ¶2, filed concurrently herewith.

3           In the Settlement, the class obtains relief not available to the Class before the Settlement–

4    relief to which Groupon adamantly contends the Class is not entitled.  Specifically, the Settlement

5    ensures that Class Members who meet certain criteria, have an opportunity through the Settlement

6    Vouchers to receive the goods and services up to the amount of their Groupon Voucher purchase

7    price, redeemable at the merchant identified on the Vouchers they originally purchased. If they are

8    unable to do so, they are entitled to a *full refund* **of** *Purchase Price* if the Merchant Partner is out of

9    business or a *full refund of Purchase Price plus 20% of the add-on Promotional Value* if the

10   Merchant Partner refuses to honor the Settlement Voucher.  Settlement Agreement at §E.3.a.  Thus,

11   the Settlement, provides relief that was *not* available to Class Members before this Action and would

12   *not* be available absent the Settlement.  *See* Harrow Decl., ¶2.

13          Finally, certain objectors contend that Class Members are worse off under the Settlement

14   based on their assertion that gift certificate laws in certain states provide that the Vouchers do not

15   expire, whereas the Settlement Vouchers must be used at the Merchant Partner within 130 days of

16   issuance.  *See, e.g.*, Objection of Sherri Ledner (Dkt. No. 45).  However, theirs is merely a legal

17   position; no authority has applied these laws to Groupon Vouchers and Groupon does *not* concede

18   that state gift certificate laws apply to Groupon Vouchers or that states uniformly provide a private

19   cause of action to consumers even if state gift card laws apply to Groupon Vouchers.[13]  Moreover,

20   the time periods for use of the Settlement Vouchers were a compromise forged as a part of the

21   negotiations and must be evaluated within the context of the Settlement as a whole.  *See Rodriguez*,

22   563 F.3d at 964 (the court must evaluate "'the settlement taken as a whole, rather than the individual

23   component parts . . . for overall fairness'").

24          Finally, and importantly, any Class Member who attempted to pursue his or her claims

25   against Groupon, outside the context of this Settlement would very likely be required to arbitrate

26   _____

27   [13]      *See, e.g.*, Florida's gift card law, Fla. Stat. §§501.95, 501.142.

28

1   claims on an individual basis based on the Supreme Court's two recent decisions referenced in the

2   parties' Joint Motion.   In contrast, this Settlement provides automatic cost-free relief to Class

3   Members with expired unredeemed Vouchers and claims to refunds in the Second Settlement Fund.

4   The objectors fail to recognize that settlements are the product of compromise and as such typically

5   offer less than a full recovery that theoretically might be achievable *if* the parties proceeded through

6   litigation and appeals and the plaintiffs won on all issues.  *See EEOC v. Hiram Walker & Sons, Inc.*,

7   768 F.2d 884, 889 (7th Cir. 1985).   In short, it is not a valid objection that one component of the

8   Settlement could have been "better."   *See Hanlon*, 150 F.3d at 1027.

9       Evaluating the Settlement as a whole, as the Court must, it is fair and reasonable that, in

10   exchange for the relief provided, a time limit be placed on the use of Settlement Vouchers so

11   Defendants are able to achieve finality.  *See id.*   Again, the right that Class Members originally

12   bargained for was goods and services from a Merchant Partner, and the Settlement Vouchers permit

13   Class Members to exercise this right up to the Purchase Price of the Vouchers, within a reasonable

14   window.  Further, Class Members have an additional 55 days added to 130 days to submit a Claim

15   for a cash refund if the Merchant Partner is out of business or refuses to honor a Settlement Voucher.

16   Settlement Agreement at §E.3.a.  The compromise to limit the time period for use of Settlement

17   Vouchers and submitting a claim for cash compensation is more than reasonable under the

18   circumstances.[14]

19

20

_____

21   [14]   One objector argues that the Settlement Class definition is overly broad because the
     Settlement Class includes all who purchased or received Groupon Vouchers before December 1,
22   2011, and all Class Members will release their claims against Defendants, but only some Class
     Members will be eligible to submit Claims under the Settlement.  Objection of Joan Sheppard
23   ("Sheppard Objection") (Dkt. No. 64) at 2.  This argument fails to recognize that under the
     Settlement, (1) the injunctive relief benefits all Class Members; and (2) any Class Member who lives
24   in a state or purchased or received a Groupon for redemption in a state where applicable law
     allegedly prohibits the expiration of the Purchase Value is eligible to submit a Settlement Fund
25   Claim Form.  *See* E.1.a.  Those Settlement Class Members who already redeemed their Groupon
     Vouchers or received refunds from Groupon have obtained the full value paid and suffered no injury;
26   thus such Class Members do not need the monetary relief provided by the Settlement.  Further, any
     Class Member may file a claim for a refund for any reason from the Second Settlement Fund for
27   Vouchers purchased after December 1, 2011.

