EXHIBIT B

4-25-2011 Poss

1

```
 1   CASE NUMBER:          BC297438

 2   CASE NAME:            DANA POSS VS. 21ST CENTURY

 3                         INSURANCE COMPANY

 4   LOS ANGELES, CALIFORNIA  MONDAY, APRIL 25, 2011

 5   DEPARTMENT 309         HON. ANTHONY J. MOHR, JUDGE

 6   REPORTER:             CLAUDIA VECCHI-CORTEZ,

 7                         CSR NO. 11630

 8   TIME:                 A.M. SESSION

 9

10

11              (THE FOLLOWING PROCEEDINGS

12              WERE HELD IN OPEN COURT:)

13

14

15       THE COURT:  OKAY.  GOOD MORNING, COUNSEL.  IN

16   MCKAY CAN I HAVE APPEARANCES OF COUNSEL, PLEASE.

17       MR. POMERANCE:  YES.  GOOD MORNING, YOUR HONOR.

18   DREW POMERANCE ON BEHALF OF THE CLASS.

19       MR. GOSHGARIAN:  MARK GOSHGARIAN ON BEHALF OF THE

20   CLASS.

21       MR. PALMER:  GOOD MORNING, YOUR HONOR.

22   DARRELL PALMER ON BEHALF OF THE OBJECTORS PICCIONELLI

23   AND AMAYA ALONG WITH MY COLLEAGUE KIRA RUBEL.

24       MR. RUBEL:  K-I-R-A, R-U-B-E-L.  GOOD MORNING,

25   YOUR HONOR.

26       MR. KELLER:  GOOD MORNING, YOUR HONOR.  KEN KELLER

27   ON BEHALF OF 21ST CENTURY INSURANCE COMPANY.

28       THE COURT:  OKAY.  WELL, THIS IS A MOTION TO
```

