Brett L. Gibbs, Esq. (SBN 215000)
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900

*Attorney for Objector,
Padraigin Browne*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re GROUPON MARKETING AND SALES PRACTICES LITIGATION <br><br> ——————————————————— <br><br> Padraigin Browne, <br><br> *Objector.* | No. 3:11-md-02238-DMS-RBB <br><br> **CLASS ACTION** <br><br> **REPLY TO SETTLING PARTIES' RESPONSES TO OBJECTIONS TO SETTLEMENT APPROVAL AND MOTION FOR ATTORNEY'S FEES** <br><br> Judge: Hon. Dana M. Sabraw <br> Date:  Sept. 7, 2012 <br> Time: 1:30 PM |

## INTRODUCTION

As argued in the initial Objection of Padraigin Browne to Proposed Settlement and Proposed Attorneys' Fee Award ("Browne Objection") (Dkt. No. 57) filed on July 6, 2012, the Proposed Settlement and Class Counsel's motion for an award of attorney's fees represent a manifest injustice to the class members. Before the Court is a mixed coupon settlement, negotiated alongside attorney's fees, which would violate the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1712. *See* Browne Objection (Dkt. No. 57), at 3–8. The Settling Parties have not, and cannot, meet their burden to show the fairness, reasonableness, and adequacy of a Proposed Settlement which would distribute

literally worthless Settlement Vouchers to class members while establishing (1) a circuitous claims process to discourage valid cash claims, (2) a "Second Settlement Fund" to revert the unclaimed cash for reimbursement of Groupon's continuing business expenses, and (3) largely redundant injunctive provisions. *See id.* at 8–14. The Settling Parties ignore the existence of individualized reliance issues based on state consumer protection laws which should prevent the certification of this settlement class and approval of the overbroad class release. *See id.* at 14–15. And Class Counsel cannot justify its request for immediate and excessive attorney's fees—whether by reference to a "settlement fund" that is mostly unrelated to class relief and that includes an indeterminate *cy pres* fund in contravention of CAFA, or by reference to a lodestar amount based on block billing, quarter-hour billing, and inadequate results. *See id.* at 15–24.

The Settling Parties have submitted responses to the Browne Objection, as well as to the objections of other aggrieved class members to final approval of the settlement and of the motion for attorney's fees. *See* Joint Response to Objections to Final Approval of Class Action Settlement ("Settlement Response") (Dkt. No. 76); Pl.'s Response to Objections to Their Mot. for an Award of Atty.'s Fees, Reimbursement of Expenses and Incentive Award Payments ("Attorney's Fees Response") (Dkt. No. 77). In compliance with Local Civil Rules 7.1(e)(3) and 7.1(h), and by and through her attorney, Objector Padraigin Browne respectfully submits this reply brief of points and authorities.

### I. THE SETTLING PARTIES' ERRONEOUS PORTRAYAL OF THE OBJECTOR AND HER COUNSEL AS "SERIAL" OR "PROFESSIONAL" OBJECTORS SHOWS A CARELESS DISREGARD FOR THE TRUTH

The Settling Parties apparently believe that by portraying Ms. Browne and her counsel as "serial objectors," they can convince the Court to attribute less weight to her arguments. In truth, neither Ms. Browne nor her counsel is a "serial" or "professional" objector. Furthermore, even if the Settling Parties' portrayal was not absolutely false, they cite no authority which could justify adding or subtracting weight from the substantive arguments of an objector or his/her counsel based on their history in unrelated cases. Far from showing that the Court should attribute less weight to the

arguments of Ms. Browne, the Settling Parties demonstrate their inability to defend the Proposed Settlement without descending into *argumentum ad hominem*.

The Settling Parties adopt an eccentric practice of referring consistently to Ms. Browne's counsel in their briefs, rather than to Ms. Browne herself. *See* Settlement Response (Dkt. No. 76), at 5; Attorney's Fees Response (Dkt. No. 77), at 1 fn.3, 3, 5–6, 6 fn.9, 7–11 (describing counsel as a "ghostwriter" for "serial objector Paul Hansmeier" and referring repeatedly to a "Gibbs Objection" and "professional objector Gibbs"). However, the Objector is Ms. Padraigin Browne, an aggrieved member of the class. Her interests, and the interests of other class members like Ms. Browne, are at issue here, not the history of her counsel. These attempts at prejudicing the Court should be ignored.

