Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
Tfrank@gmail.com
(703) 203-3848
*In pro per*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re:

Groupon, Inc., Marketing and Sales Practices Litigation

Case No. 3:11-md-2238-DMS-RBB

**SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK REBUTTING FALSE AD HOMINEM ATTACKS AND PROVIDING NOTICE OF NEW AUTHORITY**

Date: September 7, 2012
Time: 1:30 p.m.
Courtroom: 10
Judge: Hon. Dana M. Sabraw

## SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK

I, Theodore H. Frank, declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. The settling parties, apparently recognizing that their settlement and attorneys' fee request were indefensible on the merits, resorted to *ad hominem* attacks on Frank in their "Joint Response to Objections" (Dkt. Nos. 76/78) and "Plaintiffs' Response to Objections" (Dkt. No. 77). Worse, these attacks were not just ad hominem, but factually false, yet the settling parties refused to retract nearly all of them—even though they portrayed a block quote from a litigation adversary as coming from a court opinion, misquoted articles, relied on a false claim in a brief in another case that was rejected by a court, and relied on court rulings that were superseded by Ninth Circuit decisions.

3. I will be unfairly prejudiced if the record is not corrected, and the class will be unfairly prejudiced if the settling parties' factual misstatements cause my meritorious objection to the settlement to be discounted.

4. As my original declaration noted, "professional objector" is a legal term with a specific definition: a "for-profit objector that attempts to hold up settlements in the hopes of negotiating a *quid pro quo* payment for himself to withdraw his objection or appeal." A non-profit public-interest objector may be "professional"[1] and may be an "objector," but

---

[1] Plaintiffs complain that "Frank has repeatedly sought fee awards as compensation for his objections." Dkt. 77 at 2. This is false: Frank has only sought federal fee awards for *material pecuniary improvement to the class*, and has not sought fee awards when there has not been such an improvement. Non-profits are entitled to seek fee awards—though tax law caps non-profits to recovery of 50% of their annual expenditures. (For this reason, Frank has limited his fee requests and never been entirely denied a fee request on the occasions he makes them.) In one case where the Center had entitlement to an especially large fee award, the Center successfully asked the district court to donate its fee award to the class. *In re Classmates.com*, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012). In any event, Frank is proceeding *pro se* in this case and is not entitled to request attorneys' fees; if there is any doubt about that issue, Frank hereby explicitly disclaims an intent to seek fees for an objection in this case, and asks the Court to award any fees to which he might be entitled to the class or to the Federal Judicial Center.

is not a "professional objector" as that term is used in the law. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litigation Report (Aug. 12, 2011) (distinguishing the Center for Class Action Fairness from "professional objectors"); Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n. 150 (public interest groups are not "professional objectors"). Indeed, I have criticized "professional objectors" on multiple occasions. Brenda Kearney, "The Deal Breakers: A look at professional class objectors in Maryland," *The Daily Record* (May 23, 2010) (quoting me as an outside expert) (cited in Dkt. 77 at 2); Ted Frank, "The problem of self-dealing by class counsel," *Point of Law* (Manhattan Institute Center for Legal Policy, Apr. 17, 2012) (attached as Exhibit A) (cited in Dkt. 78 at 6). Nevertheless, though the settling parties cited writings that demonstrated that I criticize "professional objectors," they falsely represented to this Court that I am a "professional objector." Dkt. 78 at 5; Dkt. 77 at 1-2.

5. In an August 28 email to me, Groupon counsel Shirli Fabbri Weiss admitted that I am not seeking to extort the parties, but rationalized the inaccurate use of the legal term "professional objector" by saying

> "We do, however, believe that 'professional objector' accurately describes your work in this context (which is supported by your email's reference to at least ten cases where you have filed objections), and is not negated by the fact that you have not demanded a cash payment. Perhaps we have different interpretations of the term."

But Ms. Weiss's brief failed to tell the Court that she was using a private definition of "professional objector" that differed from the legal term.

