ROBBINS GELLER RUDMAN
&amp; DOWD LLP
JOHN J. STOIA, JR. (141757)
RACHEL L. JENSEN (211456)
PHONG L. TRAN (204961)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
johns@rgrdlaw.com
rachelj@rgrdlaw.com
ptran@rgrdlaw.com

Class Counsel

DLA PIPER LLP (US)
SHIRLI FABBRI WEISS
CHRISTOPHER M. YOUNG
KATHERINE J. PAGE
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: 619/699-2700
619/699-2701 (fax)
shirli.weiss@dlapiper.com
christopher.young@dlapiper.com
katherine.page@dlapiper.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re GROUPON MARKETING AND
SALES PRACTICES LITIGATION

No. 3:11-md-02238-DMS-RBB

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT

JUDGE:   The Hon. Dana M. Sabraw
CTRM:    13A
DATE:    October 9, 2015
TIME:    1:30 p.m.

1065660_3

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND .................................. 3

    A.   Groupon's Services and Marketing ..................................................... 3

    B.   The Litigation ....................................................................................... 4

        1.   Consolidated Proceedings and Illinois State Court Action ....... 4

        2.   The 2012 Proposed Settlement Agreement and
            Subsequent Appellate Proceedings ........................................... 6

        3.   The 2015 Settlement Discussions .............................................. 8

III. TERMS OF THE SETTLEMENT ............................................................. 9

    A.   The Settlement Class ............................................................................ 9

    B.   The Settlement Relief .......................................................................... 9

    C.   Attorneys' Fees and Class Representative Awards ........................... 11

    D.   Release ................................................................................................ 11

    E.   Notice and Right to Opt Out .............................................................. 12

IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF
     THE SETTLEMENT AGREEMENT .................................................... 13

    A.   Applicable Legal Standards ............................................................... 13

    B.   The Strengths of Plaintiffs' Case and Risks Inherent in
        Continued Litigation Favor Preliminary Approval ........................... 14

    C.   The Risk, Complexity, Expense, and Duration of the Litigation
        Favor Preliminary Approval .............................................................. 16

    D.   The Substantial Relief Provided by the Settlement Agreement
        Favors Preliminary Approval ............................................................. 17

    E.   The Stage of the Proceedings Favors Preliminary Approval;
        Experience and Views of Counsel ..................................................... 19

    F.   The Settlement Was Reached after Months of Arm's-Length
        Negotiations, and There Was No Collusion ...................................... 20

    G.   The Settlement Addresses the Concerns Raised By the Ninth
        Circuit in Its 2015 Ruling .................................................................. 20

V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE
     PLAN ..................................................................................................... 22

VI.  SCHEDULING AN APPROVAL HEARING IS APPROPRIATE ........... 25

VII. CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AT&T Mobility LLC v. Concepcion*,
 __ U.S. __, 131 S. Ct. 1740 (2011) .................................................................. 6, 15

*Browning v. Yahoo! Inc.*,
 No. C04-01463 HRL, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006).................. 24

*Chaiken v. Lululemon*,
 No. 3:12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258 (S.D. Cal.
 Mar. 14, 2014) (Curiel, J., presiding) ................................................................ 19

*CompuCredit Corp. v. Greenwood*,
 __ U.S. __, 132 S. Ct. 665 (2012) .................................................................. 6, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
 470 U.S. 213 (1985) ............................................................................................ 15

*Eisen v. Carlisle & Jacquelin*,
 417 U.S. 156 (1974) ............................................................................................ 22

*Farrell v. Opentable, Inc.*,
 No. C 11-1785 SI, 2012 WL 1379661 (N.D. Cal. Jan. 30, 2012) ....................... 16

*Foos v. Ann.*,
 No. 11cv3794 L (MDD), 2013 U.S. Dist. LEXIS 136918 (S.D. Cal.
 Sept. 24, 2013) (Lorenz, J., presiding) ............................................................... 19

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)....................................................................... 17, 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011)............................................................... 2, 8, 20, 22

*In re Celera Corp. Sec. Litig.*,
 No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal.
 Mar. 31, 2015) ...................................................................................... 13, 14, 22

# TABLE OF AUTHORITIES

(continued)

**Page**

*In re Diet Drugs Prods. Liab. Litig.*,
 226 F.R.D. 498 (E.D. Pa. 2005) ........................................................................ 24

*In re Lupron Mktg. & Sales Prac. Litig.*,
 228 F.R.D. 75 (D. Mass. 2005) ......................................................................... 25

*In re Online DVD Rental Antitrust Litig. ("Walmart")*,
 779 F.3d 934 (9th Cir. 2015) ..................................................................... 18, 19

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
 No. 06-02069 SBA, 2008 WL 1990806 (N.D. Cal. May 5, 2008) ...................... 22

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
 No. 2:10-CV-00302 MRP, 2013 U.S. Dist. LEXIS 179190 (C.D. Cal. Dec.
 5, 2013) ............................................................................................................. 16

*Molski v. Gleich*,
 318 F.3d 937 (9th Cir. 2003) .............................................................................. 17

*Morey v. Louis Vuitton N. Am. Inc.*,
 No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331 (S.D. Cal. Jan.
 10, 2014) (Hayes, J., presiding) ......................................................................... 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983) .............................................................................................. 15

*Nat'l Rural Telecomms. Coop. v. Directv, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) ....................................................................... 14, 17

*Rodriguez v. West Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ....................................................................... 17, 22

*Skilstaf, Inc. v. CVS Caremark Corp.*,
 No. 10-15338, 2012 WL 400369 (9th Cir. Feb. 9, 2012) .................................... 24

**TABLE OF AUTHORITIES**

(continued)

**Page**

*UAW v. Gen. Motors Corp.*,
    235 F.R.D. 383 (E.D. Mich. 2006)........................................................... 25

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)................................................................... 17

*Voeks v. Wal-Mart Stores, Inc.*,
    No. 07-C-0030, 2008 WL 89434 (E.D. Wis. Jan. 7, 2008)............................ 16, 24

**STATUTES**

15 U.S.C. §1693, *et seq.*................................................................................ 5

15 U.S.C. §1693m(a)(2)(B) ........................................................................... 6

28 U.S.C. §1715(b) ...................................................................................... 23

**OTHER AUTHORITIES**

4 Alba Conte & Herbert Newberg, 4 *Newberg on Class Actions*, §11:50 (4th
    ed. 2002)........................................................................................ 16, 17

5 James Wm. Moore, *Moore's Federal Practice*, §23.85(2)(b) (3d. ed. 2002) .......... 14

David F. Herr, *Annotated Manual for Complex Litigation*, §21.632 (4th ed.
    2005) ........................................................................................... 3, 24

Fed. R. Civ. P. 23.................................................................................. 22, 24

Fed. R. Civ. P. 23(b)(3)................................................................................ 7

Fed. R. Civ. P. 23(c)(1)................................................................................ 7

Fed. R. Civ. P. 23(c)(2)................................................................................ 25

Fed. R. Civ. P. 23(c)(2)(A) ........................................................................... 24

Fed. R. Civ. P. 23(c)(2)(B)........................................................................ 22, 24

Fed. R. Civ. P. 23(e) ................................................................................ 22, 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

(continued)

**Page**

Fed. R. Civ. P. 23(e)(1) ............................................................................... 22

Fed. R. Civ. P. 23(e)(2) .......................................................................... 13, 25

Fed. R. Civ. P. 41(a)(1)A(i) .......................................................................... 5

William B. Rubenstein, 4 *Newberg on Class Actions*, §13:15 (5th ed. 2014) ............ 14

1       Plaintiffs Barrie Arliss, Nevin Booth, Julie Buckley, Ashley Christensen, Jason

2   Cohen, Adam Dremak, William Eidenmuller, Anthony Ferreira, Sarah Gosling, Eli R.

3   Johnson, Heather Kimel, Jeff Lawrie, Michael McPherson, Sarah Mehel, Nicholas

4   Spencer, Eric Terrell, Carlos Vazquez, and Brian Zard ("Plaintiffs"), on the one hand,

5   and Groupon, Inc. ("Groupon") and the Merchant Defendants[1] ("Defendants"), on the

6   other (collectively the "Parties"), respectfully submit this memorandum in support of

7   their joint motion for an order granting preliminary approval to the Parties' Stipulation

8   of Class Action Settlement and exhibits thereto ("Settlement Agreement") in these

9   consolidated cases (the "Actions").