28

1         **B.**     **The Claims Process Is Not Overly Burdensome**

2         Further, several objectors argue that Groupon should simply issue a cash refund to those

3 Class Members with unused Groupon Vouchers instead of requiring them to file Claim Forms. *See*

4 Objection of Sean Hull ("Hull Objection") (Dkt. No. 55); Sheppard Objection (Dkt. No. 64).

5 Besides overlooking the basic fact that Class members originally bought the right to goods and

6 services, not the right to a refund, such objections mistakenly assume that Groupon can determine

7 which Class Members hold expired or unused Vouchers, which is not the case.  During the Class

8 Period, once Groupon sold a Voucher, it did not track whether or how or by whom the Voucher was

9 transferred or used.  Merchants are not obligated to report to Groupon which Vouchers or even how

10 many Vouchers have been redeemed.  Groupon has no reliable record reflecting which Vouchers

11 were redeemed during the expiration periods.

12         In addition, the claims process set up by the Settlement is not unduly burdensome on Class

13 Members because their online Groupon accounts provide ready access to them of the list of Groupon

14 Vouchers that they have purchased and much of the information needed to fill out the Claims Form.

15 Further, only Class Members, and not Groupon, can identify with certainty which Groupon

16 Vouchers are expired and unused.  In each Class Member's online Groupon account, each Groupon

17 Voucher is categorized as "available," "redeemed," and "expired"; however, a Voucher's

18 "redeemed" status is not designated by Groupon.  Rather, Groupon Vouchers are identified as

19 "redeemed" only if:  (1) the purchaser selects the Voucher in his or her Groupon account and clicks

20 on "mark as redeemed;" or (2) the Merchant Partner happens to scan or enter the Voucher barcode

21 into its Groupon merchant account, indicating the Voucher was redeemed.  However, as above,

22 Merchant Partners are not required to report which Vouchers have been redeemed.  Thus, while

23 Groupon may be able to identify some Vouchers that were used, it cannot definitively identify which

24 expired Vouchers ***have not*** been used.  Thus, it is reasonable for the Settlement to provide for Class

25 Members with expired, unused Groupon Vouchers to submit a Claim Form to the Claims

26 Administrator for a Settlement Voucher.

27         Because Groupon does not have any reliable way of verifying which Vouchers are

28 unredeemed, and in order to deter fraud, the Settlement Agreement requires Class Members to verify

1    certain information about themselves, their Groupon Voucher purchases and to certify that the

2    Voucher has not been redeemed under penalty of perjury.  Settlement Agreement at §E.1.b.  The

3    Claims process was **not** designed to discourage valid Claims, as implied by at least one objector, but

4    to allow the Claims Administrator to verify Claims and discourage fraudulent claims.[15]  *See*

5    Objection of Padraigin Browne ("Browne Objection") (Dkt. No. 57).  Such a process is routine and

6    permissible in class actions.  *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 313-14 (W.D.

7    Tex. 2007) (rejecting objections claiming that obtaining information to identify class members and

8    facilitating settlement relief is too arduous and aimed at suppressing class member participation).

9    Class Counsel and counsel for Defendants worked diligently to design an efficient, streamlined and

10   effective Claims process, and retained a highly-experienced claims administrator, Rust Consulting,

11   to administer the claims in the Settlement.  Stoia Response Decl., ¶7; Weiss Response Decl., ¶4.

12   This is more than sufficient.

13         And the Class concurs.  To date, even before the claims period has officially opened, Class

14   Members have filed over 45,000 claims via e-mail and U.S. Mail.  Janowicz Decl., ¶7.  Clearly,

15   these Class Members did not find completing the Claim Form overly onerous.

16         **C.      The Settlement Provides Valuable Injunctive Relief**

17         Certain objectors misguidedly complain that the injunctive relief provided under the

18   Settlement fails to provide Class Members with benefits.  This is patently untrue.  The Settlement

19   imposes requirements that were not in place before these lawsuits were brought.  *See* Memorandum

20   of Points and Authorities in Support of Joint Motion ("Mem. in Support of Joint Motion") (Dkt. No.

21   72-1) at 2; Stoia Response Decl., ¶4; Weiss Response Decl., ¶5.  For example, a significant benefit

22   provided by the Settlement is the clarification of the expiration dates of the Purchase Price versus the

23   separate Promotional Value on the face of all Groupon Vouchers, and disclosures of the expiration

24   dates prior to purchase, including on mobile devices.  *See* Settlement Agreement at §D.1.c.  Further,

25   

---

26   [15]      Some Class Members object on the grounds that they like Groupon and disagree with the
27   Action.  *See* Objections of Phuong Wolkiewiz (Dkt. No. 47), Karen Barber (Dkt. No. 60) and Julie
     Simmons (Dkt. No. 62).