Page 1

Exhibit B
Page  16

4-25-2011 Poss

2

1    ASSESS AN APPEAL BOND ON THE OBJECTORS.  I GUESS MY

2    FIRST QUESTION, MORE FROM CURIOSITY THAN ANYTHING ELSE,

3    WHY DIDN'T YOU SHOW UP AT THE FAIRNESS HEARING?

4         MR. PALMER:  BECAUSE WE BELIEVE THAT THE MOST

5    IMPORTANT ISSUE ON APPEAL IN THIS CASE IS THE TIMING OF

6    THE ATTORNEY FEE APPLICATION.  AND WITHOUT THE

7    APPROPRIATE OPPORTUNITY TO REVIEW THE ATTORNEY FEE

8    APPLICATION BOTH BY THE OBJECTORS AND THE ENTIRE

9    CLASS --

10        THE COURT:  SO HELP ME OUT HERE BECAUSE IT'S BEEN

11   A LONG TIME.

12        MR. PALMER:  YES.

13        THE COURT:  DID THE NOTICE TO THE CLASS SAY

14   NOTHING ABOUT THE ATTORNEY'S FEES?

15        MR. PALMER:  I DON'T RECALL WHAT IT SAID ABOUT THE

16   ATTORNEY'S FEES.

17        THE COURT:  WHAT DID THE NOTICE SAY ABOUT

18   ATTORNEY'S FEES?

19        MR. POMERANCE:  THE NOTICE SAID THAT WE WERE GOING

20   TO BE SEEKING AN ATTORNEY'S FEE AWARD OF $3.4 MILLION,

21   WHICH IS WHAT WE SOUGHT, WHAT WE GOT, WHICH WAS

22   SUBSTANTIALLY LESS THAN OUR LODESTAR.  IT DID NOTIFY

23   THEM.  AND MR. PALMER GOT A COPY OF THE ATTORNEY'S FEES

24   MOTION A WEEK BEFORE THE FINAL FAIRNESS HEARING, HAD AN

25   OPPORTUNITY TO COME IN HERE AND SAY ANYTHING HE WANTED

26   ABOUT THE FEES.

27        THE COURT:  BUT THE NOTICES THAT WENT OUT TO THE

28   CLASS DID TELL THEM THAT YOU WOULD BE APPLYING FOR THAT

3

Page 2

4-25-2011 Poss

1   FEE?

2           MR. POMERANCE:  ABSOLUTELY.

3           MR. GOSHGARIAN:  ABSOLUTELY.

4           THE COURT:  WHAT'S THE BASIS OF YOUR OBJECTION?

5           MR. PALMER:  THE BASIS OF THE OBJECTION IS THAT

6   THE CLASS DIDN'T HAVE THE OPPORTUNITY TO ACTUALLY LOOK

7   AT THE ATTORNEY FEE APPLICATION.  AND JUST LIKE THE

8   NINTH CIRCUIT HAS HELD IN THE MERCURY INTERACTIVE CASE,

9   THE CLASS HAS TO BE GIVEN THE OPPORTUNITY TO REVIEW IN

10  DETAIL THAT APPLICATION; OTHERWISE HOW DOES THE CLASS

11  KNOW --

12          THE COURT:  IN OTHER WORDS, THEY SHOULD HAVE THE

13  OPPORTUNITY TO COME DOWN HERE TO THE COURT AND LOOK AT

14  THE PAPERWORK.

15          MR. PALMER:  ABSOLUTELY.

16          THE COURT:  AND YOU'RE SAYING THAT PAPERWORK

17  DIDN'T COME IN UNTIL THE DAY OF THE HEARING OR --

18          MR. PALMER:  NO.  IT CAME IN -- I DON'T KNOW THE

19  EXACT FILING DATE.  I THINK IT WAS ABOUT A WEEK BEFORE

20  THE HEARING.  IT CERTAINLY DIDN'T COMPLY WITH THE LOCAL

21  RULES THAT SAY WHEN YOU FILE A MOTION YOU HAVE TO GIVE

22  ALL PARTIES PROBABLY 20 DAYS NOTICE.  THAT WAS CERTAINLY

23  SOMETHING THAT THE MERCURY COURT MENTIONED; THAT THE

24  ATTORNEY FEE APPLICATION IN THAT CASE SIMPLY DIDN'T EVEN

25  COMPLY WITH THE LOCAL RULES IN THE NORTHERN DISTRICT;

26  SO --

27          THE COURT:  WELL, OUR RULES OF COURT STATEWIDE ARE

28  DIFFERENT FROM THE LOCAL RULES OF A U.S. DISTRICT COURT.

                                                        4


                        Page 3

4-25-2011 Poss

1   YOU DO UNDERSTAND THAT?

2        MR. PALMER:  ABSOLUTELY I DO.  BUT I KNOW FOR A

3   FACT THAT THE LOCAL RULES HERE REQUIRE MORE THAN SEVEN

4   DAYS NOTICE.

5        THE COURT:  WHAT LOCAL RULES?  WE GO WITH THE

6   CALIFORNIA RULES OF COURT.

7        MR. PALMER:  OKAY.

8        THE COURT:  MR. KELLER, YOU STOOD UP.  DID YOU

9   WANT TO SAY ANYTHING?

10       MR. KELLER:  NO.  I'VE GOT NOTHING TO SAY IN THIS.

11       THE COURT:  OKAY.  I MEAN, YOU ARE FREE TO SIT,

12  STAND, WHATEVER YOU WANT TO DO.

13       MR. KELLER:  WELL, I JUST FELT THAT I WAS

14  IMPROPER.

15       THE COURT:  NO, YOU CAN SIT OR STAND.  IT'S OKAY

16  WITH ME EITHER ONE.

17          LOOK, I REALLY GAVE SOME THOUGHT TO THIS

18  MOTION.  I WENT THROUGH IT.  MY RESEARCH ATTORNEY WENT

19  THROUGH IT.  I PLOWED THROUGH IT YESTERDAY WHILE I WAS

20  AT HOME TRYING TO MAKE SOME HEADS OR TAILS OF THIS.  I

21  WENT THROUGH THE CASES, AND I GATHER THERE'S REALLY

22  NOTHING IN CALIFORNIA THAT DEALS WITH THIS.  AM I RIGHT

23  ABOUT THAT?

24       MR. POMERANCE:  WE COULD NOT FIND A CALIFORNIA

25  CASE DIRECTLY ON POINT.  CERTAINLY -- AND OBVIOUSLY

26  UNDER CALIFORNIA CLASS ACTION LAW ABSENT CALIFORNIA

27  AUTHORITY --

28       THE COURT:  YOU LOOKED TO THE FEDERAL LAW?

                                                      5

1        MR. POMERANCE:  RIGHT.

                    Page 4

4-25-2011 Poss

2      THE COURT:  MR. PALMER, DO YOU AGREE WITH THAT?

3      MR. PALMER:  I AGREE.  I THINK WE HAVE TO LOOK TO

4  AZIZIAN.  I THINK CLASS COUNSEL CITED A LOT OF NON-NINTH

5  CIRCUIT DECISIONS.

6      THE COURT:  WELL, THE NINTH CIRCUIT DOESN'T BIND

7  US.  WHEN YOU LOOK TO FEDERAL AUTHORITY, I DON'T THINK

8  THERE'S -- IS THERE SOMETHING THAT SAYS THAT THE NINTH

9  CIRCUIT WILL CONTROL?  I GRANT YOU IT'S OUR CIRCUIT, BUT

10  STILL IS THAT WHAT THE LAW IS?

11      MR. PALMER:  WELL, I ASSUMED THAT SINCE WE WERE IN

12  CALIFORNIA THAT IT WOULD MAKE MORE SENSE TO LOOK AT THE

13  NINTH CIRCUIT, YOUR HONOR.

14      THE COURT:  CASES ARE SPLIT.  WHEN YOU LOOK AT THE

15  FEDERAL COURTS AROUND THE COUNTRY, THE CASES ARE SPLIT.

16  AND, YOU KNOW, YOU'VE GOT CASES THAT BASICALLY TALK

17  ABOUT HOW IN A SITUATION LIKE THIS IT IS APPROPRIATE TO