More to the point, however, the Settling Parties' representations on this count simply could not be further from the truth. Ms. Browne, the Objector, has *never* objected to any class action settlement before filing her objection in this matter. Her counsel, Mr. Gibbs, has *never* filed an objection to a class action settlement on behalf of himself or any client in any court prior to filing Ms. Browne's objection in this matter. Mr. Hansmeier, another attorney representing Ms. Browne, has also *never* filed an objection on behalf of himself or any client in any court. Furthermore, Mr. Hansmeier's contact with Mr. Stoia on July 2, 2012 was for the sole purpose of informing counsel of Ms. Browne's serious objections to the proposed settlement and to inquire whether counsel would have substantive responses to Ms. Browne's concerns. *See* Decl. of John J. Stoia (Dkt. No. 76-1). If writing and filing a single objection to this Proposed Settlement is enough to classify Ms. Browne, Mr. Gibbs and Mr. Hansmeier as "professional objectors," as the Settling Parties insist, the term is simply without any meaning. In their haste to tar the Objector and her counsel with a supposedly pejorative term, the Settling Parties have betrayed a fundamental disregard for the facts. Objector's counsel would put class counsel to its proof of identifying a *single* prior objection filed by Ms. Browne, Mr. Gibbs or Mr. Hansmeier. If the Settling Parties are unable to do so, then Objector would hope that counsel for Settling Parties will fulfill their duty as officers of the court and correct their material misrepresentations, and maybe eventually stop all attempts at intimidating consumers simply trying to stand up for their rights.

Even assuming, for the sake of argument, that "serial" or "professional" Objectors had filed objections to the Proposed Settlement, there is no legal authority to support the proposition that a court should discount the arguments of such Objectors. The Settling Parties make reference to similar complaints made by plaintiffs' counsel in *True v. American Honda Motor Co., Inc.*, and have attached that brief as Exhibit D to the Declaration of John J. Stoia. *See* Settlement Response (Dkt. No. 76), at 5; Decl. of John J. Stoia, Ex. D (Dkt. No. 76-5). However, what the Settling Parties fail to mention to the Court is that these same *ad hominem* arguments were, in fact, roundly rejected by the Honorable Judge Phillips of the U.S. District Court for the Central District of California. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079–80 (C.D. Cal. 2010). In response to plaintiffs' attacks on the history of objectors' counsel, Judge Phillips wrote that "[t]his has no greater bearing on the merits of the objections raised than a plaintiffs' counsel's experience in filing class action suits speaks to the merits of the claims he brings." *Id.* at 1079. That court denied final approval of the settlement as well as denying the plaintiffs' motion for attorney's fees. *Id.* at 1082–83. The Seventh Circuit has similarly rejected pejorative applications of the term "professional" in the context of objections. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional' is a dirty word. It implies experience, if not expertise."). This Court should follow the authority supporting equal treatment of the persons before it, and reject the Settling Parties' attempt to distract the Court from the substantive issues with pervasive *argumentum ad hominem*.

## II. THE PROPOSED SETTLEMENT HAS ALL THE FEATURES OF, AND MUST BE EVALUATED AS, A MIXED COUPON SETTLEMENT UNDER THE CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1712

The Settling Parties argue strenuously that the Proposed Settlement is not a coupon settlement and should not fall within the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712, based on an unnaturally restrictive definition of the term "coupon." This argument should be rejected, and the Proposed Settlement and motion for attorney's fees should be evaluated as a mixed coupon settlement, a category defined by Congress specifically for settlement terms which, as here, combine coupon relief with other forms of relief. *See* 28 U.S.C. § 1712(c).