6. Ms. Weiss justifies the use of the term "professional objector" because I have filed multiple objections, and references the ten cases cited in her brief. But she does not tell the Court the results of those objections, and hides them in many cases by failing to give correct citations:

| Case | Result |
|---|---|
| *True v. Am. Honda Motor Co., Inc.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) | Objection upheld; settlement struck. |
| *In re Apple Inc. Sec. Litig.*, 2011 WL 1877988 (N.D. Cal. May 17, 2011) | Objection causes renegotiation improving class recovery by $2.5M; fees awarded. |
| *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) | Objection results in renegotiated settlement improving class recovery by $2M; fees awarded. |
| *In re Online DVD Rental Antitrust Lit.*, No. 12-15705 (9th Cir.) | Pending on appeal. Reversal expected if Court follows *Dennis v. Kellogg* (9th Cir. 2012). |
| *Weeks v. Kellogg*, No. CV-09-8102 (C.D. Cal. 2011) | Objection upheld; settlement renegotiated to provide additional class benefit; fees awarded. |
| *In re Baby Products Antitrust Lit.*, No. 12-1165 (3d Cir.) | Pending on appeal. Reversal expected if Court follows *Dennis v. Kellogg* (9th Cir. 2012). |
| *In re Bluetooth Headset Prod. Liab. Lit.*, 654 F.3d 935 (9th Cir. 2011) | Won reversal of settlement approval on appeal; objection to fees upheld on remand. |
| *In re Classmates.com*, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) | Objection upheld; $57,000 settlement renegotiated to provide additional $2.6M; Frank forgoes fee award of "at least $100,000" to expand class recovery. |
| *In re MagSafe*, No. 12-15757 (9th Cir.) | Pending on appeal. Reversal expected if Court follows *Bluetooth* and *Dennis*. |
| *In re NVIDIA GPU Lit.*, No. 5:08-cv-4312 (N.D. Cal. 2011) | Frank did not file a Rule 23(e) objection in this case or represent any objectors. Rather, Frank represented class action plaintiffs asking the district court to enforce a settlement and require the defendant that retroactively modified the settlement to provide the relief the court had previously ordered. The district court ruled in favor of the class action defendant and against Frank's class action plaintiff clients. The *Groupon* parties incorrectly included this case. |

If one is to believe Ms. Weiss, her brief called me a "professional objector" solely because she wanted the Court to know that I have filed multiple successful objections—though she made it hard for the Court to find that out by failing to give the correct citation for *True*, *Classmates*, or *Bluetooth*. Dkt. No. 78 at 5. Of course, to the extent my track record is relevant at all, one would think that repeatedly filing successful objections cuts in favor of my objection, rather than against it, which makes Ms. Weiss's claim that she did not

intend to mislead the Court with her private definition suspicious.

7. The difference between a "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. *See* "Self-Dealing," *supra* (Ex. A at 1) (cited by the parties in Dkt. No. 78 at 6). In contrast, a public-interest objector such as myself has to triage dozens of requests for *pro bono* representation, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a meritless objection.

8. The parties' briefs falsely state that my "organization's ideological agenda is to end class actions, not improve them." Dkt. No. 78 at 5; Dkt. No. 77 at 2. This is false. The parties provide no evidence for the proposition other than cites to other briefs that make the same false statement without any cites; obviously one cannot manufacture a false claim out of whole cloth by bootstrapping briefs that make the same false claim. As noted in Paragraph 4, above, using the settling parties' own case citations, I have represented class action plaintiffs seeking recovery from class action defendants; I have repeatedly won millions of dollars for class members by improving class action settlements. As I have previously stated,

> [T]here are certainly those who object to attorneys' fees in class actions cynically as a means of attacking the class action. I've said it before, and I'll say it again: the optimal number of class actions is greater than zero. It's likely smaller than the number of class actions we actually have, but my criticism of rubber-stamping settlements that overpay attorneys is not a backdoor attempt to abolish the class action. I'm not complaining about the case where an attorney wins a $4 refund for a million people, and collects $1 million for himself; that's the way the class action system is supposed to work, by aggregating materially identical claims that couldn't be brought efficiently individually.

Exhibit A at 1 (cited by parties in Dkt. No. 78 at 6). *See also* Susan Beck, "Man on a class action mission," *American Lawyer* S16 (Jun. 2011) (quoting me defending class actions). The parties' own briefs cite cases and writings that demonstrate that I am not seeking to end class actions, yet repeatedly make this misstatement to the Court and refuse to correct it.