10   **I.      INTRODUCTION**

11       After the Ninth Circuit Court of Appeals issued its February 19, 2015

12   Memorandum opinion ("2015 Ninth Circuit Ruling" or "2015 Ruling") (Dkt. No. 63-

13   1) vacating this Court's approval of the 2012 Proposed Settlement Agreement, and its

14   subsequent denial of Plaintiffs' petition for rehearing, the Parties entered into renewed

15   settlement discussions in light of the 2015 Ninth Circuit's Ruling and cognizant of the

16   passage of time since the 2012 Proposed Settlement Agreement.[2]  After months of

17   intense, arm's-length negotiations, the Parties have now executed a new Settlement

18   Agreement, which provides $8.5 million worth of economic relief and benefit to the

19   Class, and does so in accordance with the Ninth Circuit's directives.

20       Under the Settlement Agreement, the value of the settlement remains

21   $8.5 million.  But this Settlement is more streamlined and provides prompt relief to

22   Settlement Class Members who will no longer be required to go back to the Merchant

23

24   [1]   "Merchant Defendants" means the Persons named as Defendants in any of the
Actions listed on Exhibit 1 to the Settlement Agreement, other than Groupon,

25   including Nordstrom Inc., Full Circle Farms, Inc., The Gap, Inc., Spa Blix, Inc.,
Whirly West Inc. d/b/a/ WhirlyBall, Fun Time, LLC d/b/a/ Wheel Fun Rentals, and

26   YMCA of Metropolitan Washington.

27   [2]   All capitalized terms used herein have the same meanings as in the Settlement
Agreement, dated as of September 11, 2015, filed concurrently herewith as Exhibit

28   1 to the Declaration of John J. Stoia, Jr. ("Stoia Decl.").

1    to try to redeem a specific Voucher, as was required under the 2012 Proposed

2    Settlement Agreement.  Instead, Settlement Class Members with valid claims will

3    now receive "Groupon Credits" deposited directly in their accounts, which can be

4    used to purchase the vast majority of offerings on groupon.com.  Each Groupon

5    Credit is equivalent to $1.00 in buying power for Groupon offerings on Groupon's

6    website.

7         Importantly, Settlement Class Members will receive Credits equal to **130%** of

8    the purchase price of their unredeemed, unrefunded Groupon Vouchers, subject to any

9    adjustment depending on the total amount of claims.  In other words, for every $1.00

10    that a Class Member paid for a Groupon Voucher, they will potentially receive $1.30

11    in Groupon Credits.  This will allow Settlement Class Members to use their Groupon

12    Credits to purchase a wide variety of offerings, without spending any additional

13    money, or, if they choose, they may combine the Credits with their own credit and use

14    them toward larger purchases.

15         Additionally, under the Settlement Agreement, the Parties have eliminated the

16    "Second Settlement Fund," the feature in the 2012 Proposed Settlement Agreement

17    that gave rise to valuation questions in the 2015 Ninth Circuit Ruling.  As such,

18    Groupon will forego any right to seek reimbursement from the Settlement Amount for

19    refunds it pays to Class Members.  With the elimination of the Second Settlement

20    Fund, the Court can readily make the requisite *Bluetooth* factual findings referenced

21    in the 2015 Ninth Circuit Ruling.  *See* Dkt. No. 63-1 at 5-6.  And to facilitate those

22    findings, the deadline for submitting new claims (claims from the 2012 Proposed

23    Settlement Agreement need not be re-submitted) ***precedes*** the hearing for approval of

24    the Settlement Agreement (the "Approval Hearing").  Accordingly, prior to the

25    Approval Hearing, the Parties will provide the Court with the total number and value

26    of claims to aid the Court's determination of "the value of the relief to the class," in

27    accordance with the 2015 Ninth Circuit Ruling.  *See id.* at 6.

28         At this stage, the Court need only "make a preliminary determination on the

1    fairness, reasonableness, and adequacy" of the settlement.  *See* David F. Herr,

2    *Annotated Manual for Complex Litigation*, §21.632 (4th ed. 2005).  As detailed

3    below, the Settlement Agreement is fair, reasonable, adequate, and in the best interests

4    of the Settlement Class, such that notice of the Settlement Agreement should be

5    provided to Settlement Class Members, and a hearing scheduled to consider approval

6    of the settlement.  The Parties, therefore, respectfully request that the Court enter an

7    order: (1) conditionally certifying the Settlement Class; (2) granting preliminary

8    approval of the Settlement Agreement; (3) approving the proposed notice program

9    and directing that notice be disseminated to the Settlement Class; (4)  appointing Rust

10   Consulting, Inc. as the Claims Administrator; and (5) setting an Approval Hearing

11   ("Preliminary Approval Order").

12   **II.       FACTUAL AND PROCEDURAL BACKGROUND**

13            **A.       Groupon's Services and Marketing**

14            Groupon operates online local commerce marketplaces throughout the world

15   that connect merchants to consumers by offering goods and services at a discount.

16   Groupon acts as a third party marketing agent by selling vouchers ("Groupons") that

17   can be redeemed for products or services with a merchant.  Declaration of Shirli F.

18   Weiss, ¶3 ("Weiss Decl."), filed concurrently herewith.  It also sells merchandise

19   directly to customers in transactions for which it is the merchant of record.  *Id.*

20   Customers access Groupon's deal offerings directly through its websites, mobile

21   platforms and emails and may also access its offerings indirectly using search engines.

22   *Id.*  Each day, Groupon provides consumers with a selection of promotional offers

23   (known during the relevant time as "Daily Deals") from merchants across the United

24   States.  *Id.*, ¶4.  Consumers purchase Groupon Vouchers, which can then be redeemed

25   for the specified goods or services at the offering merchant, directly from Groupon's

26   website.  *Id.*  For example, a typical Daily Deal during the relevant time might allow a

27   consumer to pay $20 to purchase a Groupon Voucher, which the consumer could then

28   redeem for 200% of the purchase price paid, *i.e.*, for $40 value in goods or services at

1    the specified merchant as specified in the terms of the offer for the promotional period

2    displayed on the Voucher.  *Id.*

3           Consumers sign-up online to request to receive daily emails from Groupon

4    regarding the promotional offers available in desired geographical location(s) and

5    categories selected by the consumer based on personal preference.  *Id.*, ¶5.

6    Consumers also access Groupon's promotional offers directly through Groupon's

7    website and mobile applications.  *Id.*  In order to purchase any Groupon Voucher or

8    subscribe to receive daily emails, a consumer must create a Groupon account and

9    provide a valid email address.  *Id.*, ¶6.  In addition to its Daily Deal offerings,

10   Groupon also maintains an online storefront, known as "Groupon Goods," from

11   which consumers may shop and purchase a wide range of products and goods offered

12   by Groupon and third-party merchants.  *See id.*, ¶3.