28

1   the Purchase Price of Vouchers issued within three years of the Settlement will ***never*** expire, even as

2   to those Vouchers issued in, or for use in, the states that permit expiration of gift cards.[16]   Also,

3   addressing Plaintiffs' allegations that the expiration periods were unfairly short, *see* Ferreira

4   Complaint, ¶24 (Dkt. No. 7-3, Ex. H), the Settlement provides that, for at least three years following

5   the Effective Date, Groupon will not offer to sell more than 10% of its Daily Deals annually with an

6   expiration date of less than 30 days applicable to the Voucher's Promotional Value.   Settlement

7   Agreement at §D.1.a.  Absent the Settlement, Groupon is under no obligation whatsoever to limit the

8   number of Vouchers offered with expiration periods shorter than 30 days applicable to Promotional

9   Value.

10       The argument made by some objectors that the injunctive relief is of no value to Class

11   Members who are past Groupon customers but no longer do business with Groupon is also without

12   merit–this is always the case with injunctive relief, which is designed to prevent alleged future injury

13   rather than redress allegations of past wrongs, and does not make the injunctive relief valueless to

14   Class Members. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal.

15   2010) (plaintiffs must establish a "likelihood of future injury" to obtain prospective injunctive

16   relief).

17       **D.**    **The Settlement Fund Amount is Fair and Reasonable**

18       Several objectors claim, without any analysis, that the amount of the Settlement Fund is not

19   adequate. *See, e.g.*, Objection of Daniel Hall ("Hall Objection") (Dkt. No. 53).  But, as previously

20

21

---

22   [16]     The parties dispute whether Groupon Vouchers come within the definition of "gift card" in

23   those states that prohibit or limit expiration of gift cards.  In addition, even assuming Groupon
Vouchers come within the definition of "gift cards" in some states, many states do not prohibit or

24   limit expiration of gift cards.  However, for purposes of settlement, Groupon has agreed that the
Purchase Price Value of Groupon Vouchers issued within three years of Settlement, except for

25   limited exceptions stated in the Settlement Agreement, shall never expire, even in those states that
neither limit nor prohibit expiration of gift cards.  Similarly, the parties dispute the application of the

26   EFTA, which was amended in August, 2010 to prohibit expiration of gift cards earlier than four
years from date of issuance, subject to exceptions for promotions.  Thus, the objection of Evan Spies

27   that the Class is "entitled to" damages under the Card Act is unfounded.  Objection of Evan Spies
("Spies Objection") (Dkt. No.70).

28

1  explained, the Settlement Fund is believed ample to satisfy Class Members' refund requests which

2  meet the qualification criteria.  *See* Mem. in Support of Joint Motion at 17-19.

3         Indeed, most putative Class Members have already redeemed their Groupon Vouchers for the

4  goods and services that they originally purchased.  Published redemption rates as to vouchers and

5  analogous gift cards range between 80-93%.  *See* Declaration of John J. Stoia, Jr. in Support of Joint

6  Motion ("Stoia Decl.") (Dkt. No. 72-2), ¶27 & Exs. A-B.  By another reasonable calculation, it is

7  likely that some 6,000,000 expired, unredeemed Groupon Vouchers qualify for Settlement Vouchers.

8  This calculation assumes that, of the 14,400,000 putative Class Members who received the Notice,

9  approximately 80% redeemed all of their Groupon Vouchers or their Vouchers do not meet the

10 criteria for submission,[17] and those with qualifying Vouchers possess an average of two Vouchers

11 each.  If Claim Forms are submitted for 15% of those 6,000,000 qualifying expired, unredeemed

12 Vouchers (a reasonable claims rate), 1,200,000 Settlement Vouchers would be issued.  Of those, the

13 vast majority (some 85%) of the Settlement Vouchers will likely be redeemed at the Merchant

14 Partners, given that most Merchant Partners remain in business, are expected to honor the Settlement

15 Vouchers, and have been expressly reminded of their obligation to do so.  Settlement Agreement at

16 §E.2 & Ex. 10.  That would mean approximately 180,000 refund claims are likely to be submitted –

17 which is close to the estimate of 150,000 derived by Rust Consulting through its work on the

18 Settlement.  *See* Janowicz Decl., ¶8.  Given that the average Groupon Voucher Purchase Price is just

19 over $20-$25, refund requests are therefore not likely to exceed the Settlement Fund, even including

20 the additional 20% of promotional value awarded for Class Members whose Settlement Vouchers

21 are not honored by the Merchant Partner.  Settlement Agreement at §E.3.a.  *See* Janowicz Decl., ¶7.