18  ORDER AN APPEAL BOND.

19      MR. PALMER:  WELL, IF WE'RE GOING TO MOVE FROM THE

20  MERITS OF THE APPEAL, WHICH I WAS DISCUSSING WHEN WE

21  WERE TALKING ABOUT WHETHER OR NOT THE CLASS SHOULD HAVE

22  THE RIGHT TO LOOK AT THE ATTORNEY FEE APPLICATION TO THE

23  APPROPRIATENESS OF THE BOND, THEN I THINK THAT'S A

24  DIFFERENT TOPIC, AND I'D BE HAPPY TO ADDRESS THAT.

25      MR. POMERANCE:  YOUR HONOR, THERE'S ONLY ONE

26  PURPOSE FOR AN OBJECTOR EVER TO FILE AN APPEAL.  AND

27  IT'S BECAUSE THE OBJECTOR THINKS THAT THE CLASS CAN AND

28  SHOULD DO BETTER AND THAT SOMETHING WAS AMISS ABOUT THE

6

1  SETTLEMENT AND THAT THE CLASS CAN DO BETTER.  IT IS

2  ABSOLUTELY IMPOSSIBLE AS A MATTER OF LAW FOR ANY

Page 5

4-25-2011 Poss

3    ARGUMENT ON APPEAL TO APPROVE THIS SETTLEMENT AS A

4    RESULT OF THE COURT OF APPEAL DECISION.

5         THE COURT:  WELL, YES AND NO.  I MEAN, THE ANSWER

6    TO THAT IS YES AND NO.  AND HERE IS WHY.  AND I WAS

7    TRYING TO KIND OF PUT DOWN DECISION TREES AS I WAS

8    GOING, AND I DON'T THINK I PHRASED IT VERY WELL MYSELF.

9    BUT LET'S ASSUME THAT THE OBJECTOR WINS ON APPEAL.

10        MR. POMERANCE:  OKAY.  ON WHAT ISSUE?

11        THE COURT:  ON EVERY ISSUE OR ANY OF THE ISSUES.

12        MR. POMERANCE:  OKAY.

13        THE COURT:  THEY SAY "LOOK, THE SETTLEMENT IS NOT

14   FAIR TO THE CLASS."  OKAY.  THAT WOULD GENERALLY BE WHAT

15   AN OBJECTOR OBJECTS ON.  NOW, A COUPLE OF THINGS CAN

16   HAPPEN.  THE COURT OF APPEAL WOULD SEND IT BACK AND SAY

17   WE DON'T CONSIDER THIS AGREEMENT FAIR.

18            NOW, ONE OF TWO THINGS WILL HAPPEN.  ONE IS

19   THAT THE DEFENDANT IS GOING TO SAY, YOU KNOW, WE'VE GOT

20   THE MCKAY DECISION.  BASTA.  AND, YOU KNOW, THAT'S IT.

21   WE WALK AWAY, THE CLASS DOESN'T GET A THIN DIME.  OR

22   THEY MAY SAY "YOU KNOW, WE AGREED TO SETTLE.  LET'S SEE

23   IF WE CAN MAKE THE SETTLEMENT BETTER AND GET THIS THING

24   TO FLY THROUGH THE COURT OF APPEAL."  AND THEY, YOU

25   KNOW, TINKER WITH THE SETTLEMENT AGREEMENT, THEY DO WHAT

26   MR. PALMER WANTS THEM TO DO AND NOW -- GUESS WHAT -- THE

27   CLASS DOES BETTER.

28            SAME WITH THE ATTORNEY'S FEES.  THAT SEEMS

                                                          7


1    TO BE WHAT THEY THINK AT LEAST IS THEIR LONGEST AND

2    STRONGEST SUIT; THAT THE ATTORNEY FEE APPLICATION I

3    GUESS SHOULD HAVE BEEN POSTED ALONG WITH THE NOTICE OF

                            Page 6

4-25-2011 Poss

4   HEARING ON A FINAL APPROVAL OR SOMETHING LIKE THAT AS

5   OPPOSED TO A WEEK AHEAD.

6          SO THE COURT OF APPEAL SAYS YOU'RE RIGHT.

7   THE CLASS SHOULD HAVE BEEN ABLE TO REVIEW IT.  WE

8   REMAND.  WE WILL RESET A DATE FOR THE FAIRNESS HEARING

9   AND WE'LL GIVE THE CLASS 30 DAYS NOTICE; IN OTHER WORDS,

10  NOW IT'S POSTED.  OR IT'S NOT NECESSARILY POSTED.  IT'S

11  HERE IN THE COURT FILE.  ANYBODY CAN COME DOWN AND SEE

12  IT.  I DON'T THINK THERE'S ANY REQUIREMENT TO POST THESE

13  THINGS ON-LINE.  BUT IN ANY CASE, WHATEVER IT IS, IT IS.

14  BUT -- I MEAN, ISN'T THAT SOMETHING THE CLASS --

15          MR. POMERANCE:  NO.  LET ME ANSWER BOTH OF THE

16  QUESTIONS NO.

17          THE COURT:  OKAY.

18          MR. POMERANCE:  IN THE FIRST CASE -- AND I'M NOT

19  GOING TO SPEAK FOR MR. KELLER.

20          MR. KELLER:  BUT I'M HAPPY TO WHEN YOU'RE DONE.

21          MR. POMERANCE:  OKAY.  I CAN'T FATHOM WHERE A

22  DEFENDANT HAS A CHOICE OF EITHER PAYING A TOTAL OF $6,

23  7, 8 MILLION --

24          THE COURT:  OR NOTHING.

25          MR. POMERANCE:  -- OR NOTHING THAT THEY WOULD SAY,

26  YOU KNOW, WE HAVE A BINDING JUDGMENT AT THE COURT OF

27  APPEAL THAT SAYS THAT WE HAVE ABSOLUTELY NO LIABILITY SO

28  LET'S PAY $8 MILLION.  I MEAN, ANYTHING IS POSSIBLE.

                                                        8

1   BUT THAT'S ABSURD.

2          THE COURT:  I UNDERSTAND THAT.

3          MR. POMERANCE:  OKAY.  SO THEN MY SECOND ISSUE ON

4   THE ATTORNEY'S FEES, WHICH AS THE COURT REMARKED MIGHT

Page 7

4-25-2011 Poss

5   BE THEIR BEST ARGUMENT ON POSTING THIS THING, BUT EVEN

6   IF THAT WERE TO OCCUR AND EVEN IF THE CLASS COULD THEN

7   SEE OUR FEES AND EVEN IF CLASS MEMBERS COULD CONVINCE

8   YOUR HONOR THAT OUR FEES ARE EXCESSIVE, THAT CAN'T

9   BENEFIT THE CLASS BECAUSE THOSE FEES ARE PAID SEPARATE

10   AND APART FROM ANY BENEFITS GOING TO THE CLASS.

11       SO EVEN IF MR. GOSHGARIAN AND I GOT NOTHING

12   FOR TEN YEARS OF WORK AND $4 MILLION WORTH OF LODESTAR,

13   THE CLASS WOULDN'T GET A PENNY EXTRA, SO --

14       THE COURT: WELL, LET ME ASK YOU THIS, MR. PALMER.

15   I WANT YOU TO ASSUME YOU PREVAIL ON YOUR ATTORNEY'S FEES

16   ARGUMENT.  NOW THE CLASS GETS TO LOOK AT THE ATTORNEY'S

17   FEES AND SOMEBODY OBJECTS, PROBABLY YOU OR SOMEBODY, AND

18   YOU WIN.  AND I SAY, "YOU KNOW, YOU'RE RIGHT.  THE FEES

19   ARE A LITTLE EXCESSIVE.  I'M GOING TO LOWER THE FEE."

20   HOW DOES THE CLASS BENEFIT FROM THAT?  HOW DOES ANYBODY

21   BENEFIT EXCEPT FOR 21ST CENTURY?  YOU DON'T.

22       MR. PALMER: THEY BENEFIT FROM --

23       THE COURT: HOW?

24       MR. PALMER: DUE PROCESS.  THEY HAVE HAD THE

25   OPPORTUNITY TO LOOK AT THE FEE APPLICATION.