The Settling Parties argue that CAFA requires a strict definition of "coupon" as "a discount for a product or service requiring Class Members to spend additional money to realize a benefit." Attorney's Fee Response (Dkt. No. 77), at 9. No such requirement exists. CAFA itself does not define the term "coupon," but in the section of CAFA titled "Findings and Purposes," Congress specified that it passed CAFA into law because "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed, such as where . . . counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." Class Action Fairness Act of 2005, Pub. L. No. 109-2, §2, 119 Stat. 4, 4–5 (codified in scattered sections of 28 U.S.C.) (Findings and Purposes). Congressional emphasis was thus on class "relief" with little or no value, rather than specifically on those limited situations where class members must spend additional money, as the Settling Parties claim.

Further, while the Settling Parties cite only two unreported cases which interpreted CAFA's coupon provisions in this uniquely restrictive way, they fail to disclose that many other courts have applied a much broader definition of "coupons" as in-kind compensation, including the kind of settlement vouchers proposed here. For example, in *Parker v. Time Warner Entertainment Co.*, the district court found that, where the primary relief included a choice between one free month of any Time Warner Cable service to which the customer did not currently subscribe, two free movies on demand, or a $5 check, "the services benefits are almost certainly coupons under CAFA," though the action was commenced prior to the statute's passage. 631 F. Supp. 2d 242, 249–50, 266–67 (E.D.N.Y. 2009). Further, in *In Figueroa v. Sharper Image Corp.*, the district court found the proposed settlement to be "nothing more than a coupon settlement" where the primary relief was "a $19 merchandise credit, valid for one year, for use at Sharper Image retail stores on Sharper Image branded products." 517 F. Supp. 2d 1292, 1297, 1329 (S.D. Fla. 2007). And in *In re Excess Value Insurance Coverage Litigation*, the district court applied CAFA where the primary relief was a "voucher program" issuing vouchers that could be redeemed in exchange for United Parcel Service, Inc. ("UPS") services; these vouchers varied between a face value of $5 and $8,000 based on the class member's former business with UPS. *See* 598 F. Supp. 2d 380, 387 (S.D.N.Y. 2005); No. M-

5
REPLY TO OBJECTION RESPONSES     CASE NO. 3:11-md-02238-DMS-RBB

21-84RMB, MDL-1339, 2004 WL 1724980, at *3 (S.D.N.Y. July 30, 2004). That court delayed class counsel's fee application "until experience shows how many vouchers are exercised and thus how valuable the settlement really is." 598 F. Supp. at 381. Each of these vouchers, redeemable for goods or services, is directly analogous to the Settlement Vouchers here, and the Court should follow the wealth of reasoning that supports the application of CAFA's mixed coupon settlement provisions here.

It is also important to note that other courts have found that even where certain forms of in-kind compensation share only some characteristics of coupons, heightened scrutiny based on CAFA is nevertheless justified. For example, in *Synfuel Technologies v. DHL Express (USA), Inc.*, the Seventh Circuit found that pre-paid Letter Express envelopes—even though they represented an entire product rather than a voucher or coupon—were "a form of in-kind compensation" close enough to coupons to undermine the court's confidence in the fairness of the settlement. 463 F.3d 646, 654 (7th Cir. 2006). Here, of course, the Settlement Vouchers are not entire products.

Finally, the Settling Parties cannot argue that the Settlement Vouchers are not coupons, even under their own unnaturally restrictive definition. The Settlement Vouchers will supposedly allow class members to redeem them for their original *purchase value*—not their promotional value—at the stores of the respective merchants. Unless, by some phenomenal coincidence of fate, every merchant has precisely-priced products or services which will allow every class member to redeem the purchase value of their Settlement Voucher without spending additional money, the Settlement Vouchers are coupons even under the Settling Parties' definition. This is obviously implausible. Consider, for example, that the original Groupon deals were marketed and sold based on the *promotional value* of the deal—which often was linked to the amount necessary to buy a specific product or service, such as a ski lift ticket or a guided tour of a major city. In such cases, redemption of the lesser purchase value provided by the Settlement Vouchers will be extremely likely to require the class member to spend additional money. In other words, there is simply no principled distinction between a Settlement Voucher for $25 redeemable at a Gap clothing store, like the Objector would receive if the Proposed Settlement were approved, and a coupon for $25 off a purchase at a Gap

clothing store. The Court must therefore analyze the Proposed Settlement as a mixed coupon settlement under CAFA—whether under the Settling Parties' restrictive definition of "coupon" or under an expanded definition, it makes no matter.