9. The parties rely upon plaintiffs' brief in *True v. Honda* falsely claiming that I "would likely be against virtually *any* consumer litigation," (Dkt. 78 at 5) but fail to mention that those statements were falsified by a declaration I filed in the case (*True* Dkt. No. 158-2), and that the *True* court explicitly rejected plaintiffs' argument. 749 F. Supp. 2d at 1079-80. In any event, the *NVIDIA* case, where I represented class action plaintiffs seeking recovery against a defendant in consumer class action litigation, combined with my own writings, demonstrates that I am not "against virtually *any* consumer litigation." Given that the settling parties cited both *NVIDIA* and "Self-Dealing," they knew or should have known that their representations to the Court were false.

10. To the extent the Court wishes to disregard *True* and give weight to the claim that I am against all class actions and consumer litigation, the Court should take notice that I believe that the Nicholas Spencer class action in this involving Illinois state-law claims has been unfairly undervalued at $0, and that the settlement improperly waives Illinois state residents' state-law claims without compensation. *See generally Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785-86 (7th Cir. 2004) (settlement unfair if it denies relief to subclass's subclass-specific claims without "careful scrutiny indicat[ing] that the class had no realistic prospect of sufficient success to enable an actual distribution to the class members").

11. I did not raise the Spencer class action in my initial objection because I thought my views of the merits of other class actions irrelevant, but the settling parties are arguing otherwise, even rejecting multiple requests from me that they correct the record. So if the settling parties stand by their representation that I oppose all class actions and consumer litigation, the fact that even someone who opposes all class actions and consumer

litigation supports the merits of Spencer class action would appear to be dispositive as to the unfairness of this settlement. In the alternative, the parties can admit that they attempted to mislead the Court by knowingly falsely imputing ulterior motives to my objection, which one would think would be sanctionable conduct.

12. The settling parties assert that I have "authored numerous blog posts and articles expressing his animosity not only toward class actions, but to consumer cases in general." Yet, in all their scrutiny of nine years of blog posts and articles I have written about class actions and consumer cases, their only citations for this proposition are to (1) a discussion of a decision of the Vioxx MDL judge that attorneys who had brought a losing, and likely fraudulent, case should be awarded attorneys' fees; (2) a critique of meritless shareholder derivative suits in a discussion of *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012), where my criticism tracks the Seventh Circuit's decision; and (3) an essay where I defend class actions and discuss ways to improve them. Perhaps class counsel has reasons for thinking meritless litigation should never be criticized, but it is odd that *defense counsel* is claiming that opposing meritless litigation is a position beyond the bounds of polite discourse, which suggests that either (1) defense counsel signed the brief without reading (or at least understanding) the cited materials; or (2) defense counsel deliberately attempted to mislead the Court. Needless to say, the fact that I criticize meritless lawsuits no more means that I oppose all lawsuits than the fact that a food writer who criticizes restaurants serving spoiled meat and moldy fruit means that she opposes all food.

13. The settling parties have indicated to me that they plan to argue to the Court that my discussion of the "perverse incentives" facing judges in class-action litigation (*see* Exh. A *and* Dkt. 78 at 6) means that I am criticizing all judges. This, of course, is a *non sequitur*. The need for the law to avoid perverse incentives is something discussed by, *inter alia*, Alexander Hamilton in *Federalist No. 81*, Justice Oliver Wendell Holmes ("The Path of the Law," 10 Harv. L. Rev. 457), and Judge Richard A. Posner. My "Self-Dealing" essay also criticizes the perverse incentives facing class counsel, defendants, and objectors.

14. Plaintiffs' brief in defense of their fees repeats many of these false claims, and adds others. Plaintiffs characterize *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 773, 785 (N.D. Ohio 2010) as "describing objector Frank's brief as 'long on ideology and short on law.'" But *Lonardo* was criticizing *one particular argument* as "ideolog[ical]"; it otherwise held that "Frank's policy arguments contribute to the legal discussion regarding this important area of law," and awarded fees based on the $2 million benefit to the class caused by the objection—yet plaintiffs falsely represent that *Lonardo* "discredited" me. *Compare id.* at 804, 816-17 *with* Dkt. 77 at 2. Moreover, plaintiffs fail to disclose to this Court that the Ninth Circuit agreed with me and disagreed with *Lonardo* on that one particular argument that "kicker" arrangements where fees from a separate fund revert to the defendant are improper. *Compare Bluetooth*, 654 F.3d at 947 *with Lonardo*, 706 F. Supp. 2d at 785. Even if it were true in 2010 that my argument in *Lonardo* against the kicker was "short on law," it is not true now that that same argument has persuaded the Ninth Circuit.