13          Groupon believes that its business model has proved highly successful with

14   consumers.  Groupon has sold millions of Groupon Vouchers throughout the United

15   States and overseas since the Company's inception in November 2008.

16          **B.    The Litigation**

17                 **1.    Consolidated Proceedings and Illinois State Court
18                        Action**

19          The consolidated proceedings *In re Groupon Marketing and Sales Practices*

20   *Litigation* include 17 federal actions, 15 of which are putative class actions.[3]  In

---

22   [3]    The 17 federal actions are: *Arliss v. Groupon, Inc.*, No. 3:11-cv-01374-DMS-
     RBB; *Booth v. Groupon, Inc.*, No. 3:11-cv-01320-DMS-RBB; *Christensen v.*
23   *Groupon, Inc.*, No. 3:11-cv-01233-DMS-RBB; *Cohen v. Groupon, Inc.*, No. 3:11-
     cv-01245-DMS-RBB; *Eidenmuller v. Groupon, Inc.*, No. 3:11-cv-01244-DMS-
24   RBB; *Ferreira v. Groupon, Inc.*, No. 3:11-cv-00132-DMS-RBB; *Gosling v.*
     *Groupon, Inc.*, No. 3:11-cv-01231-DMS-RBB; *Hinton v. Groupon, Inc.*, No. 3:11-
25   cv-02674-DMS-RBB; *Johnson v. Groupon, Inc.*, No. 3:11-cv-02835-DMS-RBB;
     *Johnson v. Groupon, Inc.*, No. 3:11-cv-01279-DMS-RBB; *Kimel v. Groupon, Inc.*,
26   No. 3:11-cv-01225-DMS-RBB; *McPherson v. Groupon, Inc.*, No. 3:11-cv-01551-
     DMS-RBB; *Mehel v. Groupon, Inc.*, No. 3:11-cv-01349-DMS-RBB; *Spencer v.*
27   *The Gap, Inc.*, No. 3:12-cv-01210-DMS-RBB; *Terrell v. Groupon, Inc.*, No. 3:11-
     cv-01595-DMS-RBB; *Vazquez v. Groupon, Inc.*, No. 3:11-cv-01253-DMS-RBB;
28   and *Zard v. Groupon, Inc.*, No. 3:11-cv-01232-DMS-RBB.   Jennifer Bates
     voluntarily withdrew and dismissed her action entitled *Bates v. Groupon, Inc.*, No.

1   addition to the federal actions, a putative class action is pending in Illinois state court,

2   styled, *Dremak v. Groupon, Inc.*, No. 11-CH-8076 (Kane Cnty. IL).  *See* Weiss Decl.,

3   ¶2; *see also* Exhibit 1 to Settlement Agreement.

4       Plaintiffs assert claims based on federal and state law arising out of

5   Defendants' marketing and sale of Groupon Vouchers, alleging, *inter alia*, that the

6   expiration dates stated on Groupon Vouchers violate the Electronic Funds Transfer

7   Act ("EFTA"),  as amended by the  Credit Card Accountability Responsibility and

8   Disclosure Act ("CARD Act"), 15 U.S.C. §1693, *et seq*., and various state laws.  *See,*

9   *e.g.*, First Amended Complaint, *Ferreira v. Groupon, Inc.*, No. 3:11-cv-00132-DMS-

10  POR, ¶10 ("Ferreira Complaint").  Specifically, Plaintiffs allege that the CARD Act

11  prohibits the sale of gift certificates with expiration periods of less than five years,

12  including offerings of Groupon Vouchers.  *See* Ferreira Complaint, ¶50; 15 U.S.C.

13  §1693, *et seq.*  Plaintiffs contend that the inclusion of expiration dates on Groupon

14  Vouchers also violates a number of state laws that apply to expiration dates of gift

15  cards and gift certificates.  *See* Ferreira Complaint, ¶¶61-64.  Plaintiffs further contend

16  that Groupon imposes other restrictions such as "Not valid for cash (unless required

17  by law)," and "Must use gift certificate in one visit," on its Vouchers.  *Id.*, ¶27.

18  Plaintiffs contend that the above misconduct and other activities are illegal or not

19  sufficiently disclosed, and that Groupon's Terms and Conditions and website are in

20  various ways misleading or deceptive to consumers.  *Id*., ¶34.  Plaintiffs seek

21  damages, restitution, injunctive relief, and other remedies in the Actions.  *Id*., ¶10.

22      Defendants deny Plaintiffs' allegations and deny they are liable under any of

23  the legal theories asserted by Plaintiffs.  Defendants dispute that the CARD Act and

24  the various state statutes at issue were intended to prohibit the expiration of Groupon

25  Voucher's "promotional value" – the value in excess of the purchase price.

26  Defendants contend that the Groupon Vouchers are not covered by the EFTA or are

27  1:11-cv-10556-DJC (D. Mass.), pursuant to Fed. R. Civ. P. 41(a)(1)A(i), on March

28  21, 2012.  *See* Dkt. No. 39.

1   encompassed within the EFTA's exception for promotional gift certificates, that

2   expiration of the Promotional Value of Groupon Vouchers is permitted under state

3   law, and that expiration of the value equivalent to the customer's purchase price value,

4   during the relevant time, and as disclosed to consumers in Groupon's Terms and

5   Conditions, expired in accordance with applicable laws of the jurisdiction in which

6   the Groupon was sold.  Defendants further contend that all restrictions applicable to

7   Groupon Vouchers were adequately disclosed to consumers in Groupon's Terms and

8   Conditions, on the promotional offer relating to the Groupon Voucher, and/or on the

9   face of the Groupon Voucher, and that such terms were not misleading or deceptive.

10  As a threshold matter, Defendants contend that Plaintiffs have waived the right to

11  bring a class action and that all of Plaintiffs' claims are subject to mandatory

12  arbitration under Groupon's Terms and Conditions.  *See CompuCredit Corp. v.*

13  *Greenwood*, __ U.S. __, 132 S. Ct. 665, 668-69 (2012) (citing *AT&T Mobility LLC v.*

14  *Concepcion*, __ U.S. __, 131 S. Ct. 1740 (2011) (upholding waiver of right to bring

15  class action in arbitration agreement)).  Defendants also assert that any purported

16  damages for all class actions under EFTA are capped at $500,000 and that none of the

17  criteria for applying statutory damages can be met.  *See* 15 U.S.C. §1693m(a)(2)(B).

18          **2.      The 2012 Proposed Settlement Agreement and**
                       **Subsequent Appellate Proceedings**
19

20          In March 2012, after extensive, arm's-length settlement negotiations, including

21  multiple mediation sessions under the supervision of the Honorable Daniel Weinstein

22  (Ret.) of JAMS, the Parties reached the 2012 Proposed Settlement Agreement.  The

23  2012 Proposed Settlement Agreement established a settlement fund of $8,500,000, to

24  pay claims and from which claims administration expenses, attorneys' fees and costs,

25  incentive awards and monetary relief to the Class would be paid.  Under the 2012

26  Proposed Settlement Agreement, before obtaining any entitlement to a refund, Class

27  Members were first required to submit claims for Settlement Vouchers that they could

28  then redeem for the goods and services with the specific Merchant Partner designated

1    on their original, expired Groupon Voucher.  Only those Class Members who were

2    unable to redeem their Settlement Vouchers at the original Merchant Partner were

3    entitled to a cash refund from the settlement fund of: (1) the purchase amount if the

4    Merchant Partner had gone out of business; or (2) the purchase amount plus an

5    additional 20% of the promotional value of the original Groupon Voucher if the

6    Merchant Partner refused to honor the Settlement Voucher.  The 2012 Proposed

7    Settlement Agreement further contemplated that, *if* funds remained after the foregoing

8    payments were made, the Claims Administrator would send out a second class notice

9    advising Class Members of a "Second Settlement Fund" that would be used to pay

10   additional requests from Class Members for refunds based on their purchases of

11   Groupon Vouchers after December 1, 2011. To get refunds to Settlement Class

12   Members faster under the Second Settlement Fund, should that fund be created,

13   Groupon agreed to pay such claims directly (or the Class Member could submit a

14   claim to the Claims Administrator), and then it had the ability to seek reimbursement

15   for approved refunds from the Second Settlement Fund, if any remained.