22

23

---

24 [17]      Pursuant to the Settlement Agreement, Claim Forms may be submitted by persons who
   purchased Groupon vouchers that have not been redeemed or refunded and: (1) who purchased
25 Groupon vouchers in the United States between August 22, 2010 and December 1, 2011; or (2) who
   purchased Groupon vouchers between November 1, 2008 and December 1, 2011, and are or were
26 residents of, or purchased Groupon vouchers for redemption in Arkansas, California, Connecticut,
   Florida, Hawaii, Illinois, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan,
27 Minnesota, Montana, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma,
   Oregon, Rhode Island, South Carolina, Tennessee, Vermont, or Washington.

28

1    In light of these reasonable estimates, it is unlikely Class Members' requests for 100%-120%

2 refunds will exceed the amount of the Settlement Fund, or result in any pro rata reductions to the

3 refund requests.  *See* Settlement Agreement at §E.3.b.  However, even if refunds are reduced pro

4 rata, which is highly unlikely to occur, such pro rata reductions do not render this Settlement unfair.

5 *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a

6 proposed settlement amounts to only a fraction of the potential recovery does not mean the

7 settlement is unfair or inadequate.").  Indeed, in light of Groupon's mandatory arbitration clause and

8 class action waiver, a probable recovery of 100%-120% of the Class Members' out of pocket

9 payments is an excellent outcome for Class Members.  *See Ferrero*, 2012 WL 2802051, at *12

10 (court "takes into account the strength of Defendant's defenses and obstacles to class-wide

11 recovery").

12    Ironically, one objector argues that the Settlement Fund is not adequate because it

13 contemplates a pro rata reduction, yet on the other hand argues that the ***Second*** Settlement Fund is

14 improper because it permits refunds to Class Members for any reason.  *See* Browne Objection (Dkt.

15 No. 57).  However, the Second Settlement Fund is contingent upon ***all*** Class Members' requests for

16 refunds based on expired, unredeemed Vouchers having been satisfied from the first Settlement

17 Fund.  Settlement Agreement at §E.4.c.  Thereafter, Class Members can get refunds from the Second

18 Settlement Fund of the purchase value of their unused Voucher purchased after December 1, 2011.

19 Such forward-looking monetary relief provides additional benefit to the same Class Members with

20 respect to purchases of Groupon Vouchers and no legitimate objection exists to this add-on benefit to

21 the Class.[18]

22

23 [18]    One objector argues that a "significant percentage" of the Settlement Fund is likely to be
   reclaimed by Groupon as reimbursement for its ongoing business expenses.  *See* Browne Objection
24 (Dkt. No. 57) at 12.  Ms. Browne misreads the Settlement.  First, the Second Settlement Fund, from
   which Groupon may submit claims for reimbursement for refunds paid to Class Members based on
25 Groupons purchased or received after December 1, 2011, comes into existence if and only if all valid
   Class Member requests for refunds based on expired, unredeemed Vouchers are satisfied and funds
26 remain.  Settlement Agreement at §E.4.a.  Moreover, the provision of which Ms. Browne complains
   was intended as a convenience to Class Members, who are given the option of submitting claims on
27 the Second Settlement Fund directly to Groupon or to the Claims Administrator.  Class Members
   who contact Groupon requesting a refund of Vouchers purchased after December 1, 2011, ***for any***

28

E.      The *Cy Pres* Award Complies with Ninth Circuit Standards

Several objectors, including professional objector Palmer, mistakenly argue that the Settlement Agreement improperly diverts the relief to the Class to charitable groups by way of *cy pres* payments.  *See, e.g.*, Brown *et al.* Objection (Dkt. No. 58) at 3 (Plaintiff intends to immediately disburse *cy pres* funds without first making it available to the class.").  Such arguments misconstrue the Settlement terms.

In fact, other than $75,000 (less than 1% of the total Fund), the entire $8,500,000 Settlement Fund is earmarked to be distributed to the Class, less Court-awarded attorneys' fees and expenses, incentive awards, notice and claims administration.  It is not until after every one of the Class Members who submit Claims based on expired, unredeemed Vouchers receive full relief that any additional *cy pres* is contemplated on a contingency basis only.  Settlement Agreement at §D.3.