26       THE COURT: AND TO WHAT END, THOUGH?  BECAUSE THE

27   MONEY IS COMING FROM 20TH CENTURY.  IF I CUT THE

28   ATTORNEY'S FEES IN HALF, YOU HAVE NOT BENEFITED AND,

9

1   FRANKLY, YOU WOULDN'T EARN ANY FEES ON THIS OBJECTION

2   BECAUSE THE CLASS HASN'T BENEFITED.  YOU ARE A MEMBER OF

3   THE CLASS.  IT'S NOT COMING OUT OF THE FUND LEAVING MORE

4   MONEY THERE FOR THE CLASS.

5       YOU ARE HELPING 21ST CENTURY, YOU KNOW, AND

Page 8

4-25-2011 Poss

6   IF YOU OWN STOCK IN THE COMPANY, MAYBE IT WILL RAISE

7   YOUR SHARE PRICE A PENNY OR TWO.  BUT I DON'T SEE HOW

8   IT'S GOING TO HELP THE CLASS.

9        MR. PALMER:  WHAT HAPPENED IN THE MERCURY CASE WAS

10   THAT THE NEW YORK STATE TEACHERS ASSOCIATION WAS A CLASS

11   MEMBER -- THEIR RETIREMENT FUND.  AND THE GENERAL

12   COUNSEL WROTE A LONG LETTER TO THE CLASS COUNSEL

13   OBJECTING AND SAYING WE HAVEN'T HAD THE OPPORTUNITY TO

14   REVIEW THIS APPLICATION AND WE THINK THAT'S VERY

15   IMPORTANT IN THIS CASE.  AND INDEED IT WENT TO THE

16   NINTH.  IT CAME BACK.  THERE WAS FULL DISCLOSURE --

17        THE COURT:  HANG ON, MR. PALMER.  WHERE IS MERCURY

18   IN YOUR APPENDIX OF AUTHORITY?

19        MR. POMERANCE:  AND MERCURY INTERACTIVE WAS A

20   COMMON FUND CASE, YOUR HONOR.  IT'S JUST COMPLETELY

21   DIFFERENT.

22        THE COURT:  BUT, I MEAN, IS THIS A REPORTED

23   DECISION SOMEWHERE?

24        MR. PALMER:  YES, IT IS.

25        THE COURT:  WHERE?  WHERE IN YOUR APPENDIX DID YOU

26   CITE IT?

27        MR. PALMER:  I DON'T HAVE THE APPENDIX WITH ME,

28   YOUR HONOR.

                                              10


1        THE COURT:  I'VE GOT IT.  WOULD YOU LIKE TO SEE

2   IT?

3        MR. PALMER:  NO, SIR.

4        THE COURT:  I MEAN, YOU KNOW, I DON'T SEE IT IN

5   THE APPENDIX UNLESS IT'S UNDER ANOTHER NAME.  IT'S A

6   NINTH CIRCUIT CASE; CORRECT?

Page 9

4-25-2011 Poss

7        MR. PALMER:  THAT'S CORRECT.

8        THE COURT:  IS IT AZIZIAN VERSUS FEDERATED OR

9  DEWITT AGAINST WESTERN PACIFIC?

10      MR. PALMER:  ARE YOU LOOKING AT THE OBJECTION,

11  YOUR HONOR OR AT THE OPPOSITION TO THE BOND MOTION?

12      THE COURT:  I'M LOOKING AT THE APPENDIX OF

13  NON-CALIFORNIA AUTHORITY IN SUPPORT OF OPPOSITION TO

14  OBJECTORS GREGORY PICCIONELLI.  THAT'S WHERE IT WOULD BE

15  IF IT'S ANYWHERE.

16      MR. PALMER:  NO.  IT WAS IN THE ORIGINAL

17  OBJECTION, YOUR HONOR.  MERCURY ISN'T PART OF THE BOND

18  MOTION.  THAT HAS TO GO TO THE MERITS OF OUR APPEAL.

19      THE COURT:  WELL, WHAT HAPPENED THERE?

20      MR. PALMER:  PARDON ME?

21      THE COURT:  WHAT HAPPENED IN MERCURY?

22      MR. PALMER:  THE NEW YORK TEACHERS STATE

23  RETIREMENT FUND OBJECTED SAYING THAT THEY HAD NOT BEEN

24  GIVEN THE OPPORTUNITY TO REVIEW THE ATTORNEY'S FEE

25  APPLICATION.  THEN THE NINTH CIRCUIT SAID WE AGREE.  WE

26  THINK THAT UNDER RULE 23, THE CLASS HAS THE OPPORTUNITY

27  TO REVIEW THE ENTIRE DECISION.  AND IN THIS INSTANCE,

28  THE CLASS COUNSEL DIDN'T EVEN COMPLY WITH THE LOCAL

11

1  RULES WHICH REQUIRES THEM TO GIVE 14 DAYS NOTICE BEFORE

2  A MOTION.  AND THEY REMANDED IT SOLELY ON THE QUESTION

3  OF ATTORNEY'S FEES.

4      THE COURT:  WASN'T THAT A COMMON FUND CASE?

5      MR. PALMER:  IT WAS A COMMON FUND.

6      THE COURT:  DOESN'T THAT MAKE THIS SHARPLY

7  DIFFERENT FROM WHAT WE'RE DOING HERE?

Page 10

4-25-2011 Poss

8          MR. PALMER:  I DON'T THINK SO.  THE POINT OF THE

9   CASE WAS NOT WHETHER SOMEBODY WANTED TO REDUCE OR

10  ENLARGE.  THE POINT OF THE CASE WAS TO GIVE THE CLASS

11  THE OPPORTUNITY TO REVIEW THE ATTORNEY FEE APPLICATION

12  TO SEE WHAT THESE LAWYERS WHO PROFESSED TO BE THE

13  CLASS'S LAWYERS HAVE DONE, WHAT THEY ARE BILLING TO

14  THEIR LODESTAR.

15          I MEAN, DID THEY BILL THAT ENTIRE APPEAL

16  WHICH WAS LARGELY DUE TO A VERY SERIOUS PROCEDURAL

17  MISTAKE?  WAS THAT BILLED AS PART OF THE LODESTAR?  WE

18  DON'T KNOW IN THIS INSTANCE.  AND THOUSANDS OF CLASS

19  MEMBERS DIDN'T KNOW.  THAT WAS THE POINT OF MERCURY.

20  AND IT HAS HAD -- SINCE THAT TIME, YOUR HONOR, IT HAS

21  HAD VERY IMPORTANT FAR-REACHING IMPLICATIONS IN THIS

22  BUSINESS.

23          MR. POMERANCE:  YOUR HONOR, MERCURY INTERACTIVE

24  WAS DECIDED ON TWO BASIS.  ONE, THERE WAS A FAILURE TO

25  COMPLY WITH AN EXPLICIT PROVISION OF FEDERAL RULE 23

26  WHICH WE DON'T HAVE IN CALIFORNIA.  AND, TWO, YOU ARE

27  EXACTLY RIGHT.  THE COURT EMPHASIZED THE COMMON FUND

28  NATURE OF THE CASE AND THE FACT THAT ON APPEAL A CLASS

                                                        12

1   MEMBER MAY POINT OUT SOMETHING IN THE ATTORNEY'S FEES

2   THAT COULD ULTIMATELY READ DOWN TO THE BENEFIT OF THE

3   CLASS, WHICH IS NOT PRESENT IN THIS CASE.

4          MR. PALMER:  WELL, WE'RE ARGUING THE MERITS OF OUR

5   APPEAL AT THIS POINT.

6          THE COURT:  INDEED.  MR. PALMER, INDEED.  THEY ARE

7   TELLING ME THAT YOUR APPEAL IS FRIVOLOUS; THAT YOU ARE

8   DOING THIS FOR YOUR OWN GAIN.  AND THEY ARE SAYING --

                        Page 11

4-25-2011 Poss

9    AND THEY HAVE CITED ME AUTHORITY SAYING THAT I CAN AND

10   SHOULD IMPOSE AN APPEAL BOND IN A SITUATION LIKE THAT.

11   SO INDEED WE'RE ARGUING THE MERITS, AND YOUR OPPOSITION

12   IS BEREFT OF ANY AUTHORITY OR DISCUSSION OF THE MERITS.