### III. THE SETTLING PARTIES FAIL TO ADDRESS MANY OF THE OBJECTOR'S MOST IMPORTANT CONCERNS WITH THE PROPOSED SETTLEMENT AND MOTION FOR ATTORNEY'S FEES

The Settling Parties, in their responses to objections, often lump the arguments of multiple objectors together, or respond to selected arguments on an issue while ignoring others. In doing so, the Settling Parties fail to address many of the Objector's most vital concerns about the fairness of the Proposed Settlement and the proposed award of attorney's fees. The Settling Parties' failure to address these substantive criticisms should weigh against approval of the Proposed Settlement and motion for attorney's fees.

The Settling Parties fail to explain how the Proposed Settlement can contain valuable in-kind and injunctive relief to the class when Groupon already promises its customers that their ability to redeem their Groupon vouchers for the purchase price will never expire. The Settling Parties argue extensively that the "Groupon Promise" does not make the supposed primary benefit of Settlement Vouchers provided to the class by the Proposed Settlement worthless, arguing that the "Groupon Promise" "is not a 'money-back guarantee.'" Settlement Response (Dkt. No. 76), at 8. The Settling Parties further argue that the injunctive relief is valuable, primarily because it will require "clarification of the expiration dates of the Purchase Price versus the separate Promotional Value on the face of all Groupon Vouchers" and that "the Purchase Price of Vouchers issued within three years of the Settlement will *never* expire." *Id.* at 13–14. What the Settling Parties wholly ignore is the Objector's argument that Groupon already makes well-publicized promises to its customers that duplicate the purchase-value-preservation function of both the Settlement Vouchers and the supposed injunctive relief. *See* Browne Objection (Dkt. No. 57), at 13. Even now, Groupon's website assures customers that "[i]f your Groupon's promotional value expires, you can always redeem it for the amount paid." *FAQ*, GROUPON.com, http://www.groupon.com/faq (last visited Aug. 31, 2012). The existence of this assurance in a prominent location on the Groupon website makes the provision

7

of "Settlement Vouchers" wholly redundant and the injunctive relief illusory both insofar as it affects customer notice and insofar as it affects the substantive preservation of purchase-value. The Court should take care to separate the false relief of already-implemented changes and guarantees from true substantive and injunctive relief. *See Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003).

The Settling Parties fail to truly explain how they can meet the predominance inquiry of settlement class certification. The Settling Parties argue in favor of certification of the class for settlement purposes, characterizing all objections to certification as arguing that the case "involves too many states' laws." Settlement Response (Dkt. No. 76), at 19. The Settling Parties' only response is to argue that manageability concerns are rendered moot by settlement. *See id.* at 19–20. However, the Objector argued against class certification on predominance grounds other than manageability, citing the presence of individualized issues of reliance which have been found to preclude a finding of predominance in similar consumer-protection class actions. *See* Objection to Proposed Settlement and Attorney's Fee Award ("Browne Objection") (Dkt. No. 57), at 14–15. This is certainly not a mere issue of manageability; such predominance issues have been found to preclude class certification—even for the purpose of settlement—by multiple courts. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008) (decertifying nationwide settlement class based on presence of individualized reliance elements of state consumer laws). So, while the Settling Parties are correct in stating that manageability concerns are lessened when "the proposal is that there be no trial," the Court must simultaneously give those specifications of Rule 23 which "preexist any settlement" and are "designed to protect absentees by blocking unwarranted or overbroad class definitions . . . undiluted, even heightened, attention." *Amchem*, 521 U.S. at 620, 623. As in *In re Grand Theft Auto*, this Proposed Settlement is rife with individualized and state-law-specific issues which, wholly separate from any trial-manageability issues, prevent the Settling Parties from satisfying the predominance issue. *See In re Grand Theft Auto*, 251 F.R.D. at 146. The Settling Parties' failure to address these issues implies an inability to defend the settlement class without reference to a manageability straw-man.