15. Plaintiffs claim that I "recently called plaintiffs' class action lawyers 'parasites.'" Dkt. 77 at 2. This is a misquote: the cited *Daily Record* article published a correction that states "when the center's founder, Ted Frank, referred to **professional objectors** as 'parasites preying on parasites,' he was referring to situations in which the underlying class action is meritless and the underlying objection is brought to extract 'rents' or a holdout fee" (emphasis added). (Note that plaintiffs nevertheless call me a professional objector on the same page of their brief, even as they cite an article where I criticize professional objectors.) I notified plaintiffs of the fact that they needed to notify the court of the correct *Daily Record* quotation, and they failed to do so.

16. Most egregiously, the settling parties' brief originally contained a lengthy block quote that falsely berates me, and then uses a citation that implies that the quote was from a court decision, rather than from an interested party's brief that has no precedential or persuasive value. *Compare* Dkt. No. 76 at 5 *with* Dkt. No. 78 at 5. While the parties claim that the miscite was "inadvertent," this seems improbable. "Inadvertent" miscites and

misstatements are mistakes that are distributed along a bell curve: some favor the brief-writer, some disadvantage the brief-writer. Here, the settling parties have made multiple misstatements to the Court, and multiple failures to acknowledge superseding precedent; it beggars belief that all of them were inadvertent—especially because many of the claims were contradicted by cases and articles cited by the settling parties, and especially because the settling parties refused to correct the errors when they were pointed out. Either the parties did not read the materials they were citing, or deliberately chose to misstate their contents to the Court.[2] There was certainly no excuse for this, given that I notified the party of the errors, and they chose to resubmit the false statements and superseded cases to the Court as an "errata." Dkt. No. 78. This Court has the authority to issue a *sua sponte* order to show cause why the parties should not be sanctioned given the degree to which these arguments and citations "go beyond fair advocacy and border on misrepresentation." *Cobell v. Salazar*, 816 F. Supp. 2d 10, 20 (D.D.C. 2011).

17. The settling parties claim that *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) ("Aqua Dots") is not applicable because it was a case about class certification. Since class certification is a prerequisite to settlement approval, and I cited *Aqua Dots* to challenge the class certification in this settlement, I fail to see why the parties think this argument is persuasive. Dkt. No. 67 ¶¶ 2, 25.

18. While the parties dispute the argument that the settlement fund is illusory, they admit that at least some of the $8.5 million settlement fund will be used to pay refunds (or fund coupons) that Groupon customers would have received anyway in the absence of the settlement. Dkt. 78 at 8. This concession is further evidenced by the fact that they do not dispute that I received a refund from Groupon for a dispute that would otherwise be a

---

[2] On information and belief, class counsel is relying at least in part on an "objector database" produced by the trial-lawyer lobbying group American Association for Justice that makes many of the same false claims, and defense counsel relied on class counsel's drafting without performing the required Rule 11 investigation.

class claim. Thus, the settlement fund is not worth the $8.5 million the parties claim it is, and both the notice is misleading and the attorney-fee request is exaggerated.

19. My objection cited *Dennis v. Kellogg*, No. 11-55674 (9th Cir. July 13, 2012). The Ninth Circuit has since withdrawn the July 13 opinion, and replaced it with a new opinion dated September 4, 2012, that reached the same result with slightly different reasoning. The new reasoning provides stronger support for my objection, as it affirms that district courts have an obligation to ensure that the parties' representations about settlement value are not illusory when it might result in disproportionate attorneys' fees:

> This possibility gives us an additional reason to be vigilant regarding the particulars of this class action settlement: is it all that it appears to be? Are the assigned numbers real, or not? This issue is particularly critical with a cy pres product settlement that has a tenuous relationship to the class allegedly damaged by the conduct in question. The issue of the valuation of this aspect of a settlement must be examined with great care to eliminate the possibility that it serves only the "self-interests" of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 6, 2012, in Fairfax, Virginia.

           */s/ Theodore H. Frank*
           Theodore H. Frank

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via first class mail to the following participants at the addresses listed below:

John J. Stoia, Jr.
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Shirli F. Weiss
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101

DATED this 6th day of September, 2012.

                                                      *(s) Theodore H. Frank*
                                                     Theodore H. Frank