16           On April 24, 2012, the Court granted preliminary approval of the 2012

17   Proposed Settlement Agreement and conditionally certified the Action as a class

18   action pursuant to Rules 23(b)(3) and 23(c)(1).  Following the Court's entry of that

19   order, the Settlement Class was given notice of the 2012 Proposed Settlement

20   Agreement, and approximately 70,600 Settlement Class Members submitted claims in

21   anticipation of the approval of the 2012 Proposed Settlement Agreement.

22           On September 12, 2012, the Court held a hearing to consider approval of the

23   2012 Proposed Settlement Agreement, considering the arguments by the Parties and

24   objectors.  After the Parties submitted an amended settlement agreement that

25   eliminated a *cy pres* provision from the settlement, the Court issued an order on

26   December 12, 2012, approving the 2012 Proposed Settlement Agreement (Dkt. No.

27   108), and entered Judgment (Dkt. No. 109) on December 18, 2012.

28           On January 17, 2013, objector Padraigin Browne filed a Notice of Appeal of

1  the Court's approval order.[4]  After considering the briefing and hearing argument

2  from the Parties and Browne, the Ninth Circuit issued a Memorandum opinion

3  vacating the judgment on February 19, 2015 (the "2015 Ninth Circuit Ruling"), and

4  later denied a petition for rehearing on March 30, 2015.  Groupon subsequently

5  terminated the 2012 Proposed Settlement Agreement on June 22, 2015, pursuant to its

6  terms.

7           In its 2015 Ruling, the Ninth Circuit stated that the Court did not make the

8  factual findings in connection with the Second Settlement Fund required by *In re*

9  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011).

10  Specifically, the Ninth Circuit found that the Court "made no findings as to: (1) the

11  probable size, scope and impact of the Second Settlement Fund, to the extent such

12  determinations are feasible; and (2) whether the benefits of the Second Settlement

13  Fund were in any way duplicative of preexisting relief available to Class Members via

14  Groupon's customer satisfaction policy, under which it conceded that it paid refunds

15  to customers."  Dkt. No. 63-1 at 5-6.  The Ninth Circuit concluded that, without those

16  findings, it did not have "a basis for fairly estimating the value of the relief to the

17  class."  *Id.* at 6.  The Ninth Circuit vacated the order and judgment approving the

18  settlement and remanded to the Court to make the *Bluetooth* factual findings.

19           **3.     The 2015 Settlement Discussions**

20           Following the 2015 Ninth Circuit Ruling, the Parties entered into renewed

21  settlement discussions to determine whether the Actions could be resolved in

22  accordance with the Ninth Circuit's ruling, particularly in light of the passage of time

23  since the 2012 Proposed Settlement Agreement.  The subsequent arm's-length

24  negotiations spanned more than four months and ultimately resulted in the Settlement

25  Agreement.  Stoia Decl., ¶3.  The Settlement was reached only after multiple

26  _____

27  [4]   Notices of Appeal were also filed by Chris Brown, Maggie Strohlein and
Andrea Pridham, but those appeals were dismissed by the Ninth Circuit for failure

28  to file opening briefs.  Dkt. Nos. 7, 139.

1  settlement proposals had been exchanged and rejected.  *See id.*  The Settlement
2  reflects careful consideration by the Parties of the benefits, burdens, and risks of
3  continued litigation and addresses the issues raised in the 2015 Ninth Circuit Ruling.
4  **III.   TERMS OF THE SETTLEMENT**
5       The complete terms of the Settlement are set forth in the concurrently filed
6  Settlement Agreement, which is attached along with the exhibits, as Exhibit 1 to the
7  Stoia Declaration, and are summarized below.
8       **A.   The Settlement Class**
9       The Settlement Agreement defines the Settlement Class to include all Persons
10 who purchased or received one or more Groupon Vouchers for redemption at a
11 Merchant in the United States, from November 2008 until December 1, 2011.  Stoia
12 Decl., Exhibit 1, ¶39.  Excluded from the Settlement Class are Defendants, Merchant
13 Partners, their parent companies, subsidiaries, affiliates, officers and directors, any
14 entity in which Defendants have a controlling interest, Groupon employees, and all
15 judges assigned to hear any aspect of this litigation, as well as immediate family
16 members of any of the preceding referenced individuals.  *Id.*  The Settlement Class
17 remains unchanged from the 2012 Proposed Settlement Agreement.
18      **B.   The Settlement Relief**
19      In consideration for the Settlement Class's release of claims (*id.*, §II.F),
20 Defendants have agreed to pay a total of $8,500,000 worth of (i) Groupon Credits to
21 be paid into the Groupon accounts of Settlement Class Members ("Settlement
22 Amount"); and (ii) Claims Administration Expenses, including costs of the Notice
23 Program, and Attorneys' Fees and Expenses and Class Representative Awards.
24      The Settlement Agreement provides direct and valuable economic relief to
25 Settlement Class Members who hold unredeemed and unrefunded Groupon Vouchers
26 showing an "expiration date" that has passed.  Settlement Class Members who submit
27 a timely and valid Claim, or who already submitted a valid claim under the 2012
28 /////

1  Proposed Settlement Agreement,[5] based on a Voucher that was not subsequently

2  redeemed or refunded will be entitled to receive Groupon Credits equal to ***130%*** of

3  the Customer Purchase Price of their original, unredeemed, unrefunded Groupon

4  Voucher(s), with one dollar equivalent to one Groupon Credit.  The amount of

5  Groupon Credits issued to Settlement Class Members will be adjusted *pro rata,* based

6  on whether the total dollar amount of the valid Claims submitted is more or less than

7  the Settlement Amount, after Claims Administration Expenses and Attorneys' Fees

8  and Expenses and Class Representative Awards, if any, have been paid.  *Id.,*

9  §II.D.2(g).  Once the Claim Administrator has reviewed and approved the validly-

10 submitted Claims and determined any *pro rata* upward or downward adjustment,

11 Groupon will deposit the appropriate number of Groupon Credits directly into

12 claimants' Groupon accounts.

13        Class Members may use their Groupon Credits to make a wide variety of

14 purchases on the Groupon website, including for any Groupon Voucher redeemable at

15 any Merchant, or for Groupon Goods offered by Groupon, subject to certain

16 limitations in Groupon's system (not specific to this Settlement).[6]  *Id.,* §II.D.2(f).

17 Groupon Vouchers purchased using Groupon Credits shall be fully transferrable,

18 except for Groupon Vouchers that, by their nature, must be associated with a specific

19 individual, promise a good or service customized for, or addressed to, a specific

20 individual.  *Id.* Class Members who receive Groupon Credits will have nine months

21 from the date the Credits are deposited into their accounts to purchase Groupon

---

22 [5]  Claims submitted by Settlement Class Members in the 2012 Proposed
23 Settlement Agreement shall be deemed to have been timely submitted as if
   submitted under this Settlement, and shall be valid if they meet the criteria set forth
24 in the claim form that was posted on the settlement website in connection with the
   2012 Proposed Settlement Agreement, provided, however, that no Claim shall be
25 valid if based on a Groupon Voucher that has been previously redeemed or
   refunded at any time.  *Id.,* §II.D.2.  Furthermore, a Class Member may withdraw a
26 previously submitted claim if he or she so desires.  *Id.,* §II.E.7.

27 [6]  Groupon Credits may not be used to purchase: (1) Groupon Getaways Market
   Rate Hotel Reservations; (2) merchant products offered as Groupon Goods;
28 (3) Groupon-to-Go; (4) Groupon Link-Out offers; and (5) Groupon gift cards.