Finally, objector Palmer's argument that Class Counsel do not reveal to which charities any payments would be made is wrong.  *See* Brown *et al.* Objection (Dkt. No. 58) at 4 and shows that Palmer has not read the Settlement Agreement.  In fact, the Settlement Agreement states that after requests for refunds are processed, a modest *cy pres* payment will be divided between the Electronic Frontier Foundation ("EFF") and the Center for Democracy and Technology, *see* Settlement Agreement at §B.2, recipients identified as part of the Class Notice program, as manifest by others who objected to the groups chosen.  *See, e.g.*, Objection of Andrea Pridham ("Pridham Objection") (Dkt. No. 69).

Importantly, the Ninth Circuit has held that *cy pres* is acceptable in the settlement context, provided the *cy pres* award is "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038-39 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)); *see also Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *5 (N.D.

*reason* can receive refunds from the Second Settlement Fund directly from Groupon rather than being referred to the Claims Administrator, and Groupon will then submit claims to the Claims Administrator.  Settlement Agreement at §E.4.d.  This is different from the "Groupon Promise" discussed above, which does not guarantee a refund.  *See* Harrow Decl., ¶2.

1   Cal. Feb. 6, 2012) (approving *cy pres* distribution where "*cy pres* beneficiaries identified by the

2   parties [were] all proper, taking into account, 'the nature of the plaintiffs' lawsuit, the objectives of

3   the underlying statutes, and the interests of the silent class members, including their geographic

4   diversity'"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 641 (S.D. Cal. 2011) (approving settlement,

5   including *cy pres* award); *Catala v. Resurgent Cap. Servs. L.P.*, No. 08cv2401 NLS, 2010 WL

6   2524158, at * 4 (S.D. Cal. June 22, 2010) (same).

7          In this litigation, in which the Class is comprised of Internet users nationwide who assert that

8   Groupon's online marketing and sales practices violated federal law and various state consumer

9   statutes, a *cy pres* distribution to organizations dedicated to Internet consumers' rights is appropriate

10  and properly "tethered to the nature of the lawsuit and the interests of the silent class members."

11  *Nachshin,* at 1039.   Though in *Nachshin*, the court held the beneficiaries were not sufficiently

12  connected to the class or underlying objectives of the lawsuit, it opined parties may be able to

13  propose an appropriate beneficiary.   *See id.* at 1040-41.   The court stated, "[i]t is clear that all

14  members of the class share two things in common: (1) they use the internet, and (2) their claims

15  against [the defendant] arise from a purportedly unlawful advertising campaign that exploited users'

16  outgoing e-mail messages."   *Id.* at 1041.   Thus, "[t]he parties should not have trouble selecting

17  beneficiaries from any number of non-profit organizations that work to protect internet users from

18  fraud, predation, and other forms of online malfeasance." *Id.*

19         Similarly, the Ninth Circuit's recent decision in *Dennis v. Kellogg Co.*, No. 11-55674, 2012

20  WL 2870128 (9th Cir. July 13, 2012), a case involving California's consumer statutory claims based

21  on defendant's allegedly misleading advertising, the court held appropriate cy pres recipients may be

22  "organizations dedicated to protecting consumers from, or redressing injuries caused by, false

23  advertising."   *Id.* at *6 (finding improper cy pres award to unspecified charities to feed indigent).

24         Here, as in *Nachshin*, Class Members are Internet users whose claims arise from Groupon's

25  purportedly unlawful online marketing and sales practices.   The *cy pres* beneficiaries designated are

26  the EFF and the Center for Democracy and Technology, two advocacy organizations dedicated to

27  pursuing Internet consumer rights.   *See* Settlement Agreement at §B.2; *see also* Declaration of Shirli

28  Fabbri Weiss in Support of Joint Motion ("Weiss Decl.") (Dkt. No. 72-4), ¶33 & Ex. 1 (screen shots

1   of beneficiaries' websites).  Thus, the *cy pres* beneficiaries designated in the Settlement Agreement

2   sufficiently serve the Class and the objectives of this lawsuit.

3          Furthermore, unlike *Kellogg*, in which the *cy pres* award comprised a large percentage of the

4   overall relief, the *cy pres* award here is less than 1% of the Settlement Fund with any further awards

5   being contingent on payment of all Class Member claims.  *Cf.* 2012 WL 2870128, at *2-*3

6   (disapproving *cy pres* award where it comprised over half the total settlement fund).  Additionally, if

7   funds remain in the Second Settlement Fund after two years of Class Member refunds for future

8   Groupon Vouchers, then additional amounts may go to *cy pres* thereafter.  Settlement Agreement at

9   §E.4.d.  Virtually all of the Funds will go to Class Members who submit claims under either the first

10  Settlement Fund or the Second Settlement Fund.

11         Finally, objections to the *cy pres* recipients based on speculation that they were chosen

12  because of relationships to Defense Counsel or Class Counsel are outrageous and completely

13  meritless.  *See* Pridham Objection (Dkt. No. 69).  Defense Counsel is a large, global law firm with

14  thousands of attorneys, each of whom has current or past professional relationships with various

15  organizations.  Likewise, Class Counsel is a well-respected national firm comprised of hundreds of

16  attorneys who work with various organizations around the country, and does not interfere with their

17  ability to zealously represent the Class.[19]  The *cy pres* recipients were not chosen because of any

18  relationship to counsel.  *See* Weiss Decl., ¶33; Stoia Response Decl., ¶6.