13   YES, INDEED, WE'RE TALKING ABOUT THE --

14       MR. PALMER:  IT SHOULDN'T HAVE ANYTHING TO DO WITH

15   THE MERITS.  IN FACT, WE CITED CASES IN -- AZIZIAN SAYS

16   THE MERITS HAVE TO BE LEFT TO THE COURT ABOVE.

17       THE COURT:  YEAH.

18       MR. PALMER:  NOT HERE.

19       THE COURT:  AND THERE ARE OTHER CASES THAT THEY

20   HAVE CITED THAT HOLD TO THE OPPOSITE.  WE HAVE A

21   COMPETING LINE OF CASES.

22       MR. PALMER:  OKAY.  SO LET ME MOVE TO THE QUESTION

23   OF THE BOND.  BECAUSE I WILL TELL YOU THAT IN THIS CASE

24   THE RECORD IS GOING TO BE RELATIVELY SMALL.  THEIR

25   RECOVERABLE COSTS ON APPEAL ARE FAIRLY SMALL.  AND IF

26   IT'S REALLY IMPORTANT, I WILL GIVE THEM $2,500 TO PUT IN

27   THEIR TRUST FUND TO HOLD FOR THAT REASON.  BUT THAT'S

28   ABOUT ALL --

                                                13


1        THE COURT:  BUT WHAT ABOUT THE FACT THAT THE

2    MEMBERS OF THE CLASS ARE GOING TO BE HELD UP ON THIS

3    SETTLEMENT AND THAT THE CLASS ADMINISTRATOR HAS BEEN

4    FROZEN, HE CAN'T DO ANYTHING?

5        MR. PALMER:  THERE'S NO AUTHORITY WHATSOEVER TO

6    SUGGEST THAT AN APPEAL BOND SHOULD COVER ANYTHING EXCEPT

7    THE ITEMS LISTED IN CRC8.278.

8        MR. GOSHGARIAN:  YOUR HONOR, I THINK THAT THE

9    COURT HAS SEEN OUR CASES.  THE COURT CAN SEE RIGHT

Page 12

4-25-2011 Poss

10   THROUGH WHAT IS GOING ON HERE.

11        THE COURT:  OH, IT'S CLEAR WHAT IS GOING ON.  IT'S

12   CLEAR THE QUESTION IS WHETHER I CAN DO ANYTHING ABOUT

13   IT.

14        MR. GOSHGARIAN:  ABSOLUTELY YOU CAN.

15        THE COURT:  BUT WHAT YOU SAY IN YOUR PAPERS, AS

16   FAR AS I'M CONCERNED, IS ABSOLUTELY TRUE.  EVERY WORD.

17        MR. GOSHGARIAN:  THIS COURT HAS THE DISCRETION AND

18   THE ABILITY TO STOP THIS NONSENSE.  THAT'S WHAT HAS TO

19   HAPPEN.  THIS COURT HAS THE AUTHORITY TO --

20        THE COURT:  MR. GOSHGARIAN.  I DON'T KNOW.

21        MR. GOSHGARIAN:  WE HAVE TO PROTECT THE CLASS.

22        THE COURT:  THIS IS ONE OF THOSE CASES -- AND

23   EVERY JUDGE GETS ONE AND WE'VE SEEN MOVIES MADE ABOUT

24   THEM WHERE, YOU KNOW, THE JUDGE WOULD LIKE TO DO

25   SOMETHING WHICH THE JUDGE WOULD REGRET LATER ON BECAUSE

26   IT LOOKS LIKE A HORRIBLE INJUSTICE IS IN PROGRESS.  BUT

27   QUERY UNDER THE LAW CAN THE JUDGE DO IT?  AND THAT'S

28   WHERE I'M STRUGGLING.  I ABSOLUTELY AGREE WITH YOU THAT

14

1    THIS OBJECTION WAS DONE FOR A VERY IMPROPER PURPOSE.  IT

2    LOOKS TO ME ON THE FACE OF IT AS IF IT'S AN ABUSIVE

3    PROCESS.  I MEAN, IT LOOKS TORTUOUS, TO BE FRANK WITH

4    YOU.

5         MR. GOSHGARIAN:  WE AGREE.

6         MR. POMERANCE:  I THINK YOUR HONOR THERE'S ENOUGH

7    CASE AUTHORITY IN THE FEDERAL COURTS TO CERTAINLY GIVE

8    YOUR HONOR COMFORT THAT YOU ARE NOT STRIKING OUT ON

9    SOMETHING THAT'S JUST COMPLETELY CRAZY.  I THINK UNDER

10   CALIFORNIA --

Page 13

4-25-2011 Poss

11          THE COURT:  EVEN IF IT'S A LITTLE CRAZY, I HAVE TO

12   BE CAREFUL.

13          MR. POMERANCE:  NO, I DON'T THINK IT'S A LITTLE

14   CRAZY.  LOOK, OTHER COURTS HAVE DONE IT.  OTHER COURTS

15   HAVE ASSESSED BOND --

16          THE COURT:  STATE COURTS?

17          MR. POMERANCE:  FEDERAL COURTS.

18          THE COURT:  OKAY.

19          MR. POMERANCE:  OKAY.  BUT OTHER FEDERAL COURTS

20   HAVE ASSESSED BONDS OF HUNDREDS OF THOUSANDS OF DOLLARS

21   AGAINST MR. PALMER AND HIS PARTNER MR. SIEGEL.

22          MR. PALMER:  NO, NO, NO.  CAREFUL.

23          MR. POMERANCE:  SO THIS ISN'T OUTRAGEOUS; AND,

24   TWO, YOU HAVE THE AUTHORITY AND THE DUTY TO PROTECT THE

25   ABSENT CLASS MEMBERS.  OF THAT MUCH I'M SURE.

26          THE COURT:  WELL, I HAVE TO BE CAREFUL BECAUSE,

27   YOU KNOW, YOU'VE GIVEN ME A VERY LONG AND SORTED HISTORY

28   OF WHAT THESE PEOPLE HAVE BEEN DOING.  AND, YOU KNOW, I

                                                         15


1   READ THE OPINION FROM THE JUDGE IN MINNESOTA REFERRING

2   TO THE PARASITE FISH, AND I REMEMBER THERE WAS A SECOND

3   OPINION.  WHEN I READ THOSE --

4          MR. PALMER:  WITH ALL DUE RESPECT, YOUR HONOR,

5   THAT IS COMPLETELY IRRELEVANT.  WOULD YOU LIKE --

6          THE COURT:  MR. PALMER, IF YOU WOULD REFRAIN FROM

7   INTERRUPTING ME, WHICH YOU KNOW IS INAPPROPRIATE IN AN

8   ORAL ARGUMENT, MAYBE I WOULD HAVE SAID SOMETHING THAT

9   COULD HAVE HELPED YOU OUT.  OKAY?  BUT NOW YOU HAVE

10   BROKEN MY TRAIN OF THOUGHT.

11          MR. KELLER:  YOUR HONOR, COULD I JUST SAY, YOU

                        Page 14

4-25-2011 Poss

12  RAISE THE QUESTION OF THE APPEAL BEING SUCCESSFUL,

13  COMING BACK DOWN AND MAYBE 21ST CENTURY WOULD MODIFY THE

14  SETTLEMENT.  AS MR. POMERANCE HAS SAID, NOT A CHANCE.

15  WE'VE FOUGHT THIS THING FOREVER.  WHILE THERE WAS NO

16  PETITION FOR A HEARING TO THE SUPREME COURT, EVERYBODY

17  AND THEIR BROTHER FILED A PETITION FOR DE-PUBLICATION.

18        THE COURT:  OH, I REMEMBER THAT.

19        MR. KELLER:  YES.  HARVEY ROSENFIELD LINED UP THE

20  WORLD.  I GOT TIRED -- I FINALLY STARTED WRITING LETTERS

21  SAYING, YOU KNOW, I REPRESENT 21ST CENTURY TO THE

22  SUPREME COURT.  HAVING GONE THROUGH THAT PROCESS, THIS

23  IS IT.  WE'RE HONORING THE SETTLEMENT.  WE CUT A DEAL.