The Settling Parties misstate the Objector's argument regarding the "clear sailing" provision included within the Proposed Settlement. First, they argue that there is no substantiating evidence to support the observation that "the parties negotiated fees at the same time as substantive relief." Attorney's Fee Objection (Dkt. No. 77), at 7. Unfortunately, the Settling Parties are mistaken—the inclusion of a "clear sailing" provision in the proposed settlement agreement (or, for that matter, any reference to attorney's fees at all) shows, by definition, that attorney's fees were negotiated at the same time as class relief. *See, e.g.*, *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1078 (C.D. Cal. 2010). Second, the Settling Parties appear to believe that the Objector argued that the "clear sailing" provision shows collusion, or can alone prevent approval, when the Objector merely points out the wealth of authority supporting the application of heightened scrutiny to such settlements that include a "clear sailing" provision. Accusations or evidence of direct collusion are simply unnecessary to support the application of heightened scrutiny. *See id.* ("The Court does not suggest any intentional fiduciary breach by class counsel . . . ."); *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("Even if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations."). The Court should, therefore, concentrate heightened scrutiny on whether there is, as the Objector has argued at length, a disproportionate relationship between the substantive relief actually provided to the class and the amount of attorney's fees.

The Settling Parties fail to explain why the Court should immediately grant attorney's fees based on a mixed coupon settlement in which the amount of *cy pres* is part of the supposed common fund, and the full amount of which cannot be known until the closing of the Second Settlement Fund. The Settling Parties argue against the proposition that "the injunctive relief . . . cannot serve as a basis for the determination of attorneys' fees," citing only two pre-CAFA cases from 1997 and 2003. *See* Attorney's Fee Response (Dkt. No. 77), at 8–9. However, the Objector's criticism of attorney's fees focuses heavily on the indeterminate use of *cy pres* in justifying a potential award, and only minimally on injunctive relief (which the Objector elsewhere argues is of illusory value, for settlement approval purposes, and should be valued by reference to testimony or evidence, for

9
REPLY TO OBJECTION RESPONSES     CASE NO. 3:11-md-02238-DMS-RBB

attorney's fee award purposes). *See* Browne Objection (Dkt. No. 57), at 7–8, 18, 23–24. The Ninth Circuit has recently warned that coupon settlements "trigger the Class Action Fairness Act of 2005's limitations on contingent fees awarded in connection with such settlements." *CLRB Hanson Industries, LLC v. Weiss & Associates, PC*, 465 Fed. Appx. 617, 2012 WL 20539 (9th Cir. Jan. 5, 2012). This Court should, therefore, take care to apply those CAFA limitations here.

## CONCLUSION

The responses filed by the Settling Parties are instructive. The Settling Parties reduced themselves to *argumentum ad hominem*, rushing to slander Ms. Browne and her counsel as "serial" or "professional" objectors, despite the lack of any facts to support that conclusion and despite the lack of any legal authority which might give weight to those pejoratives. The Settling Parties deny that they have constructed a mixed coupon settlement based on an unnaturally restrictive definition of the word "coupon," despite the weight of authority showing that the application of CAFA is appropriate and despite the fact that the Settlement Vouchers qualify as "coupons" even under their own definition. Most importantly, the Settling Parties have wholly failed to respond to many of the Objector's most important points. For all of these reasons, the Court would be well-advised to consider the initial Browne Objection (Dkt. No. 57) carefully, and to apply heightened scrutiny to the Proposed Settlement and Motion for Attorney's Fees before it on behalf of the absent or silent class members to whom the Court owes a fiduciary duty. For the foregoing reasons, there is no possible chance that this proposed settlement would be upheld on review by the U.S. Court of Appeals for the Ninth Circuit.

Respectfully Submitted,

**DATED: August 31, 2012**

By:   /s/  Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
38 Miller Avenue, #263
Mill Valley, CA 94941
*Attorney for Objector, Padraigin Browne*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on **August 31, 2012**, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system.

/s Brett Gibbs