1  offerings.[7]  *Id.*

2      **C.**    **Attorneys' Fees and Class Representative Awards**

3      Under the Settlement, Class Counsel may petition the Court for an award of

4  Attorneys' Fees and Expenses not to exceed $2,125,000, or 25% of the total

5  Settlement Amount. *Id.*, §II.H.1.  If awarded by the Court, such Attorneys' Fees and

6  Expenses will be paid by Groupon by deposit into a joint escrow account set up by

7  Groupon and Class Counsel within five days of entry of the Order and Judgment

8  Approving Settlement.  Any award of Attorneys' Fees and Expenses shall be paid

9  from the Settlement Amount.  *Id.*

10      Additionally, each Class Representative may be awarded  no more than $500,

11  to be paid from the Settlement Amount *Id.*, §II.H.3.  If awarded by the Court, such

12  Class Representative Awards will be paid to Class Counsel on behalf of the Class

13  Representatives within 30 days after the Effective Date from the Settlement Amount.

14  *Id.*  Both the Attorney's Fees and Expenses and Class Representative Award amounts

15  are the same as the 2012 Proposed Settlement Agreement even though Class Counsel

16  have incurred substantial fees and expenses pursuing Plaintiffs' claims since

17  December 2012. *See* Stoia Decl., ¶4.

18      **D.**    **Release**

19      The release provision in the Settlement Agreement remains unchanged.  Upon

20  this Court's entry of the Approval Order and the Judgment Approving Settlement,

21  each Releasing Party (the Settlement Class and related persons) shall be deemed to

22  have released and forever discharged each Released Party (*i.e.*, Defendants, all

23

24  [7]  In connection with the 2012 Proposed Settlement Agreement, Groupon had
agreed to certain injunctive relief requiring Groupon to clearly set forth the
25  expiration date of the promotional value on the face of the Groupon Vouchers and
to state that the purchase value does not expire except in certain circumstances
26  related to the time sensitivity of the offering. Groupon has since made those
changes to Groupon Vouchers and, therefore, the injunctive relief provisions have
27  been removed from the Settlement Agreement.  Nevertheless, the Settlement
Agreement acknowledges that Groupon's counsel worked extensively with Class
28  Counsel with respect to the changes in light of the allegations in the Actions.

1   Merchants who offered promotions of goods or services or Vouchers through

2   Groupon who were not named as Defendants, and related persons), of and from

3   liability for any and all individual, class, representative, group or collective claim,

4   liability, right, demand, suit, matter, obligation, damage, loss, action or cause of

5   action, of every kind and description that a Releasing Party has or may have,

6   including assigned claims, whether known or unknown, asserted or unasserted, that is,

7   has been, or could reasonably have been asserted by the Releasing Party either in the

8   Court or any other court or forum, regardless of legal theory or relief claimed, and

9   regardless of the type of relief or amount of damages claimed, against any of the

10  Released Parties arising from, or in any way relating to, any of the allegations in the

11  Action, including but not limited to allegations regarding the advertising, marketing,

12  redemption or sale of Groupon Vouchers alleged in the Actions, including  allegations

13  regarding any use of expiration dates on Groupon Vouchers, and regarding any other

14  practice, conduct, or presentation of  "Daily Deals," "Fine Print," "Legal Stuff We

15  Have To Say," "Not Valid For Cash Back," other terms of use or terms of sale,

16  disclaimers, arbitration provisions, allegations of improper time pressure placed on

17  customers or requirements to use Groupon Vouchers in one visit, failures of

18  disclosure, or any of the other  allegations or claim raised in any of the Actions, or that

19  could have been alleged based on the allegations raised in any of the Actions.  *Id*.,

20  §II.F.1.

21          In turn, the Released Parties agree to release Plaintiffs and all related persons

22  for any claims arising out of the filing and settlement of the Actions.  §II.F.1(c).

23          **E.    Notice and Right to Opt Out**

24          Subject to this Court's approval, Rust Consulting, Inc. will administer the Class

25  Notice and claims filing, with costs being paid out of the Settlement Amount.  *Id*.,

26  §§II.C.1 and II.D.1.  Potential Settlement Class Members will receive direct notice of

27  the Settlement via email from a domain name that includes the word "Groupon" so

28  that, to the extent possible, the email is recognized by the Settlement Class Members'

1  servers and not sent to their "junk mail" folders. *Id.*, §II.D.3. For the vast majority of

2  Groupon subscribers, an email address is the only contact information Groupon

3  possesses. Email is, therefore, the best practicable means by which Groupon can

4  provide direct, uniform notice to the Settlement Class. The content of the email notice

5  will be substantially in the same form as the one approved by the Court. *Id.*, §II.E.

6         All Settlement Class Members will also receive publication notice through a

7  comprehensive, dedicated website. *Id.*, §II.D.5. The Claims Administrator will create

8  a website with all the relevant documents, including the Class Notice; all applicable

9  deadlines; the Class definition; instructions on how to submit Settlement Claims

10  online or by e-mail, mail or facsimile; orders of the Court pertaining to this Settlement

11  Agreement, including all supporting exhibits. *Id.* The website address will be

12  provided in the Class Notice e-mailed to potential Settlement Class Members. Class

13  Counsel shall also post the Class Notice on their website. *Id.*, §II.E.1.

14         Once the Court grants preliminary approval, the Claims Administrator will

15  disseminate the Class Notice to Settlement Class Members within fifteen (15) days.

16  *Id.*, §II.B.1(o)(i). And prior to the Approval Hearing, the Claims Administrator will

17  provide the Court with documentation that the Class Notice was provided in

18  accordance with the Court-ordered Notice Program. *Id.*, §II.E.4.

19         Finally, any Settlement Class Member who intends to object or opt out must do

20  so at least 42 days before the Approval Hearing. *Id.*, §II.B.1(o)(iii).

21  **IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL**
         **OF THE SETTLEMENT AGREEMENT**

22

23         **A.     Applicable Legal Standards**

24         Pursuant to Rule 23(e)(2), a class action settlement must be "fair, reasonable,

25  and adequate." Fed. R. Civ. P. 23(e)(2). Indeed, "[p]reliminary approval is

26  appropriate 'where the proposed settlement is neither illegal nor collusive and is

27  within the range of possible approval.'" *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-

28  02604-EJD, 2015 U.S. Dist. LEXIS 42228, at *9 (N.D. Cal. Mar. 31, 2015) (quoting

1   William B. Rubenstein, 4 *Newberg on Class Actions*, §13:15 (5th ed. 2014)).

2   "Relevant factors for the court to consider include: (1) the strength of the plaintiffs'

3   case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

4   risk of maintaining class action status throughout the trial; (4) the amount offered in

5   settlement; (5) the extent of discovery completed and the stage of the proceedings;

6   (6) the experience and views of counsel; and (7) the absence of collusion between the

7   parties." *Celera*, 2015 U.S. Dist. LEXIS 42228, at *13.  As the Ninth Circuit has

8   recognized, "[t]his is by no means an exhaustive list of relevant considerations" and

9   the "relative degree of importance to be attached to any particular factor will depend

10   upon and be dictated by the nature of the claims advanced, the types of relief sought,

11   and the unique facts and circumstances presented by each individual case." *Officers*

12   *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

13         The Settlement Agreement readily meets these standards.  As such, the Parties

14   respectfully submit that the Settlement Agreement should be preliminarily approved

15   so that notice can be provided to Class Members.

16         **B.    The Strengths of Plaintiffs' Case and Risks Inherent in**
              **Continued Litigation Favor Preliminary Approval**
17

18         "An important consideration in judging the reasonableness of a settlement is

19   the strength of the plaintiffs' case on the merits balanced against the amount offered in

20   the settlement." 5 James Wm. Moore, *Moore's Federal Practice*, §23.85(2)(b) (3d.