19         **F.      The Class Claims May Be Certified for Settlement Purposes**

20         Several objectors, including Daniel Hall and Sean Hull, argue without any meaningful

21  analysis, that the case cannot be certified for class treatment because it involves too many states'

22  laws.  *See* Hall Objection (Dkt. No. 53) at 1; Hull Objection (Dkt. No. 55) at 2.  However, it is well

23  established that manageability concerns due to the applicability of various state laws is rendered

24  moot by a settlement and are not relevant because the court will not need to preside over a trial of

25  _____

26  [19]     One objector mistakenly asserts that EFF was a client of Robbins Geller in a prior case.  *See*
    Spies Objection (Dkt. No. 70).  EFF was once co-counsel in a case; however, the case was
27  dismissed.  Stoia Response Decl., ¶6.

28

those claims.  *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776, at *26-*27 (E.D. Cal. June 11, 2012) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974)).

### G.   Notice to the Settlement Class Was Adequate and Consistent with Due Process

As set forth in detail in the Joint Motion, the Class Notice was adequate and satisfied both Rule 23 and due process.  Under Rule 23(e)(1), the court must direct notice in a reasonable manner to all class members who would be bound by the proposal.  *Rodriguez*, 563 F.3d at 962; Fed. R. Civ. P. 23(e)(1).   Rule 23 requires only that the best notice practicable rather than actual notice is provided.  *Siber v. Mabon,* 18 F.3d 1449, 1453  (9th Cir. 1994).   "'Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."'"  *Rodriguez*, 563 F.3d at 962.  In granting preliminary approval, this Court approved the Settlement Class Notice and the Notice Program, finding that they met the requirements of Rule 23 and satisfied due process.  Preliminary Approval Order (Dkt. No. 42) at 6.  As described in the joint motion for final approval, Class Members received notice in the manner and form approved by the Court.  *See* Mem. in Support of Joint Motion at §III.D; Hodne Decl., ¶¶7-12; Janowicz Decl., ¶¶5-6.

Any argument that notice was inadequate because provided by e-mail and Internet website is without merit.  *See* Cogbill, *et al.* Objection (Dkt. No. 71) at 1-3.  Groupon communicates with its customers almost exclusively by means of e-mail and the Internet, and does not have physical mailing addresses for the majority of Settlement Class Members.  In this context, the Notice Program is the best notice practicable, as recognized by the Court in the Preliminary Approval Order.  *See* Preliminary Approval Order (Dkt. No. 42) at 6; *see also Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 256-57 & n.10 (E.D.N.Y. 2009) ("class members in this case are uniquely suited for email notification because (1) their interactions with the defendants have exclusively or predominantly been via email and over the internet and (2) while the email addresses associated with their PayPal accounts have been verified by the defendants, their mailing addresses have not").  Furthermore, the objection that individual notice was not given to all class members is similarly without merit.  *See*

1   Hull Objection (Dkt. No. 55). Individual notice via e-mail was provided to each potential Class

2   Member for whom Groupon has contact information, which represents the vast majority of the

3   Settlement Class. The activity on the Settlement Website shows the adequacy of the Notice. As of

4   August 18, 2012, the Claims Administrator has fielded over 8,000 phone calls and 8,000 e-mails,

5   and the website has been accessed over 4,000,000 times.

6       The objection that notice was inadequate because the e-mail notice sent to Class Members

7   did not contain all the terms of the Settlement but rather referred Class Members to the Settlement

8   Website is likewise meritless. *See* Sheppard Objection (Dkt. No. 64) at 2. The e-mail notice

9   informed recipients of the proposed Settlement's terms directed Class Members to the Settlement

10  Website to obtain more information and view a copy of the Settlement Agreement itself, provided

11  contact information for the Claims Administrator in the event they had questions, and explained how

12  Class Members could object to the Settlement or exclude themselves. *See* Settlement Agreement,

13  Ex. 2; Weiss Decl, ¶34. It would be impractical, as well as ineffective and confusing, to detail all

14  terms of the 37 page Settlement Agreement in an e-mail notice. Furthermore, a summary e-mail

15  notice directing class members to a settlement website for more detailed information is appropriate

16  in cases like this where Class Members are Internet users. *See Chavez v. Netflix, Inc.*, 162 Cal. App.