24        THE COURT:  BUT WHAT HAPPENS?  WHAT HAPPENS?  IF

25  MR. PALMER WINS ON THE ATTORNEY FEE ISSUE AND BACK IT

26  COMES WITH A REQUEST AND THE REQUIREMENT THAT THEY GIVE

27  THE CLASS FULL NOTICE, IF YOU WILL, OF THE FEE

28  APPLICATION, I MEAN, WHAT DO YOU DO?  AT THAT POINT DO

16

1  YOU SAY "I'M SORRY.  WE HAVE NO DEAL?"  IT ONLY CAN HELP

2  YOU.  BECAUSE IF I FIND THE FEES ARE TOO HIGH, I'M GOING

3  TO CUT THEM AND YOU ARE GOING TO DO BETTER THAN YOU DID.

4        MR. KELLER:  I SUSPECT THAT AT BEST IT WOULD BE A

5  WASH; THAT WHEN WE GET DONE WITH RUST SENDING NOTICE TO

6  ALL OF THESE PEOPLE, I'M JUST ASSUMING THAT YOU ARE NOT

7  WHACKING IT IN HALF OR SOMETHING; THAT IF THERE WAS

8  ANY --

9        THE COURT:  I MEAN, RUST WOULD HAVE TO SEND OUT

10  ANOTHER NOTICE.  THERE'S NO QUESTION ABOUT IT.

11        MR. KELLER:  YEAH.  I DON'T, FRANKLY, KNOW THE

12  ANSWER ON THE ATTORNEY FEE.  BUT IN TERMS OF IN ANY WAY

Page 15

4-25-2011 Poss

13    MODIFYING SOMETHING THAT WOULD HELP THE CLASS, THAT IS

14    MORE MONEY TO THE CLASS, THAT'S NOT GOING TO HAPPEN.

15         MR. GOSHGARIAN:  AND, YOUR HONOR, NOT TO

16    INTERRUPT.

17         MR. KELLER:  I'M DONE.

18         MR. GOSHGARIAN:  THE NOTION THAT THE CLASS DIDN'T

19    GET NOTICE IS FALSE.  THE NOTION THAT THE MOTION WASN'T

20    ON FILE PURSUANT TO THIS COURT'S ORDER AND THIS COURT'S

21    BRIEFING SCHEDULE IS FALSE.  THE NOTION THAT WE ARE

22    SOMEHOW REQUIRED TO COMPLY WITH RULE 23(H) IS FALSE.

23         THE COURT:  AND 23(H) SAYS...

24         MR. GOSHGARIAN:  FIRST OF ALL, 23(H) DOESN'T EVEN

25    STATE WHAT THESE OBJECTORS HAVE STATED IT STATES.  BUT

26    THAT'S NOT REQUIRED IN CALIFORNIA.  THIS COURT SET ITS

27    OWN BRIEFING SCHEDULE, WHICH IT HAS THE DISCRETION TO

28    DO.  THIS COURT REVIEWED AND ANALYZED OUR FEES.  THE

17

1    CLASS HAD NOTICE OF OUR FEE REQUEST FOR MONTHS.  THE

2    MOTION ITSELF WAS ON FILE.  THE OBJECTORS HAD IT IN

3    THEIR HANDS.  THE OBJECTORS DIDN'T FILE ANY MORE PAPERS.

4    THE OBJECTORS DIDN'T EVEN MAKE A PHONE CALL TO THIS

5    COURT.  THE OBJECTORS DIDN'T APPEAR.  NOW THERE'S

6    540,000 PEOPLE THAT THESE OBJECTORS ARE HOLDING HOSTAGE

7    AND WHAT THEY ARE DOING IS WRONG.  THIS COURT HAS THE

8    POWER.

9         THE COURT:  HAVE YOU NOTIFIED THE STATE BAR ABOUT

10    THIS?

11         MR. GOSHGARIAN:  NO.

12         MR. POMERANCE:  WE HAVE NOT DONE THAT YET, NO.

13         MR. GOSHGARIAN:  THIS COURT HAS THE POWER TO DO

Page 16

4-25-2011 Poss

14   WHAT WE'RE ASKING IT TO DO.  WHATEVER HAPPENS IN THE

15   FUTURE WILL HAPPEN.  BUT THESE CLASS MEMBERS NEED TO BE

16   PROTECTED FROM THESE OBJECTORS.  THIS IS WRONG.  WE NEED

17   TO STAND UP AND SAY IT'S WRONG.  AND IF THE COURT OF

18   APPEALS WANTS TO SAY THAT WHAT THEY ARE DOING IS RIGHT,

19   LET THEM SAY IT.  THEY ARE NOT GOING TO DO THAT.

20           THEY ARE GOING TO SAY THE SAME THING THAT

21   THE OTHER COURTS HAVE SAID, WHAT THIS COURT HAS SAID.

22   THIS COURT KNOWS ABOUT THIS PARTICULAR SETTLEMENT.

23   WE'VE BEEN HERE FOR TEN LONG YEARS.  WE'VE GOT A

24   FANTASTIC RESULT.  THIS IS NOT COMING BACK; THIS IS NOT

25   COMING BACK.  OUR FEES ARE NOT GOING TO GET CUT.

26       THE COURT:  HAVE THEY TRIED TO NEGOTIATE WITH YOU

27   ON THIS?  ACCORDING TO YOU, THAT --

28       MR. GOSHGARIAN:  I HAVEN'T SPOKEN TO THEM.

18

1   MR. POMERANCE HAS.

2       MR. POMERANCE:  NO.

3       MR. PALMER:  MAY I SPEAK.

4       THE COURT:  YES.  GO AHEAD.

5       MR. PALMER:  I THINK IT'S SO UNFAIR THAT YOU ARE

6   MAKING THAT SORT OF ASSUMPTION.

7       THE COURT:  WHAT ASSUMPTION?

8       MR. PALMER:  THAT WE'RE HERE FOR SOME ILLICIT OR

9   UNETHICAL PURPOSE.

10       THE COURT:  COUNSEL, THE CIRCUMSTANTIAL EVIDENCE

11   IS OVERWHELMING.  NOW, THE PROBLEM I HAVE IS I DON'T

12   WANT ANY BOND ORDER I MAKE OR ANYTHING I DO TO PUNISH

13   YOU FOR PAST CONDUCT.  IT'S LIKE THERE'S AN OLD CASE

14   CAROL RICHARDS VERSUS SUPERIOR COURT, WHICH SAYS YOU

Page 17

4-25-2011 Poss

15    DON'T SANCTION COUNSEL FOR PRIOR CONDUCT.

16          IF YOU IMPOSE A SANCTION, YOU SANCTION THE

17    CONDUCT THAT IS BEFORE THE COURT.  AND BEFORE YOU

18    INTERRUPTED ME, THAT'S WHERE I WAS GOING.  OKAY?  SO I'M

19    NOT GOING TO SIT HERE AND SAY I'M IMPOSING A BOND

20    BECAUSE I DON'T LIKE WHAT YOU'VE DONE IN A NUMBER OF

21    EARLIER CASES.

22          ON THE OTHER HAND, I CANNOT SHIELD MY EYES

23    FROM THAT.  OKAY?  THERE IS A HISTORY HERE, AND THE

24    HISTORY IS NOT ONE THAT YOU SHOULD BE PROUD OF.  AND THE

25    QUESTION BECOMES NOT WHAT HAPPENED IN THOSE CASES BUT

26    WHAT IS GOING ON IN THIS PARTICULAR CASE.

27          NOW, ONE THING IN YOUR FAVOR.  WHEN I LOOK

28    AT -- I THINK IT WAS -- IT WAS ONE OF THE CASES THAT YOU

                                                          19


1     CITED WHERE A BOND WAS IMPOSED.  I THINK IT WAS OUT OF

2     WISCONSIN.

3          MR. PALMER:  WELL, WE CITED THE COMMENTS FROM A

4     WISCONSIN JUDGE, BUT WE CITED VULNER.

5          THE COURT:  OKAY.  WELL, THERE WAS A JUDGE WHO

6     SAID, "LOOK, THE OBJECTION GAVE NO GROUNDS WHATSOEVER."

7     AND THAT WAS ONE OF THE REASONS THE JUDGE FOUND THE