21   ed. 2002).  In assessing the strength of this Action, the Court need not "reach any

22   ultimate conclusions on the contested issues of fact and law which underlie the merits

23   of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of

24   wasteful and expensive litigation that induce consensual settlements." *Officers for*

25   *Justice*, 688 F.2d at 625

26         This Action faces challenges due to the mandatory arbitration provisions and

27   class action waivers in each of Groupon's consumer agreements.  While Plaintiffs

28   believe they have strong claims under the federal CARD Act, as well as under various

state consumer protection and gift certificate laws, there is a real risk that Plaintiffs and the Class would recover ***nothing*** if the litigation were to continue.  As a threshold matter, Groupon contends that all of Plaintiffs' claims are subject to a mandatory individual arbitration provision and that Plaintiffs have waived the right to bring a class action.  Groupon contends that, under federal law, courts are required to "rigorously enforce agreements to arbitrate" (*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Since these Actions were first filed, the United States Supreme Court has upheld the enforceability of a class action waiver in an arbitration agreement.  *See CompuCredit Corp*., 132 S. Ct. at 668-69 (citing *AT&T Mobility*, 131 S. Ct. at 1753).  The Parties continue to disagree about the applicability and enforceability of Groupon's arbitration and class action waiver provisions, but nevertheless those provisions pose a risk to Plaintiffs.

Assuming that the litigation was to proceed and not be forced into arbitration, Plaintiffs would continue to face significant hurdles at the class certification stage and at trial.  For example, Groupon argues that the applicable provisions of the CARD Act did not become effective until August 22, 2010, and therefore, asserts there was no federal legislation restricting expiration of gift cards for the class period prior to that date, assuming that Groupon Vouchers are governed by its provisions.  In addition, Groupon argues that no class can be certified because Plaintiffs challenge millions of different Groupon deals, each of which involved different Merchants, different Customer Purchase Prices and Promotional Values, different expiration dates, and different deal-specific terms.  If these Actions were to be tried, varying state laws may apply to different Groupon Vouchers depending on the state in which the Vouchers were purchased and Vouchers may be treated differently depending on state law.

Moreover, Groupon contends that circumstances surrounding each Plaintiff's purchase of Groupon Vouchers may present affirmative defenses that preclude

1  Plaintiffs' success at trial.  For example, Defendants contend that Class Members

2  have a duty to mitigate damages by attempting to redeem their "expired" Vouchers.

3  *See Voeks v. Wal-Mart Stores, Inc.*, No. 07-C-0030, 2008 WL 89434, at *3 (E.D. Wis.

4  Jan. 7, 2008) (finding that failure to mitigate is a permissible defense to an EFTA

5  claim); *Farrell v. Opentable, Inc.*, No. C 11-1785 SI, 2012 WL 1379661, at *3 (N.D.

6  Cal. Jan. 30, 2012) (stating that, if plaintiffs prevailed, class members "who could not

7  redeem or obtain a refund" could obtain damages).  Groupon contends that no Class

8  Members can claim damages until and unless the Merchant identified on the Voucher

9  declines to honor the purchase value of a Voucher.  And Groupon argues some

10  Merchants, eager to have consumers sample their goods or services (the rationale

11  behind their participation in Groupon offerings in the first place), would honor

12  "expired" Vouchers for the Purchase Price Value.

13      Because of these risks, courts recognize that "'[i]n most situations, unless the

14  settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

15  and expensive litigation with uncertain results.'"  *Me. State Ret. Sys. v. Countrywide*

16  *Fin. Corp.*, No. 2:10-CV-00302 MRP (MANx), 2013 U.S. Dist. LEXIS 179190, at

17  *55 (C.D. Cal. Dec. 5, 2013) (quoting 4 Alba Conte & Herbert Newberg, 4 *Newberg*

18  *on Class Actions*, §11:50 at 155 (4th ed. 2002)).  Accordingly, this factor supports this

19  Court's preliminary approval of the Settlement.

20      **C.   The Risk, Complexity, Expense, and Duration of the**
        **Litigation Favor Preliminary Approval**

21

22      In addition to the substantial risks and uncertainty inherent in continued

23  litigation, the Parties face the ***certainty*** that further litigation would be expensive,

24  complex, and time consuming.  The Court would be required to resolve difficult and

25  complicated issues of statutory interpretation and state law.

26      As other courts have acknowledged, "'unless the settlement is clearly

27  inadequate, its acceptance and approval are preferable to lengthy and expensive

28  litigation with uncertain results.'"  *Nat'l Rural Telecomms. Coop. v. Directv, Inc.*, 221

1    F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Newberg on Class Actions*, §11:50 at 155).

2    Settlement is encouraged in class actions where possible:  "It hardly seems necessary

3    to point out that there is an overriding public interest in settling and quieting litigation.

4    This is particularly true in class action suits which are now an ever increasing burden

5    to so many federal courts and which frequently present serious problems of

6    management and expense."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

7    Cir. 1976); *accord Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).

8         Here, the Parties anticipate the need for complicated litigation on a number of

9    issues, including whether the claims can be litigated or are subject to an arbitration

10   clause, and whether the Actions could proceed as a class.  Assuming the Court

11   determined that Plaintiffs have not waived their ability to maintain a class action and

12   that their claims are not subject to arbitration, extensive discovery on class

13   certification and the merits of Plaintiffs' claims and Groupon's defenses would be

14   required.  Continued litigation would be expensive, complex, and time consuming for

15   all the Parties in the Actions.  For those reasons, preliminary approval of the

16   Settlement Agreement is appropriate.

17        **D.    The Substantial Relief Provided by the Settlement Agreement**
                  **Favors Preliminary Approval**

18

19        In evaluating the fairness of the consideration offered in settlement, it is not the

20   role of the court to second-guess the negotiated resolution of the parties.  "'[T]he

21   court's intrusion upon what is otherwise a private, consensual agreement negotiated

22   between the parties to a lawsuit must be limited to the extent necessary to reach a

23   reasoned judgment that the agreement is not the product of fraud or overreaching by,

24   or collusion between, the negotiating parties, and that the settlement, taken as a whole,

25   is fair, reasonable and adequate to all concerned.'"  *Hanlon v. Chrysler Corp.*, 150

26   F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 626);

27   *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  The issue

28   is not whether the settlement could have been better in some fashion, but whether it is

1   fair: "Settlement is the offspring of compromise; the question we address is not

2   whether the final product could be prettier, smarter or snazzier, but whether it is fair,

3   adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

4        Here, the Settlement Agreement will provide substantial economic relief to the

5   Settlement Class.  Settlement Class Members who have already, or do by the

6   deadline, submit a timely and valid Claim are entitled to receive Groupon Credits

7   equal to ***130%*** of the Customer Purchase Price of their unredeemed and unrefunded

8   Groupon Voucher(s), subject to any *pro rata* adjustment.  These Groupon Credits

9   may be used to purchase a wide variety of goods and services at various price points

10  on groupon.com.  The relief provided under the Settlement Agreement is more than

11  adequate, particularly when viewed against the backdrop of the substantial legal

12  obstacles Plaintiffs face.

13       Numerous federal courts have authorized and approved the type of class relief

14  contemplated under the Settlement.  Indeed, the Ninth Circuit very recently affirmed a

15  district court's approval of a class action settlement under which class members could

16  submit a claim for settlement relief in the form of a $12 gift card that could be used to

17  purchase goods and products from Walmart's website.  *See In re Online DVD Rental*

18  *Antitrust Litig. ("Walmart")*, 779 F.3d 934 (9th Cir. 2015).  Rejecting arguments

19  raised by objector Ted Frank and others, the Ninth Circuit affirmed the district court's

20  finding that such gift cards "do not constitute a coupon settlement that falls under the

21  umbrella of CAFA [the Class Action Fairness Act]."  *Id.* at 950.  The Ninth Circuit

22  reasoned that, instead of "merely offering class members the chance to receive a

23  percentage discount" on a purchase, the gift cards provided real value to class

24  members because they could be used to purchase "a large number of potential items"

25  on walmart.com without requiring class members to "spend their own money."  *Id*. at

26  951.