17  4th 43 (2008) (approving e-mail notice directing class members to settlement website and stating

18  "[u]sing a summary notice that directed the class member wanting more information to a Web site

19  containing a more detailed notice, and provided hyperlinks to that Web site, was a perfectly

20  acceptable manner of giving notice in this case"); *Browning v. Yahoo! Inc.*, No. C04-1463 HRL,

21  2006 WL 3826714, at *8-*9 (N.D. Cal. Dec. 27, 2006) (e-mail notice directing class members to

22  official settlement website particularly appropriate where class members' "allegations arise from

23  their visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are

24  familiar with and comfortable with email and the Internet").

25      The objection that the Settlement Class Notice did not include the deadline to submit a

26  Settlement Fund Claim Form (*see* Hull Objection (Dkt. No. 55)) is misguided. As described on the

27  Settlement Website, the deadline to submit a claim form to obtain a Settlement Voucher will be 60

28  days after dissemination of the Settlement Fund Claims Notice. The exact date of the deadline will

1  be triggered by final approval of the Settlement and has not yet been determined, but will be updated

2  on the Settlement Website once determined and stated in the Second Fund Claims Notice that will be

3  e-mailed to all Class Members informing them that the Settlement has been approved and they may

4  submit claims.  *See* Settlement Agreement, Ex. 4.

5       Finally, Spies Objection (Dkt. No. 70) that notice was inadequate because it failed to advise

6  Class Members of statutory damages under the CARD Act is meritless.  As described above, the

7  parties disagree over the application of the Act to Groupon Vouchers and that the Class is entitled to

8  statutory damages.

9  **V.      CONCLUSION**

10       For the reasons set forth above, the Parties respectfully request that the Court overrule all of

11  the objections in their entirety and grant final approval of the Settlement.

12  DATED:  August 24, 2012         Respectfully submitted,

13                        ROBBINS GELLER RUDMAN & DOWD LLP
                      JOHN J. STOIA, JR.

14                        RACHEL L. JENSEN
                      THOMAS R. MERRICK

15                        PHONG L. TRAN

16

17                                     s/ John J. Stoia, Jr.

18                             JOHN J. STOIA, JR.
                      655 West Broadway, Suite 1900

19                        San Diego, CA  92101
                      Telephone:  619/231-1058

20                        619/231-7423 (fax)

21                        Class Counsel

22  DATED:  August 24, 2012         DLA PIPER LLP (US)

23                        SHIRLI FABBRI WEISS
                      CHRISTOPHER M. YOUNG

24

25

26                           s/ Shirli Fabbri Weiss
                      SHIRLI FABBRI WEISS

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone  619/699-2700
619.699.2701 (fax)
Attorneys for Defendants

1

<u>CERTIFICATE OF SERVICE</u>

2    I hereby certify that on August 24, 2012, I authorized the electronic filing of the foregoing

3 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4 the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5 caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6 CM/ECF participants indicated on the attached Manual Notice List.

7    I certify under penalty of perjury under the laws of the United States of America that the

8 foregoing is true and correct.  Executed on August 24, 2012.

9

10
  s/ John J. Stoia, Jr.
  JOHN J. STOIA, JR.

11
  ROBBINS GELLER RUDMAN
   & DOWD LLP

12
  655 West Broadway, Suite 1900
  San Diego, CA  92101-3301

13
  Telephone:  619/231-1058
  619/231-7423 (fax)

14

15
  E-mail:johns@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

755868_1

3:11-md-02238-DMS-RBB

# Mailing Information for a Case 3:11-md-02238-DMS-RBB

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Donald Chidi Amamgbo , Esq**
  donald@amamgbolaw.com

- **Jarod M Bona**
  jarod.bona@dlapiper.com

- **Mark Anthony Bulgarelli**
  markb@progressivelaw.com,kpe@progressivelaw.com,mbulgare@hotmail.com

- **Jonathan Stephen Burns**
  jburns@wklawyers.com

- **Jay S Carlson**
  JayCarlson.legal@gmail.com

- **Christopher Robert Carney**
  christopher.carney@cgi-law.com

- **Todd D. Carpenter**
  tcarpenter@bffb.com,tdinardo@bffb.com,rcreech@bffb.com,lgomez-gray@bffb.com