8     APPEAL TO BE FRIVOLOUS.  THIS OBJECTION IS DETAILED.  IT

9     GIVES FOREGROUND AND IT ARTICULATES THEM FAIRLY WELL.

10    SO THAT'S THE DISTINGUISHING POINT THAT I HAVE TO THINK

11    ABOUT.

12          MR. GOSHGARIAN:  CAN I MAKE --

13          THE COURT:  NOW, I HAVE TO BE VERY CAREFUL OF

14    SAYING I KNOW THE APPEAL IS FRIVOLOUS BECAUSE OBVIOUSLY,

15    YOU KNOW, SOMEBODY LOOKING IN FROM THE OUTSIDE COULD

                           Page 18

4-25-2011 Poss

16    SAY, "WELL, NATURALLY THE TRIAL JUDGE HAS A STAKE IN

17    THIS.  HE DOESN'T WANT TO GET REVERSED.  HE'S GOING TO

18    CALL THE APPEAL FRIVOLOUS."  SO I HAVE TO BE VERY

19    CAREFUL ABOUT THAT.

20           MR. GOSHGARIAN:  CAN I MAKE A SUGGESTION?

21           THE COURT:  YES.

22           MR. GOSHGARIAN:  IF YOU LOOK AT OUR MOTION --

23           THE COURT:  I HAVE.

24           MR. GOSHGARIAN:  WE TOOK A LOT OF TIME AND EFFORT

25    TO DETERMINE WHAT AMOUNT OF THE BOND SHOULD BE IMPOSED.

26           THE COURT:  BUT I'M NOT THERE YET.  I'M TALKING

27    ABOUT SHOULD I IMPOSE THE BOND, ASSUMING I EVEN HAVE THE

28    AUTHORITY.  THIS IS A DISCRETIONARY ACT OF THIS COURT.

20

1            MR. GOSHGARIAN:  OF COURSE IT'S DISCRETIONARY.

2            THE COURT:  AND I HAVE TO REALLY THINK LONG AND

3     HARD ABOUT IT.  THERE'S A LOT OF ABSENCE OF LAW AND I

4     HAVE TO FIGURE OUT WHAT IS THE LAW.  REMEMBER WHEN YOU

5     THINK ABOUT WHAT A LAW SHOULD BE, IMAGINE THE LAW IN THE

6     HANDS OF YOUR ENEMIES.  AND IF A TRIAL JUDGE HAS THE

7     AUTHORITY TO IMPOSE A BOND BECAUSE AN APPEAL IS

8     FRIVOLOUS, THE WRONG TRIAL JUDGE IS GOING TO IMPOSE A

9     WHOPPING BOND IN A CASE WHERE THE JUDGE JUST DOESN'T

10    WANT TO BE REVERSED EVEN THOUGH THE JUDGE MAY KNOW IN

11    HIS HEART OF HEARTS THE APPEAL IS VERY GOOD.  AND, YOU

12    KNOW, QUERY DO WE WANT THAT LAW IN CALIFORNIA?  THE

13    ANSWER IS THERE'S SOME DANGER.

14           MR. GOSHGARIAN:  OBVIOUSLY.  BUT HERE IS WHAT I'M

15    GOING TO SUGGEST.

16           THE COURT:  YEAH.

Page 19

4-25-2011 Poss

17        MR. GOSHGARIAN:  THE BOND THAT IS BEING REQUESTED,

18   IF THE COURT EXERCISES ITS DISCRETION TO IMPOSE A BOND,

19   WHICH WE URGE THE COURT TO DO, DOES NOT TAKE INTO

20   ACCOUNT ANY ATTORNEY'S FEES.  THAT'S PUT ASIDE.  IT'S

21   SIMPLY TO PROTECT THE CLASS.  THE CLASS RELIEF.  IF THE

22   ATTORNEY'S FEES GO TO ZERO, MR. POMERANCE AND I WORKED

23   FOR TEN YEARS FOR NOTHING, THE AMOUNT THAT WE'VE

24   REQUESTED IS SOLELY DESIGNED TO PROTECT THE CLASS.

25   THAT'S IT.

26        THE COURT:  NO, I UNDERSTAND THAT.

27        MS. RUBEL:  YOUR HONOR --

28        THE COURT:  ALL RIGHT.  GO AHEAD, MR. PALMER.

                                                    21

1        MR. PALMER:  ALL RIGHT.  I DON'T DISPUTE THAT YOU

2   HAVE THE AUTHORITY TO IMPOSE A BOND, YOUR HONOR.  THAT'S

3   NOT A QUESTION.  I AM VERY WORRIED ABOUT THE COURT'S

4   INDICATION THAT YOU ARE RELYING ON UNSUBSTANTIATED

5   HEARSAY EVIDENCE THAT IS SO ARGUMENTATIVE THAT IT'S

6   OBSCENE TALKING ABOUT HISTORY AND THINGS IN OTHER CASES.

7   AND I DID NOT ADDRESS THAT BECAUSE, ONE, IT'S

8   IRRELEVANT; TWO, IT'S TOTALLY INADMISSIBLE HEARSAY.

9   AND, THREE, I'VE BEEN HERE BEFORE, AND I JUST DIDN'T

10   THINK THAT WOULD SWAY YOU.

11        BUT IF YOU WOULD LIKE TO HEAR A RESPONSE TO

12   THAT, EVEN THOUGH I THINK IT'S IRRELEVANT, I CAN TELL

13   YOU ABOUT ALL THE CASES THAT I'VE MADE SUBSTANTIAL

14   IMPROVEMENTS IN THIS PROCESS IN INCLUDING ENRON,

15   RODRIGUEZ VERSUS WEST.  AND, IN FACT, IN THAT CASE, I

16   THINK IF THIS CASE CAME BACK, YOU WOULD HAVE TO

17   CAREFULLY CONSIDER AS TO WHETHER OR NOT THE RULE IN

                          Page 20

Exhibit B
Page  35

4-25-2011 Poss

18    RODRIGUEZ WOULD PROHIBIT ANY AWARD OF ATTORNEY'S FEES.

19         BUT I'M NOT PREPARED TO ARGUE THAT TODAY.

20    BUT I WILL TELL YOU THIS, YOUR HONOR.  IN TERMS OF THE

21    SETTLEMENT TO THE CLASS, I WILL SAY ON THE RECORD WE'RE

22    NOT GOING TO APPEAL THAT.  AND, IN FACT, AS FAR AS I'M

23    CONCERNED, THAT PART COULD BE DISPERSED.  WHAT WE'RE

24    APPEALING --

25         THE COURT:  WAIT, WAIT.  OKAY.  SO TELL ME WHAT

26    YOU'RE APPEALING?

27         MR. PALMER:  WE'RE APPEALING THIS QUESTION OF

28    NOTICE TO THE CLASS TO THE ATTORNEY'S FEES.  I'VE SAID

                                                    22

1     THIS TO MR. POMERANCE.  I'VE TRIED TO BE CRYSTAL CLEAR.

2          THE COURT:  SO THE OTHER THREE GROUNDS ARE

3     BASICALLY GOING TO BE ABANDONED?

4          MR. PALMER:  THAT'S RIGHT.

5          MR. POMERANCE:  IT STILL DOESN'T CHANGE ANYTHING.

6     UNDER THE AGREEMENT NOTHING CAN HAPPEN IN THE SETTLEMENT

7     IF THERE'S AN APPEAL PENDING.  WE DON'T KNOW WHAT THE

8     COURT OF APPEAL IS GOING TO DO.  IT MIGHT LOOK AT

9     SOMETHING ELSE.

10         MR. GOSHGARIAN:  EVEN MORE IMPORTANT.

11         MR. POMERANCE:  IT'S STILL -- HE CAN'T CONTROL

12    WHETHER THE CLASS GETS BENEFITS BY TAILORING HIS APPEAL.

13    THERE'S STILL A HOLD UP.

14         THE COURT:  LET ME DO THIS.  COUNSEL, I'VE GOT A

15    TRIAL IN THE MIDST.  I'M ALREADY LATE FOR IT.  WHAT I

16    WOULD LIKE TO DO -- YOU CAN DO ONE OF TWO THINGS.  YOU