27       Consistent with the Ninth Circuit's affirmance of the settlement in *Walmart*,

28  this District routinely approves class action settlements involving the issuance of

credits or vouchers that can be redeemed for goods or services. *See Chaiken v. Lululemon*, No. 3:12-CV-02481-GPC-MDD, 2014 U.S. Dist. LEXIS 35258, at *7 (S.D. Cal. Mar. 14, 2014) (Curiel, J., presiding) (approving class action settlement with $25 "credit vouchers" at Lululemon stores that "require[d] no additional purchase"); *Foos v. Ann.*, No. 11cv3794 L (MDD), 2013 U.S. Dist. LEXIS 136918, at *7-*8 (S.D. Cal. Sept. 24, 2013) (Lorenz, J., presiding) (approving settlement allowing class members to receive, *inter alia*, a $15.00 voucher for Ann Taylor merchandise with no minimum purchase required); *Morey v. Louis Vuitton N. Am. Inc.*, No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331, at *17 (S.D. Cal. Jan. 10, 2014) (Hayes, J., presiding) (approving class action settlement providing class members with a $41 "Merchandise Certificate" redeemable at Louis Vuitton retail stores).

As in *Walmart* and other settlements previously approved in this District, the Settlement Agreement provides real economic value to Settlement Class Members in the form of Groupon Credits that can be used to purchase a wide range of goods and services that consumers use for daily living on groupon.com, and without going out-of-pocket. The settlement relief offered under the Settlement Agreement is substantial and certainly within the range of reasonableness.

### E. The Stage of the Proceedings Favors Preliminary Approval; Experience and Views of Counsel

As this Court is well aware, this litigation has been pending since 2011. Since that time, the Parties have: (1) engaged in formal and informal discovery; (2) conducted extensive, arm's-length settlement negotiations under the supervision of the Honorable Daniel Weinstein (Ret.), which resulted in the 2012 Proposed Settlement Agreement; (3) extensively briefed and argued issues concerning the 2012 Proposed Settlement Agreement for purposes of the preliminary and approval proceedings; (4) briefed and argued in the appellate proceedings and subsequent district court proceedings, following the 2015 Ninth Circuit Ruling; and (5) engaged

1    in renewed arm's-length settlement discussions during which the Parties directly

2    addressed the issues raised in the 2015 Ninth Circuit Ruling, ultimately leading to the

3    Settlement Agreement.  Throughout these proceedings, the Parties have been able to

4    assess the relative strengths and weaknesses of their respective positions, as well as

5    compare the benefits of the Settlement Agreement to further litigation.  Counsel, who

6    have substantial experience in litigating class actions, and the Court are, therefore,

7    adequately informed and in a good position to evaluate the fairness of the Settlement

8    Agreement.

9         **F.**    **The Settlement Was Reached after Months of Arm's-Length Negotiations, and There Was No Collusion**

10

11          The Parties' extensive arm's-length settlement negotiations, which spanned

12   several months, further demonstrate the fairness of the Settlement Agreement that was

13   reached, and show that the settlement is not a product of collusion.  Counsel for

14   Defendants and Plaintiffs each zealously negotiated on behalf of their clients' best

15   interests and a settlement was reached only after multiple settlement proposals had

16   been exchanged and rejected.  *See* Stoia Decl., ¶3; Weiss Decl., ¶14.

17        **G.**    **The Settlement Addresses the Concerns Raised By the Ninth Circuit in Its 2015 Ruling**

18

19          The Ninth Circuit in its 2015 Ruling was primarily concerned with what it

20   perceived as a lack of *Bluetooth* factual findings relating to the Second Settlement

21   Fund.  Specifically, the Ninth Circuit found that there were no findings as to: (1) "the

22   probable size, scope and impact of the Second Settlement Fund"; and (2) "whether the

23   benefits of the Second Settlement Fund were in any way duplicative of preexisting

24   relief available to class members via Groupon's customer satisfaction policy."  Dkt.

25   No. 63-1 at 5-6.  According to the Ninth Circuit, the lack of such findings made it

26   impossible to fairly estimate the value of the settlement of the Class.  *Id*.

27          The Parties believe that the Settlement alleviates all of the Ninth Circuit's

28   concerns by completely eliminating the Second Settlement Fund and any form of

1065660 3                              - 20 -                    3:11-md-02238-DMS-RBB

secondary settlement relief.  The relief provided in the Settlement Agreement would be unavailable absent the Settlement Agreement.  Absent the Settlement Agreement, Class Members with unredeemed expired Groupon Vouchers have no right to receive Credits and no general right to a refund of the Purchase Price.  Although Groupon prides itself on customer service and, under the "Groupon Promise," pledges to address and attempt to resolve any customer dissatisfaction, which may *occasionally* involve giving a refund at Groupon's discretion, Groupon makes no "money-back guarantee" through the Groupon Promise, or otherwise with respect to Groupon Vouchers.  The "Groupon Promise" is fundamentally a customer satisfaction guarantee, and not a money-back guarantee.  In fact, many of the Plaintiffs themselves maintain they were *unable* to get refunds for their Vouchers pursuant to the "Groupon Promise," which is part of the reason they filed lawsuits.  *See, e.g.*, Kimel Complaint, ¶43 (Dkt. No. 7-3, Ex. J); Christensen Complaint, ¶¶68-71 (Dkt. No. 7-3, Ex. L). Thus, the settlement is not "in any way duplicative of preexisting relief available to class members via Groupon's customer satisfaction policy."  Dkt. No. 63-1 at 5-6.

Additionally, Groupon will not be able to seek reimbursement for the refunds it directly pays to Class Members.  Under the Settlement Agreement, the full value of the $8.5 million will be provided as Groupon Credits to Settlement Class Members, Claims Administration Costs, Attorneys' Fees and Expenses and Class Representative Awards, and Groupon will not be able to seek reimbursement or a decrease in the Settlement Amount as a result of any past or future payment of direct refunds it might make to consumers for any reason.

The Settlement therefore establishes a single, simplified claims process, and those Class Members who previously submitted valid claims as part of the 2012 Proposed Settlement Agreement will not have to resubmit those claims.  Because the Settlement requires Class Members to submit their Claims for Groupon Credits within 60 days after the issuance of the Class Notice, the Court will know, by the time of the Approval Hearing, the total number and value of the Claims submitted, and therefore

1   will be able to determine "the value of the relief to the class." *See* Dkt. No. 63-1 at 6.

2   Unlike the prior settlement, there is no additional settlement relief that the Court must

3   quantify to determine the value of the settlement. *Id.* The Settlement, therefore,

4   provides a simple and straightforward settlement framework that will allow the Court

5   to make the requisite *Bluetooth* factual findings and determine the value of the

6   settlement with a reasonable level of certainty, as required by the Ninth Circuit. *See*

7   *id.* For this additional reason, the Court should find that the Settlement is within the

8   range of reasonableness and that preliminary approval is warranted.[8]

9

10  ## V.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

11         Under Rule 23(e), the Court must "direct notice in a reasonable manner to all

12  class members who would be bound" by the proposed settlement. Fed. R. Civ. P.