- **Todd David Carpenter**
  tcarpenter@bffb.com

- **Maureen Connors**
  sampc01@gmail.com

- **Dana E. Deering**
  ddeering@pdfslaw.com

- **Christopher M. Ellis**
  cellis@brelaw.com

- **Theodore Frank**
  tfrank@gmail.com

- **David A. Futscher**
  dfutscher@pdfslaw.com

- **Brett Landgon Gibbs**
  blgibbs@wefightpiracy.com,docket@wefightpiracy.com

- **Sean P Gillespie**
  sean.gillespie@cgi-law.com

- **Clayton D Halunen**
  halunen@halunenlaw.com

- **Robert Brent Irby**
  birby@mhcilaw.com

- **Samuel Bayard Isaacson**
  samuel.isaacson@dlapiper.com

- **Kenan Lee Isitt**
  kenan.isitt@cgi-law.com

- **Matthew J. Iverson**
  matthew.iverson@dlapiper.com

- **Rachel L Jensen**
  rjensen@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **Rachel Lynn Jensen**
  rachelj@rgrdlaw.com

- **Michael Alan Johnson**
  mjohnsonlawyer@aol.com

- **Noah A Katsell**
  noah.katsell@dlapiper.com,sarah.walter@dlapiper.com

- **Stellman Keehnel**
  stellman.keehnel@dlapiper.com,patsy.howson@dlapiper.com

- **Charles J. LaDuca**
  charlesl@cuneolaw.com

- **Anthony Darrell Lehman**
  anthony.lehman@dlapiper.com

- **Ronald M. Lepinskas**
  ronald.lepinskas@dlapiper.com

- **David C Lundsgaard**
  dlundsgaard@grahamdunn.com

- **Fredrick Howard Lebron McClure**
  fredrick.mcclure@dlapiper.com

- **Bradley T. Meissner**
  bmeissner@fenwick.com,doconnor@fenwick.com

- **Thomas R. Merrick**
  tmerrick@rgrdlaw.com

- **Matthew Evan Miller**
  mmiller@cuneolaw.com

- **Sara Z. Moghadam**
  sara.moghadam@dlapiper.com

- **Jason Moore**
  jason@vaneyk-moore.com

- **Derek A Newman**
  derek@newmanlaw.com,docketing@newmanlaw.com,sarah@newmanlaw.com,linke@newmanlaw.com

- **Andrea Pridham**
  grenville@grenvillepridham.com

- **Julio Joaquin Ramos**
  ramosfortrustee@yahoo.com

- **Joseph Anton Roselius**
  joseph.roselius@dlapiper.com

- **Elaine A. Ryan**
  eryan@bffb.com,rcreech@bffb.com,nserden@bffb.com

- **Charles E. Schaffer**
  Cschaffer@lfsblaw.com

- **Myles A Schneider**
  myles@maschneider.com

- **John J. Stoia , Jr**
  JohnS@rgrdlaw.com,e_file_sd@rgrdlaw.com,ldeem@rgrdlaw.com

- **Brian Russell Strange**
  lacounsel@earthlink.net,abacon@strangeandcarpenter.com,gcarpenter@strangeandcarpenter.com,jhood@strangeandcarpenter.com

- **Stephen A. Swedlow**
  swedlow@swedlowlaw.com

- **Patricia Nicole Syverson**
  psyverson@bffb.com

- **James Michael Terrell**
  jterrell@mmlaw.net

- **Reginald Terrell**
  reggiet2@aol.com

- **Brendan S. Thompson**
  brendant@cuneolaw.com

- **Edward Colin Thompson**
  colin.thompson@dlapiper.com

- **Phong L. Tran**
  ptran@rgrdlaw.com

- **Phong Le Tran**
  Ptran@rgrdlaw.com,junei@rgrdlaw.com,e_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Shaun Van Eyk**
  shaun@vaneyk-moore.com,vaneyk.law@gmail.com

- **Michael D. Vhay**
  michael.vhay@dlapiper.com

- **Shawn J. Wanta**
  sjwanta@baillonthome.com,mjhensold@baillonthome.com,akgunaseelan@baillonthome.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Marc Aaron Wites**
  mwites@wklawyers.com

- **Christopher Munro Young**
  chris.young@dlapiper.com,sarah.walter@dlapiper.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Peter           M. Ellis
DLA Piper LLP (US)
203 North LaSalle Street
Suite 1900
Chicago, IL 60601


Andrew-NA       S Friedman
Not Admitted
,


Kenneth Hinton
4139 Peppertree Lane
Silver Spring, MD 20906
```

**E. G. Johnson**
1269 Southview Drive #101
Oxon Hill, MD 20745

**Michael         A. Johnson**
Michael A. Johnson & Associates
415 North LaSalle Street
Suite 502
Chicago, IL 60610

**Charles-NA        J. LaDuca**
Not Admitted
,

**Michael         A. McShane**
Audet & Partners, LLP
221 Main Street
Suite 1460
San Francisco, CA 94105