17    CAN COME BACK, OR IF YOU WANT, I'LL GIVE YOU LIKE 10 OR

18    14 DAYS TO FILE CLOSING BRIEFS ON ANY MATTER YOU WANT TO

                              Page 21

4-25-2011 Poss

19   FILE THEM ON AND THEN I'LL TAKE THE MATTER UNDER

20   SUBMISSION.  WHAT'S YOUR PLEASURE?

21        MR. GOSHGARIAN:  WE'LL COME BACK THIS AFTERNOON.

22        THE COURT:  NO, NO, NO.  I'M IN TRIAL ALL DAY.

23        MR. GOSHGARIAN:  OKAY.  WHATEVER IS THE COURT'S

24   PLEASURE.  IF THE COURT WOULD THINK IT WOULD BE MORE

25   HELPFUL TO BE HERE OR FILE CLOSING ARGUMENTS.

26        THE COURT:  I TEND TO THINK A CLOSING BRIEF WOULD

27   BE BETTER.  AND IF THEN I WANT ANOTHER HEARING, WE'LL

28   CALL YOU AND ASK YOU IN.  OTHERWISE, I'LL JUST TAKE IT

23

1    UNDER SUBMISSION.  HOW MUCH TIME WOULD YOU LIKE?

2         MR. POMERANCE:  WHATEVER IS THE COURT'S

3    PREFERENCE.

4         MR. GOSHGARIAN:  A WEEK.

5         THE COURT:  MAKE IT EASY ON YOURSELVES.

6         MR. GOSHGARIAN:  WE WOULD LIKE TO GET IT DONE AS

7    QUICKLY AS POSSIBLE.

8         THE COURT:  OKAY.  LET'S SAY 10 DAYS.

9         MR. PALMER:  TEN DAYS WOULD BE GREAT.

10        THE COURT:  ALL RIGHT.  TEN DAYS FILE BRIEFS ON

11   ANY TOPIC YOU WANT.  DON'T MAKE IT TOO LONG, PLEASE.

12   MAYBE 15 PAGES MAX.  AND THEN THE MATTER WILL STAND

13   SUBMITTED.  THANK YOU ALL VERY MUCH.

14        IN UNISON:  THANK YOU, YOUR HONOR.

15

16             (THE PROCEEDINGS WERE CONCLUDED.)

17                        -oOo-

18

19

Page 22

4-25-2011 Poss

20
21
22
23
24
25
26
27
28

♀

1           SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              FOR THE COUNTY OF LOS ANGELES

3

DEPARTMENT 309              HON. ANTHONY J. MOHR, JUDGE
4

5   DANA POSS,                    )
                                  )
6           PLAINTIFF,            )   NO. BC297438
                                  )
7       VS.                       )
                                  )
8   21ST CENTURY INSURANCE        )   REPORTER'S
    COMPANY                       )   CERTIFICATE
9                                 )
            DEFENDANT.            )
10  _____)

11

12

13       I, CLAUDIA VECCHI-CORTEZ, OFFICIAL REPORTER OF THE

14   SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE

15   COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT I DID

16   CORRECTLY REPORT THE PROCEEDINGS CONTAINED HEREIN AND

17   THAT THE FOREGOING PAGES 1 THROUGH 23, INCLUSIVE,

18   COMPRISE A FULL, TRUE, AND CORRECT TRANSCRIPT OF THE

19   PROCEEDINGS AND TESTIMONY TAKEN IN THE MATTER OF THE

20   ABOVE-ENTITLED CAUSE ON MONDAY, APRIL 25, 2011.

Page 23

4-25-2011 Poss

21

22          DATED THIS  14TH DAY OF JUNE, 2011.

23

24

25                         ____

26          CLAUDIA VECCHI-CORTEZ, CSR NO. 11630
                    OFFICIAL REPORTER

27

28


1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT 309          HON. ANTHONY J. MOHR, JUDGE

4

5    DANA POSS,                )
                               )
6              PLAINTIFF,      )    NO. BC297438
                               )
7         VS.                  )
                               )
8    21ST CENTURY INSURANCE    )
     COMPANY                   )
9                              )
               DEFENDANT.      )
10   _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14              MONDAY, APRIL 25, 2011

15

16   APPEARANCES:

17   FOR PLAINTIFF:      ROXBOROUGH POMERANCE NYE & ADREANI
                         BY:  DREW E. POMERANCE, ESQ.
18                       5820 CANOGA AVENUE, SUITE 250
                         WOODLAND HILLS, CALIFORNIA 91367
19
                              -AND-
20
                         GOSHGARIAN & MARSHALL
21                       BY:  MARK GOSHGARIAN, ESQ.
                         23901 CALABASAS ROAD, SUITE 2073
                              Page 24

```
                              4-25-2011 Poss
   22                         CALABASAS, CALIFORNIA 91302

   23      FOR DEFENDANT:     BARGER & WOLEN LLP
                              BY:  KENT R. KELLER, ESQ.
   24                         633 WEST FIFTH STREET
                              FORTY-SEVENTH FLOOR
   25                         LOS ANGELES, CALIFORNIA 90071

   26
                         (APPEARANCES CONTINUED ON NEXT PAGE.)
   27

   28                     CLAUDIA VECCHI-CORTEZ, CSR NO. 11630
                                  OFFICIAL REPORTER


    1    APPEARANCES OF COUNSEL (CONTINUED):

    2    FOR OBJECTOR/APPELLANT
         PICCIONELLI AND AMAYA:
    3
                                  LAW OFFICES OF DARRELL PALMER
    4                             BY:  DARRELL PALMER, LL.M.
                                  603 NORTH HIGHWAY 101, SUITE A
    5                             SOLANA BEACH, CALIFORNIA 92075

    6                                     -AND-

    7                             LAW OFFICES OF KIRA M. RUBEL
                                  BY:  KIRA M. RUBEL, ESQ.
    8                             4041 MACARTHUR BOULEVARD
                                  SUITE 350
    9                             NEWPORT BEACH, CALIFORNIA 92660

   10

   11

   12

   13

   14

   15

   16

   17

   18

   19

   20

   21

   22
```

Exhibit B
Page   40