13  23(e)(1).  Purported class members must receive "the best notice that is practicable

14  under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  "'[B]est notice practicable'"

15  means "'individual notice to all members who can be identified through reasonable

16  effort.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) (citation

17  omitted).  If class members can be identified and are given individual notice, there is

18  no requirement for notice by publication or other means.  "[N]otice by publication is

19  only used when the identity and location of class members cannot be determined

20  through reasonable efforts . . . ." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,

21  No. 06-02069 SBA, 2008 WL 1990806, at *3 (N.D. Cal. May 5, 2008).  The notice

22  must describe "'''the terms of the settlement in sufficient detail to alert those with

23  adverse viewpoints to investigate and to come forward and be heard.'''" *Rodriguez*,

24  563 F.3d at 962 ("'Notice is satisfactory if it "generally describes the terms of the

25  settlement in sufficient detail to alert those with adverse viewpoints to investigate and

---

26  [8]   Another factor that may be considered in determining whether preliminary
27  approval is appropriate is "the risk of maintaining class action status throughout
    the trial." *See Celera*, 2015 U.S. Dist. LEXIS 42228, at *13.  Because this Action
28  has not been certified for purposes of trial, this factor has no application here.

1  to come forward and be heard."''") (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361

2  F.3d 566, 575 (9th Cir. 2004)).

3        Here, the Parties have agreed to a Notice Program to be administered by Rust

4  Consulting, Inc.  *See* Stoia Decl., Exhibit 1, §II.D.1.  Upon Preliminary Approval of

5  the Settlement, the Claims Administrator will disseminate the Class Notice to

6  potential Settlement Class Members.  Potential Settlement Class Members will

7  receive direct notice of the Settlement via email from a domain name that includes the

8  word "Groupon" to the address provided to Groupon at the time of subscription.  *See*

9  *id.*, §II.D.3.  The content of the email notice will be substantially the same as the

10  Court-approved notice.  *See id.*, Exhibit 2. Publication notice will also be directed to

11  all potential Settlement Class Members through a comprehensive, dedicated

12  settlement website.  *Id.*, Exhibit 1, §II.D.5.  The website shall contain copies of all

13  relevant documents and information, including: (1) the Class Notice, which contains

14  instructions on how to submit a Claim Form, withdraw a claim previously submitted

15  under the 2012 Proposed Settlement Agreement, opt-out from the Settlement, and

16  object to the Settlement; (2) a copy of the Claim Form, (3) all applicable deadlines;

17  (4) relevant pleadings and orders of the Court pertaining to the settlement; (5) FAQs

18  and answers; and (6) and addresses to contact the Claims Administrator by email and

19  mail.  *Id.*, §II.D.5.  The website address will be provided in the email notice sent to

20  potential Settlement Class Members. *Id.*, §II.E.5.  Consumers may also discover and

21  access the website via an Internet search.  Class Counsel shall also post the Class

22  Notice on their websites. *Id*.  Prior to the Approval Hearing, the Claims Administrator

23  shall provide to the Court documentation that the Class Notice was provided in

24  accordance with the Notice Program.  *Id.*, §II.E.4.  Finally, Groupon will send notice

25  of the Settlement by overnight mail to appropriate federal and state officials as

26  required by the Class Action Fairness Act, 28 U.S.C. §1715(b), not later than ten days

27  after this filing.

28        The Notice Program complies with Rule 23 and due process because, among

other things, it informs Settlement Class Members of: (1) the nature of the action;
(2) the essential terms of the settlement, including the definition of the Settlement
Class and claims asserted; (3) the binding effect of a judgment if the Settlement Class
Member does not request exclusion; (4) the process for objection and/or exclusion,
including the time and method for objecting or requesting exclusion and that
Settlement Class Members may make an appearance through counsel; (5) information
regarding the named plaintiffs' request for an incentive award and reimbursement of
their attorneys' fees and costs; (6) the procedure for submitting Claims to receive
settlement benefits; and (7) how to contact Class Counsel to make inquiries.  Fed. R.
Civ. P. 23(c)(2)(B); *Manual for Complex Litigation*, §21.312; *see also Skilstaf, Inc. v.
CVS Caremark Corp.*, No. 10-15338, 2012 WL 400369 (9th Cir. Feb. 9, 2012)
(enforcement of judgment and settlement agreement in related action against plaintiff
did not violate plaintiff's due process rights where plaintiff who was a party to the
prior suit and was provided full notice of the release and covenant not to sue
provisions of the settlement agreement and rejected opt-out opportunity).

    This Notice Program ensures that Settlement Class Members' due process
rights are protected and is the best notice practicable.  *See* Fed. R. Civ. P. 23(c)(2)(A).
The same type of notice has been approved by courts as the best notice practicable
under similar circumstances.  *See Browning v. Yahoo! Inc.*, No. C04-01463 HRL,
2006 WL 3826714, at *8-*9 (N.D. Cal. Dec. 27, 2006) (finding notice by email
directing class members to official settlement website particularly appropriate where
class members' "allegations arise from their visits to Defendants' Internet websites,
demonstrating that the Settlement Class Members are familiar with and comfortable
with email and the Internet"); *Wal-Mart Stores, Inc.*, 2008 WL 1990806, at *3
(identity and location of class members determined through defendant's electronic
records); *In re Diet Drugs Prods. Liab. Litig.*, 226 F.R.D. 498, 520 (E.D. Pa. 2005)
(holding individualized notice plus Internet publication "fulfilled the 'best notice
practicable' requirement of Rule 23(c)(2)"); *In re Lupron Mktg. & Sales Prac. Litig.*,

1  228 F.R.D. 75, 85 (D. Mass. 2005) (noting effectiveness of settlement website as

2  means of publication).

3  **VI.    SCHEDULING AN APPROVAL HEARING IS APPROPRIATE**

4       The last step in the settlement approval process is an Approval Hearing at

5  which the Court may hear all evidence and argument necessary to make its settlement

6  evaluation.  Fed. R. Civ. P. 23(e)(2); *UAW v. Gen. Motors Corp*., 235 F.R.D. 383, 387

7  (E.D. Mich. 2006).  There, the Parties will demonstrate the class notice provided and

8  offer argument in support of approval.  In addition, any Settlement Class Member(s)

9  who properly and timely object to the settlement may be heard.  The Court will

10  determine after the Approval Hearing whether the Settlement Agreement should be

11  approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

12       In order to accommodate the steps that must occur following entry of the

13  Court's Preliminary Approval Order but prior to the approval hearing (such as Class

14  Notice, the claims deadline, the objection and opt out deadline, and the briefing on the

15  Parties' motion for approval of settlement and plaintiffs' attorneys' fees and costs

16  motion), the Parties respectfully request that the Court set a date for the hearing on

17  approval to occur no less than 117 days after the Court's entry of the Preliminary

18  Approval Order.

19  **VII.   CONCLUSION**

20       For the reasons set forth above, the Parties respectfully request that the Court

21  enter the proposed Preliminary Approval Order submitted herewith.

22  DATED:  September 11, 2015         Respectfully submitted,

23                               ROBBINS GELLER RUDMAN
                                & DOWD LLP

24                               JOHN J. STOIA, JR.
                             RACHEL L. JENSEN

25                               PHONG L. TRAN

26

27                                   s/ John J. Stoia, Jr.

28                                JOHN J. STOIA, JR.

1

2
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
3
619/231-7423 (fax)

4
Class Counsel

5

6  DATED:  September 11, 2015          DLA PIPER LLP (US)
                                       SHIRLI FABBRI WEISS
7                                      CHRISTOPHER M. YOUNG
                                       KATHERINE J. PAGE
8

9                                           s/ Shirli Fabbri Weiss
10                                       SHIRLI FABBRI WEISS

11
                                       401 B Street, Suite 1700
12                                     San Diego, CA 92101-4297
                                       Telephone: 619/699-2700
13                                     619/699-2701 (fax)

14                                     Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CF CERTIFICATION**

2         The filing attorney attests that she has obtained concurrence regarding the filing

3 of this document from the signatories to this document.

4

5 Dated: September 11, 2015

                              s/ Shirli F. Weiss

6                                SHIRLI F. WEISS

7 EAST\105970832

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28